FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 1 9 2023

KEVIN P WEIMER, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

1:23-CV-4218

KENNETH JOHNSON;
JACQUELYN JOHNSON,

       Plaintiffs

       v.

GEORGIA BUREAU OF
INVESTIGATIONS;
LOWNDES COUNTY SHERIFF
OFFICE,

       Defendants.

Civil Action No:

COMPLAINT

JURY TRIAL DEMAND

## NATURE OF THE ACTION

This is a case brought pursuant to the provisions of the Civil Rights Act of 1871, 42 U.S.C §1985 to correct unlawful deprivation of rights and conspiracy to interfere with rights, fraud, and disparate treatment based on race during the time periods of September 20, 2019, which is the deposition date of Dr. Kraft, Medical Examiner for the Georgia Bureau of Investigations (hereinafter *"GBI"*) through January 25, 2022, when the Lowndes County Sheriff's Office (hereinafter *"Sheriff"*) ended its' second and final investigation into the death of Kendrick Johnson (hereinafter *"KJ"*). The action before this court is timely.



For ten years the Plaintiff's have been adversely affected and endured deprivation of rights and interference with their civil rights by the Defendants poisoning the well with the farce, the scientifically and physically impossible narrative that Kendrick Johnson died from a freak accident. The Defendants denied the Plaintiff's their rights to a timely and accurate death certificate for their minor son KJ, a statutory mandate under the Georgia Code, Due Process rights under the United States and Georgia Constitutions. The Plaintiff's continue experiencing ongoing egregious actions by the Defendants to interfere with those rights, in an unbroken chain of events, including but not limited to the most recent the masquerade of an investigation conducted by Defendant-Sheriff into KJ's death. Defendant Sheriff misrepresented material facts and evidence it collected from the purported location of KJ's death. On or about January 25, 2022, Defendant-Sheriff made public a its synopsis of their investigation that presented a narrative inconsistent with material facts and evidence it collected. The work of fiction presented by Defendant-Sheriff is consistent with the deposition of Dr. Kraft which in light of the material facts a reasonable person could conclude that Defendant-Sheriff and Defendant-GBI collaborated and agreed to perpetuate the fraudulent invented cause of death determination by Dr. Kraft. The synopsis discredits the Plaintiff and their forensic expert Dr. William Anderson who concluded Kendrick Johnson died of non-accidental blunt force trauma. Defendant-Sheriff used it's

2

Office to present the false writings in the synopsis, clear violations of Georgia Code § 16-10-8 which makes it a felony for law enforcement officers and employees of the state to make false official certificates or writings, and has interfered with the Plaintiff's right to obtain an accurate cause of death on the death certificate and has resulted in severe mental anguish, physical suffering, and damaging to the Plaintiff's public reputation.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  This action is authorized and instituted pursuant to 42 U.S.C. §1985.

3.  The actions, deprivation of rights, obstruction of justice, and conspiracy to interfere with rights commenced within the jurisdiction of the United States District Court for the Northern District of Georgia.

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.  Plaintiff's are the parents of Kendrick Johnson former student at Lowndes County High School found dead inside a gym wrestling mat.  Plaintiff's address is 2800 Tydnall Drive, Valdosta, Georgia 31602.

3

<u>Defendant-GBI</u>

6. The Georgia Bureau of Investigations is an independent, state-wide agency that supports the states criminal justice system in the areas of criminal investigations, forensic laboratory services and computerized criminal justice information. Defendant-GBI's place of business in Georgia is 3121 Panthersville, Road, Decatur, Georgia 30034

<u>Defendant-Sheriff</u>

7. The Lowndes County Sheriff's Office is the primary law enforcement agency for the County of Lowndes in the state of Georgia. Defendant-Sheriff's place of business in Georgia is 120 Prison Farm Road, P.O. Box 667, Valdosta, Georgia 31603.

8. Between the dates of September 20, 2019 to January 25, 2022, the Defendants interfered with the Plaintiff's rights in pursuit of an accurate cause of death for their minor child KJ. Defendant-Sheriff colluded with Defendant-GBI's implausible positional asphyxiation cause of death for KJ using fictitious diagrams based on the manufactured theory derived by Dr. Kraft, evidence she invented and testified to at her September 20, 2019 deposition. Defendant-Sheriff misrepresented material facts and evidence it collected that negated Dr. Kraft's theory and sworn testimony. The causes of action herein arose during this time period.

4

## RELEVANT BACKGROUND AND FACTS RELATING TO THE DEPRIVATION OF RIGHTS, CONSPIRACY TO INTERFERE WITH RIGHTS

9. On January 11, 2013, the body of KJ, a sophomore at Lowndes County High School in Valdosta, Georgia was found inside a wrestling mat on a back wall in the school's old gymnasium.

10. The condition of the body when discovered was in a pool of blood, facial bruises and lacerations to the ear, lip, and knuckles are clearly visible in photos taken at the scene where KJ's body was discovered.

11. The initial patient care report written by the EMT's with the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013 cited, "bruising noted to the right jaw", and superficial abrasions on KJ's right wrist and finger on his left hand.

12. The Lowndes County Coroner Bill Watson determined KJ's shoulder width was nineteen inches  during his examination of the body at the location where it was allegedly found.

13. On or about January 12, 2013 Kenneth Johnson, KJ's father, went to regional crime lab to view and identify his sons body. Mr. Johnson immediately noticed warm air coming from the cold chamber when his sons body was shown to him by staff at the lab.

5

14. On January 13, 2013, Lt. Stryde Jones a deputy for Defendant-Sheriff is quoted in multiple news articles declaring the departments initial investigation had determined the mat KJ's body was found in had an opening "approximately two feet wide," further purporting the death "appears to be just a terrible accident."

15. The same news articles reported that "Investigators say it appears Johnson was on top of mats that were standing up right, when he possibly fell or reached inside the hole of the mat to get a shoe and got stuck."

16. On or about January 14, 2013, the body of KJ was returned to the Plaintiff so they could make burial arrangements.   KJ's brain and internal organs were missing.

17. Georgia Code § 31-10-15 mandates the medical examiner to complete the medical portion of the death certificate that should include the date, time, and cause of death and provide it to the Plaintiff and county vital statistics department within 72 hours of KJ's death.

18. The coroner's report dated January 22, 2013 noted that the coroner's office "…was not notifedi (sic) this death until 15:45 hours. The investigative climate was very poor to worse when I arrived on the scene. The body had been noticably (sic) moved. The scene had been compromised and there was no cooperation from law enforcement at the scene."

19. The coroners report further noted, "I do not approve of the manner this case was handled. Not only was the scene compromised, the body was moved. The integrrety (sic) was by opening a sealed body bag, information necessary for my law investigation was withheld."

20. Georgia Code § 45-16-24 requires law enforcement officers to immediately notify the coroner whenever a death is suspicious or unusual (bizarre, freakish).

21. A May 2, 2013 autopsy report released by Defendant-GBI and provided to the Plaintiff nearly four months later than required by state law, officially determined positional asphyxiation as the cause of death for KJ alleging a freak accident and noting "**no significant injuries**."

22. Defendant-GBI determined KJ's lungs were of normal size and weight.

23. The Plaintiff's then went through the painstaking process of petitioning the court and spending thousands of dollars to exhume KJ's body for an independent autopsy.

24. On or about June 15, 2013 Dr. William Anderson with Forensic Dimensions wrote in his report after examining KJ's body, that the cause of death was blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body consistent with inflicted injury further noting the cause as unexplained non-accidental blunt force trauma.

25. On September 20, 2019, Dr. Kraft testified at her deposition that KJ was reaching for both of his shoes alleging they had become stuck near the top of the wrestling mat.

26. Dr. Kraft claimed as KJ reached for the shoes they dropped further into the mat and KJ accidentally fell inside the opening of the wrestling mat and become stuck.

27. On or about March 9, 2021 Lowndes County Sheriff Ashley Paulk reopened the KJ case to be investigated amid ongoing unrest by local residents who contend KJ's death was not accidental, and further contentions that the details, evidence, and scientific facts, bring to light the unsavory agreement between the Defendant's to suppress the truth and deny the Plaintiff justice.

28. On or about January 25, 2022, Sheriff Paulk announced it had concluded the agencies investigation into the death of KJ and released a synopsis of its conclusions.

29. The 16-page synopsis by Defendant-Sheriff misrepresents material facts and evidence it collected, is rife with false information, logical fallacies, and scientific impossibilities.

30. Defendant-Sheriff's report concluded KJ had climbed on top of wrestling mats standing six feet tall that were up against the back gym wall, reached into the

opening in the mat for a "pair" of shoes when he accidentally fell inside the mat, got stuck, and suffocated.

31. Defendant-Sheriff's report included a mocked up diagram of KJ reaching into a gym mat for a pair of shoes. The opening of the diagram is listed as being 1'-2" in width or 14 inches wide.

32. KJ's shoulder width at time of death was listed at 19 inches wide.

33. Defendant-Sheriff's report noted that the file containing Dr. Anderson's autopsy report (that KJ died from non-accidental blunt force trauma), contained an article from the Orlando Sentinel that quotes Dr. Anderson's former supervisor, Chief Medical Examiner of Orange County Florida, Dr. Shasi Gore, saying Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

34. Defendant-Sheriff conveniently did not include information that the Florida Medical Examiners Commission ordered Dr. Gore to stop performing autopsies as the result of "repeated errors" in a shaken-baby death case. The discipline was the harshest in Florida history against a chief medical examiner.

35. On or about (give date this Complaint to be filed in federal court), this Complaint was filed in the U.S. District Court for the Middle District of Georgia.

## CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

36. The normal due process for any unusual death, particularly a student found rolled up in a gym wrestling mat, would be to allow material facts, evidence, and science guide investigators and forensic pathologist to determine the cause of death.

37. Under Georgia law Defendant-GBI had three days to determine the cause of death.

38. Conspiracy exists when two or more persons join together and form an agreement to violate the law and then act on that agreement.

39. Defendant-Sheriff and Defendant-GBI clearly agreed to make false writings in each of its official documents that misrepresent material facts and present an invented narrative and erroneous cause of death for Kendrick Johnson.

40. The evidence collected by Defendant-Sheriff under former Sheriff Prine, conflicts with all of the Defendant's claims.

41. The material facts and evidence collected by Defendant-Sheriff are inconsistent with declarations, proclamations and official reports by the Defendants.

42. The Defendant-Sheriff agreed to misrepresent material facts in the January 25, 2022 synopsis of its investigation into KJ's death and presented Dr. Kraft's perjurious deposition testimony.

43. Title 18 U.S.C. § 1621 makes it a federal crime to lie under oath.

44. 18 U.S. Code § 3 Accessory after the fact, makes it a federal crime punishable with up to 15 years in prison for knowingly assisting an offender avoid punishment for his offense.

45. Georgia Code § 16-10-8 makes it a felony for law enforcement officers and employees of the state to make false official certificates or writings.

46. In the case of KJ, Defendant-Sheriff and Defendant-GBI, in an unbroken chain of events from September 20, 2019 to January 25, 2022, obliterate all norms and collectively present inconsistent claims of scientific impossibilities based solely on manufactured unsupported and invented scenarios demonstrably negated by material facts and evidence in the case.

47. On January 10, Kendrick Johnson went to school like any other normal day. (Exhibit 1)

48. One day later this is Kendick Johnson. (Exhibit 2)

49. On January 11, 2013, the body of KJ, a sophomore at Lowndes County High School in Valdosta, Georgia was found inside a wrestling mat on a back wall in the school's old gymnasium.

50. The condition of the body when discovered was in a pool of blood, facial bruises and lacerations to the ear, lip, and knuckles are clearly visible in photos taken at the scene where KJ's body was discovered. See (Exhibit 3, Exhibit 4, Exhibit 5)

51. The initial patient care report written by the EMT's with the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013 cited, "bruising noted to the right jaw", and superficial abrasions on KJ's right wrist and finger on his left hand.

52. The Lowndes County Coroner Bill Watson determined KJ's shoulder width was nineteen inches during his examination of the body at the location where it was allegedly found.

53. On January 13, 2013, Lt. Stryde Jones a deputy for Defendant-Sheriff is quoted in multiple news articles declaring the departments initial investigation had determined the mat KJ's body was found in had an opening "approximately two feet wide," further purporting the death "appears to be just a terrible accident."

54. The same news articles reported that "Investigators say it appears Johnson was on top of mats that were standing up right, when he possibly fell or reached inside the hole of the mat to get a shoe and got stuck."

55. Pictures taken by Defendant-Sheriff at the scene do in fact show a single shoe next to KJ's head and to the left of a pool of blood on the floor. See Exhibit 6

56. The two markings on KJ's side near his waist (Exhibit 6-2) are omitted from each of the Defendant's reports.

57. The two markings are consistent with the two prongs of a stun gun and victims of known stun gun injuries. See Exhibit 8

58. The coroner's report dated January 22, 2013 noted that the coroner's office "…was not notifedi (sic) this death until 15:45 hours. The investigative climate was very poor to worse when I arrived on the scene. The body had been noticably (sic) moved. The scene had been compromised and there was no cooperation from law enforcement at the scene."

59. The coroners report further noted, "I do not approve of the manner this case was handled. Not only was the scene compromised, the body was moved. The integrrety (sic) was by opening a sealed body bag, information necessary for my law investigation was withheld."

60. A January 25, 2013 report by the regional crime lab in Valdosta cited "no signs of blunt force trauma on Johnson's face or body."

61. A May 2, 2013 autopsy report released by Defendant-GBI and provided to the Plaintiff officially determined positional asphyxiation as the cause of death for KJ alleging a freak accident and noting "**no significant injuries**."

62. Exhibit 11 is the butchered and mutilated body of KJ and what Dr. Kraft purports to be a cervical vertebrae autopsy.

63. Investigators working on behalf of the Johnson's were unable to locate any medical professional in the United States that could identify a medical explanation or technique used for the butchery and mutilation performed on the corpse of young Kendrick.

64. Cervical Vertebrae autopsies are mainly performed in situations where trauma  has happened to the neck such as fatal vehicle accidents and falls not positional asphyxia.

65. On or about June 15, 2013 Dr. William Anderson with Forensic Dimensions wrote in his report after examining KJ's body, that the cause of death was blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body consistent with inflicted injury further noting the cause as unexplained non-accidental blunt force trauma.

66. On September 20, 2019, Dr. Kraft testified at her deposition that KJ was reaching for both of his shoes alleging they had become stuck near the top of the wrestling mat.

67. Dr. Kraft claimed as KJ reached for the shoes they dropped further into the mat and KJ accidentally fell inside the opening of the wrestling mat and become stuck.

68. On or about March 9, 2021 Lowndes County Sheriff Ashley Paulk reopened the KJ case to be investigated amid ongoing unrest by local residents who contend

KJ's death was not accidental, and further contentions that the details, evidence, and scientific facts, bring to light the unsavory agreement between the Defendant's to suppress the truth and deny the Plaintiff justice.

69. On or about January 25, 2022, Sheriff Paulk announced it had concluded the agencies investigation into the death of KJ and released a synopsis of its conclusions.

70. The 16-page synopsis by Defendant-Sheriff is rife with false information, logical fallacies, and scientific impossibilities.

71. Defendant-Sheriff's report alleges KJ had climbed on top of wrestling mats standing six feet tall that were up against the back gym wall, reached into the opening in the mat for a "pair" of shoes when he accidentally fell inside the mat, got stuck, and suffocated.

72. Defendant-Sheriff's report included a mocked up diagram of KJ reaching into a gym mat for a pair of shoes. (Exhibit 10)

73. Defendant-Sheriff's January 25, 2022 report purporting KJ was reaching for two shoes is consistent with claims made by Dr. Kraft the medical examiner for Defendant-GBI in her September 20, 2019 deposition.

74. Pictures taken by Defendant-Sheriff only shows only one shoe next to KJ's head (Exhibit 6). Pictures taken by Defendant-Sheriff shows the matching second shoe in a completely different location (Exhibit 8) no where near the mat

Defendant-Sheriff and Defendant-GBI allege in the official writings and sworn deposition.

75. Additionally, had the shoe or shoes Defendant-Sheriff and Defendant-GBI declare KJ was reaching for were below his body as their diagrams illustrate, KJ's blood would have dripped all over the topside of the shoe or shoes before reaching and forming a pool of blood on the floor.

76. The absence of blood on the topside of the shoe in Exhibit 6 and Exhibit 8, is further proof that the narrative Defendant-Sheriff and Defendant-GBI presented are materially false.

77. The absence of blood around the entire inside edge of the mat that supposedly had been sitting in blood is further evidence of material falsehoods.

78. The opening of the diagram is listed as being 1'-2" in width or 14 inches wide. (Exhibit 9)

79. KJ's shoulder width at time of death was listed at 19 inches wide.

80. Defendant-Sheriff's report noted that the file containing Dr. Anderson's autopsy report (that KJ died from non-accidental blunt force trauma), contained an article from the Orlando Sentinel that quotes Dr. Anderson's former supervisor, Chief Medical Examiner of Orange County Florida, Dr. Shasi Gore, saying Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

81. Defendant-Sheriff conveniently did not include information that the Florida Medical Examiners Commission ordered Dr. Gore to stop performing autopsies as the result of "repeated errors" in a shaken-baby death case. The discipline was the harshest in Florida history against a chief medical examiner.

82. The Defendant's narrative that KJ's death was an freak accident is disingenuous. Before and after photos of KJ unequivocally expose the Defendant's narrative as false.  See (Exhibit 1, Exhibit 2)

83. The Defendant's knew or should have known a gym wrestling mat could not have caused KJ's injuries which included bruising to the face and upper torso, lacerations on the ear, lip, knuckles, and arm (See Exhibit 3, Exhibit 4, Exhibit 5) as well as injuries to KJ's side consistent with stun gun burns. (See Exhibit 6)

84. The Defendant's knew or should have known the claim that KJ, shoulder width nineteen inches and body weight, were too wide  and not heavy enough could not possibly generate enough force to fall inside a gym mat opening fourteen inches wide (Exhibit 9) especially from a crawling belly position while allegedly reaching for a a pair of shoes six feet down. (Exhibit 10)

85. Dr. Kraft, the medical examiner for Defendant-GBI knew or should have known that fraudulently completing the medical portion of the death certificate and/or autopsy report with patently false information was against the law,

implicated her in a multitude of crimes, and exposed her and Defendant-GBI to criminal and civil liability under federal and state fraud and civil rights laws.

86. Dr. Kraft knew or should have known that making materially false claims at her September 20, 2019 deposition was against the law and exposed herself and Defendant-GBI to civil litigation.

87. Defendant-GBI invented a fabricated materially false narrative to cover up for the initial false narrative made public by Defendant-Sheriff. (See Exhibit 6, Exhibit 8, Exhibit 9, Exhibit 10)

88. Sheriff Ashley Paulk knew or should have known producing his patently false 16-page investigation synopsis concerning KJ's injuries and death was against the law, implicated himself and the agency in a multitude of crimes, and exposed himself and the agency to criminal and civil liability under federal and state fraud and civil rights laws.

89. In light of these many scientific material facts and evidences, the Defendants in maintaining the same claim that KJ died of some freak accident, in spite of the inconsistencies about the details in their stories, demonstrates an agreement between the Defendants to violate a multitude of the Plaintiff's civil rights and federal and state criminal statutes.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's civil rights.

B. Declare the Defendants conspired to interfere with Plaintiff's civil rights.

C. Find that Plaintiff has been the target of more than a decade of conspiracy by Defendants to discredit and present the Plaintiff in a false light causing damage to their public reputation, physical, and mental well-being.

D. Find that the Plaintiff has suffered adversely being subjected to racial bigotry and harassment as results of the Defendants egregious, willful and wanton acts.

E. Grant judgment to Plaintiff in the amount of $500,000,000.00 in compensatory damages, with pre- and post-judgment interest.

F. Grant judgment to Plaintiff in the amount of $500,000,000.00 for punitive damages, with pre- and post-judgment interest.

G. Grant such further relief as the court deems necessary and proper in the public interest.

H. Grant Plaintiff any costs of this action, including reasonable attorney fees, expert witness fees, and litigation costs.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in the Complaint.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

Dated: 19 September 2023

Kenneth and Jacquelyn Johnson

2800 Tydnall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON;
JACQUELYN JOHNSON,

              Plaintiffs

                v.

GEORGIA BUREAU OF
INVESTIGATIONS;
LOWNDES COUNTY SHERIFF
OFFICE,

            Defendants.

Civil Action No:

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing ***COMPLAINT AND JURY TRIAL DEMAND*** with the Clerk of the Court in person.  I also certify that I mailed by United States Postal Service the foregoing document to the following participants:

Respectfully submitted,

Dated: 19 September 2023

Kenneth and Jacquelyn Johnson

2800 Tydnall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

Chris Hosey, Director
Georgia Bureau of Investigation
3121 Panthersville, Road,
Decatur, Georgia 30034

Ashley Paulk, Sheriff
Lowndes County Sheriff Office
120 Prison Farm Road,
P. O. Box 667,
Valdosta, Georgia 31603

Christopher Carr, Attorney General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334

# Exhibit 1



1

Exhibit 2



Exhibit 3



# Exhibit 4



# Exhibit 5



Exhibit 6





Exhibit 7







Crime Scene Photo - Not For Publication





Exhibit 8



Exhibit 9



# Exhibit 10



Exhibit 11

