IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 1 5 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

KENNETH JOHNSON;
JACQUELYN JOHNSON,

        Plaintiffs

        v.

GEORGIA BUREAU OF
INVESTIGATIONS;
LOWNDES COUNTY SHERIFF
OFFICE; VALDOSTA-LOWNDES
REGIONAL CRIME
LABORATORY; LOWNDES
COUNTY BOARD OF
EDUCATION; JOHN DOE;
OFFICE OF THE ATTORNEY
GENERAL; GEORGIA
DEPARTMENT OF HEALTH;
STATE BAR OF GEORGIA;
GRAY TELEVISION, INC.;
CNHI, LLC.;
ELLIOTT BLACKBURN LAW,

        Defendants.

CIVIL ACTION NO:
1:23-cv-04218-LMM

THIRD AMENDED
COMPLAINT

JURY TRIAL DEMAND

NATURE OF THE ACTION

    Section One of the Fourteenth Amendment to the U.S. Constitution reads,

"No State shall make or enforce any law which shall abridge the privileges or

1

immunities of citizens of the United States; <u>nor shall any State deprive any person</u> <u>of life, liberty, or property, without due process of law; nor deny to any person</u> <u>within its jurisdiction the equal protection of the laws.</u>"   Section Five gives the U.S. Congress the explicit power to enforce through legislation the provisions of the article, thus the creation of the Enforcement Act of 1871 also known as the Ku Klux Klan Act and more significantly the Civil Rights Act of 1871 codified as 42 U.S.C §1983 - Deprivation of Rights, 42 U.S.C §1985 - Conspiracy to Interfere with Rights, and 42 U.S.C §1986 - Neglect to Protect Rights, implicitly abrogating the states' eleventh amendment immunity.   A negligent failure to protect by the State, which includes agencies acting as the arm of the State that are in a position to protect victims from the provisions of the statute is actionable[1]. The statute creates a legal duty!

The purpose and intent of the Congress was to provide a mechanism for redress for victims of State governments, often one and the same as the Ku Klux Klan, practiced policy was to deprive, interfere with, and conspire against African Americans Due Process of law and to deny African Americans equal protection under the law.  In spite of the Fourteenth Amendment ratified by the States, and the passage of the Civil Rights Act of 1871, the practiced policy by the State of

---

[1] See Clark v. Clabaugh, 20 F.3d 1290, 1298 (3d Cir. 1994) (finding that negligence is sufficient to maintain § 1986 claim).

Georgia was and continues to be to deny African American's Due Process of law and equal protection under the law[2].

It is now clear with no ambiguity, the systemic deprivation of rights, conspiracy to interfere with rights, and neglect to protect the Plaintiff's Kenneth and Jacquelyn Johnson (hereinafter "The Johnson's") rights, resides squarely with the State of Georgia's decades of practiced policies in contravention of the U.S. Constitution and Official Code of Georgia Annotated. Additional overt acts depriving, interfering with, neglecting to protect, and perpetuating falsehoods regarding the Plaintiffs claims and evidence before this Court, have occurred since the Plaintiffs filed the Second Amended Complaint (Doc. 64) bringing rise to this Third Amended Complaint which names Gray Television Inc. (hereinafter "*GTV*"), CNHI, LLC. (hereinafter "*CNHI*"), and Elliott Blackburn Law (hereinafter "*EBLAW*") as well as three state agencies, Office of the Attorney General (hereinafter "*OAG*"), Georgia Department of Public Health (hereinafter "*DOH*"), and the State Bar of Georgia (hereinafter "*SBOG*") as Defendants, and includes eight additional causes of action.

This is a case brought pursuant to the provisions of the Civil Rights Act of 1871, codified as 42 U.S.C §1983, 42 U.S.C §1985, and 42 U.S.C §1986 to

---

[2] See "A pregnant woman's lynching resonates through the generations" and the history of Mary Turner and the Lynching Rampage of 1918 in Lowndes County Georgia. https://afro.com/the-howard-center-for-investigative-journalism/

correct unlawful deprivation of rights, conspiracy to interfere with Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution, neglect to prevent deprivation of rights, neglect to prevent conspiracy to interfere with rights, conspiracy to interfere with rights under the Safe Schools Act of 1994, deprivation of rights under the Freedom of Information Act and Georgia's Open Records Act, fraud, and disparate treatment based on systemic racial discrimination in the State of Georgia, during the time periods of January 25, 2013, which is the fraudulent laboratory report date by James D. Thornton, Criminalist for the Valdosta-Lowndes Regional Crime Laboratory (hereinafter *"RCL"*) concerning the Defendant-RCL investigation beginning on January 11, 2013 through October 16, 2023, when Defendant-Lowndes County Sheriff Office (hereinafter "*LCSO*") through Lead Attorney James Elliott, violated the Johnson's civil rights under the Freedom of Information Act and Georgia's Open Records Act by denying the Johnson's request for the autopsy report Defendant-LCSO purported the Armed Forces Medical Examiner performed on their minor son Kendrick Johnson (hereinafter *"KJ"*) subsequently implicating a United States District Court Judge for the Middle District of Georgia in the furtherance of the conspiracy. Any Order from any court concerning KJ, the Johnson's would be a party to that action and therefore entitled to all evidence entered in those proceedings. The actions before this court are timely.

4

For more than eleven years the Plaintiff's have been adversely affected and endured deprivation of rights, interference with their civil rights, and neglect to provide equal protection under the laws by the Defendants and poisoning of the well with the farce, the scientifically and physically impossible narrative that their minor child Kendrick Johnson died from a freak accident during school hours inside an unsupervised gymnasium at Lowndes County High School in Valdosta Georgia.    The Defendants conspired to deny the Plaintiffs, 1) their right to a timely and accurate death certificate for their minor son KJ, a statutory mandate under the Georgia Code; 2) civil rights under the Safe Schools Act of 1994; 3) and Due Process rights under the United States and Georgia Constitutions.

The Plaintiff's continue experiencing ongoing egregious actions by the Defendants interfering with their rights, in an unbroken chain of events, including but not limited to the most recent masquerade of an investigation conducted by Defendant-LCSO into KJ's death.  Defendant-LCSO misrepresented material facts and evidence it collected from the purported location of KJ's death.

On or about January 25, 2022, Defendant-LCSO made public a synopsis of the agency investigation results into KJ's death that presented a narrative inconsistent with material facts and evidence the agency collected.  The work of fiction presented by Defendant-LCSO in part is consistent with the 2019 deposition of Dr. Kraft. In light of the material facts a reasonable person could conclude that

5

Defendant-LCSO and Defendant-Georgia Bureau of Investigations (hereinafter "*GBI*"), collaborated and agreed to perpetuate the fraudulent invented cause of death determination by Dr. Kraft.  The synopsis also contains photographs taken by Defendant-RCL on January 11, 2013 that directly contradict Dr. Kraft's 2019 deposition.  Photographs of KJ's body taken by Defendant-RCL contradict its own January 25, 2013 Laboratory report that claim "There appeared to be no blunt force trauma on Johnson's face or body. There appeared to be no  visible signs of wounds to Johnson's body."

The January 25, 2022 synopsis discredits the Plaintiff and their forensic expert Dr. William Anderson who concluded Kendrick Johnson died of non-accidental blunt force trauma.  Defendant-RCL used its Office to produce a materially false laboratory report dated January 25, 2013, Defendant-GBI produced a materially false autopsy report dated May 2, 2013, Ashley Paulk, Sheriff for Defendant-LCSO used his Office to produce materially false narratives in the January 25, 2022 synopsis, all of which are clear violations of Georgia Code § 16-10-8 which makes it a felony for law enforcement officers and employees of the state to make false official certificates or writings. The materially false reports provided aid, assistance, and relief to KJ's assailants by portraying a murder scene as a freak accidental death, interfere with the Plaintiff's right to obtain an accurate cause of death on the death certificate in the case of their minor son KJ and has

resulted in severe mental anguish, physical suffering, and damaging to the Plaintiff's public reputation. The Defendants actions individually and collectively equate to accessory to murder after the fact.

A September 28, 2023 correspondence from the United States Defense Health Agency writes the, "…AFMES did not complete an autopsy and or exhume the remains." which also directly contradicts the official reporting by Defendant-LCSO.

On January 8, 2024 after securing additional information from the Defense Health Agency concerning the agency's consultation with the Federal Bureau of Investigation concerning the cause of death for their son Kendrick, the Plaintiffs filed the First Amended Complaint that added three new Defendants and six new causes of action.

On January 18, 2024 Mr. Johnson filed a complaint with the State Bar of Georgia against Defendant-EBLAW attorney James Elliott for violating Georgia Code §16-10-20.1(a) which makes it unlawful to alter, conceal, cover-up, or create a document and file, enter, or record in in a public record or court of this state or of the United States knowing or having reason to believe the document has been altered or contains materially false, fictitious, or fraudulent information. The complaint against Mr. Elliott was also for violating American Bar Association

Rule 4.1 which is the equivalent of Georgia Rules of Professional Conduct Rule 4.1 Truthfulness ins Statements to Others.

On January 29, 2024, Defendant-SBOG dismissed Mr. Johnson's complaint against Mr. Elliott based on the pretextual non sequitur assertion that he had not proven Mr. Elliott conspired with various government agencies to cover-up the cause of KJ's death.

On February 6, 2024, at the behest of Defendant-EBLAW, Defendant-GTV broadcast defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims. Defendant-GTV was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to the defaming broadcast.

On February 8, 2024, at the behest of Defendant-EBLAW, Defendant-CNHI published defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims. Defendant-CNHI was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to the defaming publication.

Defendant-GTV and Defendant-CNHI have networks spanning across the United States and those networks have been used by the Defendants for more than eleven years perpetuating the false information that the Plaintiffs minor son died from a freak accident and continued to do so in the most aforementioned overt acts further claiming the Johnson's claims are all unsubstantiated in spite of having evidence to the contrary.

The common issues between all of the Defendants has been to perpetuate the fictitious scientifically impossible invented narrative KJ died from a freak accident, that the Johnson's claims are all unsubstantiated, and to provide aid and comfort to those involved with covering up an obvious homicide.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  This action is authorized and instituted pursuant to Civil Rights Act of 1871 42 U.S.C §1983 - Deprivation of Rights, 42 U.S.C §1985 - Conspiracy to Interfere with Rights, and 42 U.S.C §1986 - Neglect to Protect Rights.

3.  The actions, deprivation of rights, conspiracy to interfere with rights, and neglect to protect rights commenced within the jurisdiction of the United States District Court for the Northern District of Georgia.

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

PARTIES

5.  Plaintiff's are the parents of Kendrick Johnson former student at Lowndes County High School found dead inside a gym wrestling mat.  Plaintiff's address is 2800 Tydnall Drive, Valdosta, Georgia 31602.

Defendant-GBI

6.  The Georgia Bureau of Investigations is an independent, state-wide agency that supports the states criminal justice system in the areas of criminal investigations, forensic laboratory services and computerized criminal justice information.  Defendant-GBI's place of business in Georgia is 3121 Panthersville, Road, Decatur, Georgia 30034

Defendant-LCSO

7.  The Lowndes County Sheriff's Office is the primary law enforcement agency for the County of Lowndes in the state of Georgia. Defendant-LCSO's place of business in Georgia is 120 Prison Farm Road, P.O. Box 667, Valdosta, Georgia 31603.

Defendant-RCL

8.  The Valdosta-Lowndes Regional Crime Laboratory provides experienced forensic personnel to examine the evidence submitted by various law enforcement agencies through the utilization of the most up-to-date scientific equipment,

technologies, and methodologies. Defendant-RCL's place of business in Georgia is 500 North Toombs Street, Valdosta, Georgia 31601.

Defendant-LCBOE

9.  The Lowndes County Board of Education oversees the eleven schools of the Lowndes County Schools district. Defendant-LCBOE's place of business in Georgia is 1592 Norman Drive, Valdosta, GA 31601.

Defendant-OAG

10. The Office of the Attorney General for the state of Georgia is a constitutional office: it is created by the Georgia Constitution and derives its authority from both the Constitution and the laws of Georgia. Duties include by are not limited too, prosecuting public corruption cases and initiating civil or criminal actions on behalf of the State of Georgia. Defendant-OAG's place of business in Georgia is 40 Capitol Square, SW, Atlanta, GA 30334.

Defendant-John Doe

11. John Doe is the unknown current or former Federal Bureau of Investigation agent who in 2014 requested a consultation from the Armed Forces Medical Examiner System (AFMES) for the death investigation of Kendrick Johnson and deliberately withheld material evidence from the Medical Examiner skewing the consultations results and leaving them incomplete.

Defendant-DOH

11

12. The Georgia Department of Public Health maintains public vital statistics records for the State of Georgia. Defendant-DOH place of business in Georgia is 200 Piedmont Avenue, SE, Atlanta, GA 30334.

Defendant-SBOG

13. The State Bar of Georgia is the governing body of the legal profession in the State of Georgia, operating under the supervision of the Supreme Court of Georgia. Defendant-SBOG place of business in Georgia is 104 Marietta St. NW, Suite 100, Atlanta, GA 30303.

 Defendant-GTV

14. Gray Television, Inc. is a television broadcast company headquartered in Atlanta, Georgia. Defendant-GTV place of business in Georgia is 4370 Peachtree Road, NE Suite 400, Atlanta, GA 30319.

Defendant-CNHI

15. CNHI, LLC is an American publisher of newspapers and advertising-related publications throughout the United States.  Defendant-CNHI place of business is 201 Monroe Street, Ste. 450, Montgomery, AL 36104.

Defendant-EBLAW

16. Elliott Blackburn Law is the premier law firm in South Georgia founded by former Superior Court Judge Gus Elliott and Oris Blackburn.  Defendant-EBLAW place of business in Georgia is 3016 North Patterson Street, Valdosta, GA 31603.

17. Between the dates of January 25, 2013 to February 8, 2024, the Defendants collaborated and conspired to, deprive, interfere with, and neglect to protect the Plaintiff's rights pursuant to the provisions of the Fourteenth Amendment, the Civil Rights Act of 1871 codified as 42 U.S.C §1983, 42 U.S.C §1985, 42 U.S.C §1986 and under the Safe Schools Act of 1994, in their pursuit of the truth regarding the death and murder of their minor child KJ who was found dead inside a gym wrestling mat on January 11, 2013.

18. Defendant-LCSO colluded with Defendant-RCL and Defendant-GBI's implausible positional asphyxiation cause of death for KJ using fictitious diagrams based on manufactured evidence and subsequent invented theory derived by Dr. Kraft, evidence she invented and testified to at her September 20, 2019 deposition. Defendant-LCSO misrepresented material facts and evidence it collected that negated Dr. Kraft's theory and sworn testimony.

19. Defendant-LCBOE neglected its' "duty to protect" against the impending execution of a conspiracy as defined by § 1985 of the Act and having the ability to prevent the conspirators from carrying out their objectives by simply providing the Johnson's, the U.S. Attorney's Office, and the FBI with the unaltered original gymnasium surveillance videos. Instead, Defendant-LCBOE entered into the conspiracy with Defendant-LCSO.

20. Defendant-OAG neglected its' duty to provide the Johnson's with equal protections under the law by holding perpetrators of the initial conspiracies accountable to the laws of Georgia and United States as well as the duty to protect against the furtherance of the conspiracy that came to light on January 25, 2022 thereby, depriving the Johnson's of Due Process guarantees under the Fourteenth Amendment to the U.S. Constitution.

21. The causes of action herein arose during this time period.

### RELEVANT BACKGROUND AND FACTS RELATING TO THE DEPRIVATION OF RIGHTS, CONSPIRACY TO INTERFERE WITH RIGHTS, AND NEGLECT TO PROTECT RIGHTS

22. On January 11, 2013, the body of KJ, a sophomore at Lowndes County High School in Valdosta, Georgia was found inside a wrestling mat on a back wall in the school's old gymnasium.

23. The condition of the body when discovered was in a pool of blood, facial bruises and lacerations to the ear, lip, and knuckles are clearly visible in photos taken at the scene where KJ's body was discovered.

24. The initial patient care report written by the EMT's with the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013 cited, "bruising noted to the right jaw", and superficial abrasions on KJ's right wrist and finger on his left hand.

25. The Lowndes County Coroner Bill Watson determined KJ's shoulder width was nineteen inches  during his examination of the body at the location where it was allegedly found.

26.  On or about January 12, 2013 Kenneth Johnson, KJ's father, went to the regional crime lab to view and identify his sons body. Mr. Johnson immediately noticed warm air coming from the cold chamber when his sons body was shown to him by staff at the lab.

27. On January 13, 2013, Lt. Stryde Jones a deputy for Defendant-LCSO is quoted in multiple news articles declaring the departments initial investigation had determined the mat KJ's body was found in had an opening "approximately two feet wide," further purporting the death "appears to be just a terrible accident."

28. The same news articles reported that "Investigators say it appears Johnson was on top of mats that were standing up right, when he possibly fell or reached inside the hole of the mat to get a shoe and got stuck."

29. On or about January 14, 2013, the body of KJ was returned to the Plaintiff so they could make burial arrangements.  KJ's brain and internal organs were missing.

30. Georgia Code § 31-10-15 mandates the medical examiner to complete the medical portion of the death certificate that should include the date, time, and

cause of death and provide it to the Plaintiff and county vital statistics department within 72 hours of KJ's death.

31. The coroner's report dated January 22, 2013 noted that the coroner's office "…was not notifedi (sic) this death until 15:45 hours. The investigative climate was very poor to worse when I arrived on the scene. The body had been noticably (sic) moved. The scene had been compromised and there was no cooperation from law enforcement at the scene."

32. The coroners report further noted, "I do not approve of the manner this case was handled. Not only was the scene compromised, the body was moved. The integrrety (sic) was by opening a sealed body bag, information necessary for my law investigation was withheld."

33. Georgia Code § 45-16-24  requires law enforcement officers to immediately notify the coroner whenever a death is suspicious or unusual (bizarre, freakish).

34. A January 25, 2013 laboratory report by Defendant-RCL claimed "There appeared to be no blunt force trauma on Johnson's face or body. There appeared to be no  visible signs of wounds to Johnson's body."

35.  A May 2, 2013 autopsy report released by Defendant-GBI and provided to the Plaintiff nearly four months later than required by state law, officially determined accidental positional asphyxiation as the cause of death for KJ alleging a freak accident and noting "**no significant injuries**."

36. Defendant-GBI determined KJ's lungs were of normal size and weight.

37. The Plaintiff's then went through the painstaking process of petitioning the court and spending thousands of dollars to exhume KJ's body for an independent autopsy.

38. On or about June 15, 2013 Dr. William Anderson with Forensic Dimensions wrote in his report after examining KJ's body, that the cause of death was blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body consistent with inflicted injury further noting the cause as unexplained non-accidental blunt force trauma.

39. The CNN news company filed suit to secure access to the video surveillance at Lowndes County High School and hired Mr. Grant Fredericks, a video surveillance analyst to analyze more than 290 hours of material from 35 cameras inside and outside of the gym.

40. At the time Mr. Fredericks was a U.S. Justice Department consultant and contract instructor for the FBI National Academy in Quantico, Virginia.

41. A November 21, 2013 CNN published the article, "Kendrick Johnson footage released; expert finds it 'highly suspicious'"

42. Fredericks determined "The surveillance video has been altered in a number of ways, primarily in image quality and likely in dropped information."

43. Fredericks also determined that one hour and five minutes of video was missing from gym two gym cameras when KJ entered the gym at 1:09p and another pair of gym cameras were missing two hours and ten minutes  each beginning to record again at 1:15p and 1:16p.

44. Fredericks concluded, "The files are not the original files. They're not something investigators should rely on for the truth of the video."

45. Defendant-LCBOE provided the Plaintiff with surveillance video of the gymnasium where KJ's body was found.

46. Similarly to the gym surveillance video provided to CNN, surveillance video of the gymnasium provided to the Plaintiff had been edited with hours of video suspiciously missing around the times KJ was last seen alive.

47. The surveillance does show students going into the gym, playing and socializing.

48. The gym surveillance did not appear to show any faculty or security officer supervising the students.

49. On September 20, 2019, Dr. Kraft testified at her deposition that KJ was reaching for both of his shoes alleging they had become stuck near the top of the wrestling mat.

50. Dr. Kraft claimed as KJ reached for the shoes they dropped further into the mat and KJ accidentally fell inside the opening of the wrestling mat and become stuck.

51. On or about March 9, 2021 Lowndes County Sheriff Ashley Paulk reopened the KJ case to be investigated amid ongoing unrest by local residents who contend KJ's death was not accidental, and further contentions that the details, evidence, and scientific facts, bring to light the unsavory agreement between the Defendant's to suppress the truth and deny the Plaintiff justice.

52. On or about January 25, 2022, Sheriff Paulk announced it had concluded the agencies investigation into the death of KJ and released a synopsis of its conclusions.

53. The 16-page synopsis by Defendant-LCSO misrepresents material facts and evidence it collected, is rife with false information, logical fallacies, and scientific impossibilities.

54. Defendant-LCSO's report concluded KJ had climbed on top of wrestling mats standing six feet tall that were up against the back gym wall, reached into the opening in the mat for a "pair" of shoes when he accidentally fell inside the mat, got stuck, and suffocated.

55. Defendant-LCSO's report included a mocked up diagram of KJ reaching into a gym mat for a pair of shoes. The opening of the diagram is listed as being 1'-2" in width or 14 inches wide.

56. KJ's shoulder width at time of death was listed at 19 inches wide.

57. Defendant-LCSO's report noted that the file containing Dr. Anderson's autopsy report (that KJ died from non-accidental blunt force trauma), contained an article  from the Orlando Sentinel that quotes Dr. Anderson's former supervisor, Chief Medical Examiner of Orange County Florida, Dr. Shasi Gore, saying Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

58. Defendant-LCSO conveniently did not include information that the Florida Medical Examiners Commission ordered Dr. Gore to stop performing autopsies as the result of "repeated errors" in a shaken-baby death case. The discipline was the harshest in Florida history against a chief medical examiner.

59. The January 2022 synopsis further claimed the Department of Defense (DOD) medical examiner did an autopsy on Kendrick in 2014.

60. The synopsis claimed the DOD Medical Examiner autopsy results were identical to the autopsy results by Defendant-GBI.

61.  On September 19, 2023, this Complaint was filed in the U.S. District Court for the Northern District of Georgia.

62. A September 28, 2023 correspondence from the United States Defense Health Agency writes the, "…AFMES did not complete an autopsy and or exhume the remains." which also directly contradicts the official reporting by Defendant-LCSO.

63. On January 8, 2024 after securing additional information from the Defense Health Agency concerning the agency's consultation with the Federal Bureau of Investigation concerning the cause of death for their son Kendrick, the Plaintiffs filed the First Amended Complaint that added three new Defendants and six new causes of action.

64. On January 18, 2024 Mr. Johnson filed a complaint with the State Bar of Georgia against Defendant-EBLAW attorney James Elliott for violating Georgia Code §16-10-20.1(a) which makes it unlawful to alter, conceal, cover-up, or create a document and file, enter, or record in in a public record or court of this state or of the United States knowing or having reason to believe the document has been altered or contains materially false, fictitious, or fraudulent information.  The complaint against Mr. Elliott was also for violating  American Bar Association Rule 4.1 which is the equivalent of Georgia Rules of Professional Conduct Rule 4.1 Truthfulness ins Statements to Others.

65. On January 29, 2024, Defendant-SBOG dismissed Mr. Johnson's complaint against Mr. Elliott based on the pretextual non sequitur assertion that he

had not proven Mr. Elliott conspired with various government agencies to cover-up the cause of KJ's death.

66.  On February 6, 2024, at the behest of Defendant-EBLAW, Defendant-GTV broadcast defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims. Defendant-GTV was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to the defaming broadcast.

67. On February 8, 2024,  at the behest of Defendant-EBLAW, Defendant-CNHI published defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims. Defendant-CNHI was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to the defaming publication.

68.  On February 14, 2024, Plaintiffs filed this Third Amended Complaint and Motion for Leave to Amend Complaint.

## FIRST CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

69. According to the U.S Department of Justice, 18 U.S.C. § 242 makes it a crime for someone acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. It is not necessary that the offense be motivated by racial bias or by any other animus.

70. The normal due process for any unusual death, particularly a student found rolled up in a gym wrestling mat, would be to allow material facts, evidence, and science guide investigators and forensic pathologist to determine the cause of death.

71. Georgia Code § 31-10-15 mandates the medical examiner to complete the medical portion of the death certificate that should include the date, time, and cause of death and provide it to the Plaintiff and county vital statistics department within 72 hours of KJ's death.

72. Conspiracy exists when two or more persons join together and form an agreement to violate the law and then act on that agreement.

73. 18 U.S. Code § 371 makes it a federal crime punishable with up to five years in prison if two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose.

74. Defendant-RCL, Defendant-LCSO and Defendant-GBI agreed to make false certificates and reports in each of its official documents that misrepresent material facts and present varying invented narratives and erroneous claim of an accidental cause of death for Kendrick Johnson.

75. The evidence collected by Defendant-LCSO under former Sheriff Prine, conflicts with all of the Defendant's claims.

76. The material facts and evidence collected by Defendant-LCSO are inconsistent with declarations, proclamations and official reports by the Defendants.

77. The Defendant-LCSO agreed to misrepresent material facts in the January 25, 2022 synopsis of its investigation into KJ's death and presented Dr. Kraft's perjurious deposition testimony.

78. Title 18 U.S.C. § 1621 makes it a federal crime to lie under oath.

79. Title 18 U.S. Code § 3 Accessory after the fact, makes it a federal crime punishable with up to 15 years in prison for knowingly assisting an offender avoid punishment for his offense.

80. 18 U.S. Code § 1519 makes it a federal crime punishable with up to twenty years in prison to falsify or make false entry in any record or document with the intent to impede, obstruct, or influence the proper

administration of any matter within the jurisdiction of any department or agency of the United States.

81. Georgia Code § 16-10-8 makes it a felony for law enforcement officers and employees of the state to make false official certificates or writings.

82. In the case of KJ, Defendant-LCSO and Defendant-GBI, in an unbroken chain of events from September 20, 2019 to January 25, 2022, obliterate all norms and collectively present inconsistent claims of scientific impossibilities based solely on manufactured unsupported and invented scenarios demonstrably negated by material facts and evidence in the case.

83. On January 10, Kendrick Johnson went to school like any other normal day. (Exhibit 1)

84. One day later this is Kendrick Johnson. (Exhibit 2)

85. On January 11, 2013, the body of KJ, a sophomore at Lowndes County High School in Valdosta, Georgia was found inside a wrestling mat on a back wall in the school's old gymnasium.

86. The condition of the body when discovered was in a pool of blood, facial bruises and lacerations to the ear, lip, and knuckles are clearly visible in photos taken at the scene where KJ's body was discovered. See (Exhibit 3, Exhibit 4, Exhibit 5)

87. The initial patient care report written by the EMT's with the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013 cited, "bruising noted to the right jaw", and superficial abrasions on KJ's right wrist and finger on his left hand.

88. The Lowndes County Coroner Bill Watson determined KJ's shoulder width was nineteen inches during his examination of the body at the location where it was allegedly found.

89. On January 13, 2013, Lt. Stryde Jones a deputy for Defendant-LCSO is quoted in multiple news articles declaring the departments initial investigation had determined the mat KJ's body was found in had an opening "approximately two feet wide," further purporting the death "appears to be just a terrible accident."

90. The same news articles reported that "Investigators say it appears Johnson was on top of mats that were standing up right, when he possibly fell or reached inside the hole of the mat to get a shoe and got stuck."

91. Pictures taken by Defendant-LCSO at the scene do in fact show a single shoe next to KJ's head and to the left of a pool of blood on the floor. See Exhibit 6

92. The two markings on KJ's side near his waist (Exhibit 6-2) were deliberately left out of each of the Defendant's reports.

93. The two markings are consistent with the two prongs of a stun gun and victims of known stun gun injuries. See Exhibit 7

94. The coroner's report dated January 22, 2013 noted that the coroner's office "…was not notifedi (sic) this death until 15:45 hours. The investigative climate was very poor to worse when I arrived on the scene. The body had been noticably (sic) moved. The scene had been compromised and there was no cooperation from law enforcement at the scene."

95. The coroners report further noted, "I do not approve of the manner this case was handled. Not only was the scene compromised, the body was moved. The integrrety (sic) was by opening a sealed body bag, information necessary for my law investigation was withheld."

96. A January 25, 2013 report by Defendant-RCL cited "no signs of blunt force trauma on Johnson's face or body."

97. A May 2, 2013 autopsy report released by Defendant-GBI and provided to the Plaintiff officially determined positional asphyxiation as the cause of death for KJ alleging a freak accident and noting "**no significant injuries**."

98. Exhibit 11 is the butchered and mutilated body of KJ and what Dr. Kraft purports to be a cervical vertebrae autopsy.

99. Investigators working on behalf of the Johnson's were unable to locate any medical professional in the United States that could identify a medical explanation or technique used for the butchery and mutilation performed on the corpse of young Kendrick.

100.     Cervical Vertebrae autopsies are mainly performed in situations where trauma  has happened to the neck such as fatal vehicle accidents and falls not positional asphyxia.

101.     On or about June 15, 2013 Dr. William Anderson with Forensic Dimensions wrote in his report after examining KJ's body, that the cause of death was blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body consistent with inflicted injury further noting the cause as unexplained non-accidental blunt force trauma.

102.     On September 20, 2019, Dr. Kraft testified at her deposition that KJ was reaching for both of his shoes alleging they had become stuck near the top of the wrestling mat.

103.     Dr. Kraft claimed as KJ reached for the shoes they dropped further into the mat and KJ accidentally fell inside the opening of the wrestling mat and become stuck.

104.     On or about March 9, 2021 Lowndes County Sheriff Ashley Paulk reopened the KJ case to be investigated amid ongoing unrest by local residents who contend KJ's death was not accidental, and further contentions that the details, evidence, and scientific facts, bring to light the unsavory agreement between the Defendant's to suppress the truth and deny the Plaintiff justice.

105.   On or about January 25, 2022, Sheriff Paulk announced it had concluded the agencies investigation into the death of KJ and released a synopsis of its conclusions.

106.   The 16-page synopsis by Defendant-LCSO is rife with false information, logical fallacies, and scientific impossibilities.

107.   Defendant-LCSO's report alleges KJ had climbed on top of wrestling mats standing six feet tall that were up against the back gym wall, reached into the opening in the mat for a "pair" of shoes when he accidentally fell inside the mat, got stuck, and suffocated.

108.   Defendant-LCSO's report included a mocked up diagram of KJ reaching into a gym mat for a pair of shoes. (Exhibit 10)

109.   Defendant-LCSO's January 25, 2022 report purporting KJ was reaching for two shoes is consistent with claims made by Dr. Kraft the medical examiner for Defendant-GBI in her September 20, 2019 deposition.

110.   Pictures taken by Defendant-LCSO only shows only one shoe next to KJ's head (Exhibit 6).   Pictures taken by Defendant-LCSO shows the matching second shoe in a completely different location (Exhibit 8) no where near the mat Defendant-LCSO and Defendant-GBI allege in the official writings and sworn deposition.

111.     Furthermore, page 16 of the January 25, 2022 investigation synopsis (Exhibit 20) clearly shows KJ's second shoe on the gym floor, 30-40 feet away from the gym mat where Kendrick's body is still inside it negating the falsified diagram shown in shown on page 15 of the synopsis. See Exhibit 10

112.     Additionally, had the shoe or shoes Defendant-LCSO and Defendant-GBI declare KJ was reaching for were below his body as their diagrams illustrate, KJ's blood would have dripped all over the topside of the shoe or shoes before reaching and forming a pool of blood on the floor.

113.     The absence of blood on the topside of the shoe in Exhibit 6 and Exhibit 8, is further proof that the narrative Defendant-LCSO and Defendant-GBI presented are materially false.

114.     The absence of blood around the entire inside edge of the mat that supposedly had been sitting in blood is further evidence of material falsehoods.

115.     The opening of the diagram is listed as being 1'-2" in width or 14 inches wide. (Exhibit 9)

116.     KJ's shoulder width at time of death was listed at 19 inches wide.

117.     Defendant-LCSO's report noted that the file containing Dr. Anderson's autopsy report (that KJ died from non-accidental blunt force trauma), contained an article  from the Orlando Sentinel that quotes Dr. Anderson's former supervisor, Chief Medical Examiner of Orange County Florida, Dr. Shasi Gore,

saying Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

118.     Defendant-LCSO conveniently did not include information that the Florida Medical Examiners Commission ordered Dr. Gore to stop performing autopsies as the result of "repeated errors" in a shaken-baby death case. The discipline was the harshest in Florida history against a chief medical examiner.

119.     The Defendant's narrative that KJ's death was a freak accident is disingenuous. Before and after photos of KJ unequivocally expose the Defendant's narrative as false.  See (Exhibit 1, Exhibit 2)

120.     The Defendant's knew or should have known a gym wrestling mat could not have caused KJ's injuries which included bruising to the face and upper torso, lacerations on the ear, lip, knuckles, and arm (See Exhibit 3, Exhibit 4, Exhibit 5) as well as injuries to KJ's side consistent with stun gun burns. (See Exhibit 6)

121.     The Defendant's knew or should have known the claim that KJ, shoulder width nineteen inches and body weight, were too wide  and not heavy enough could not possibly generate enough force to fall inside a gym mat opening fourteen inches wide (Exhibit 9) especially from a crawling belly position while allegedly reaching for a a pair of shoes six feet down. (Exhibit 10)

122.    Dr. Kraft, the medical examiner for Defendant-GBI knew or should have known that fraudulently completing the medical portion of the death certificate and/or autopsy report with patently false information was against the law, implicated her in a multitude of crimes, and exposed her and Defendant-GBI to criminal and civil liability under federal and state fraud and civil rights laws.

123.    Dr. Kraft knew or should have known that making materially false claims at her September 20, 2019 deposition was against the law and exposed herself and Defendant-GBI to civil litigation.

124.    Defendant-GBI invented a fabricated materially false narrative to cover up for the initial false narrative made public by Defendant-LCSO.  (See Exhibit 6, Exhibit 8, Exhibit 9, Exhibit 10)

125.    Sheriff Ashley Paulk knew or should have known producing his patently false 16-page investigation synopsis concerning KJ's injuries and death was against the law, implicated himself and the agency in a multitude of crimes, and exposed himself and the agency to criminal and civil liability under federal and state fraud and civil rights laws.

SECOND CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1985 CONPIRERE TO INTERFERE WITH CIVIL RIGHTS

126.     The Safe Schools Act of 1994 was enacted by the U.S. Congress to help local school systems achieve Goal Six of the National Education Goals, which provides that by the year 2000, every school in America will be free of drugs and violence and will offer a disciplined environment conducive to learning, by ensuring that all schools are safe and free of violence.

127.     GA Code § 20-2-1185. School Safety Plans; Drills, mandates that "Every public school shall prepare a school safety plan to help curb the growing incidence of violence in schools, to respond effectively to such incidents, and to provide a safe learning environment for Georgia's children, teachers, and other school personnel. Such plan shall also address preparedness for natural disasters, hazardous materials or radiological accidents, acts of violence, and acts of terrorism."

128.     GA Code § 16-11-127.1 makes it a felony offense punishable of up to ten years in prison and ten thousand dollar fine to possess dangerous weapons on public school campuses.

129.     Under these federal and state laws, parents should expect that their children return safely home from school and in the unfortunate case where a child

falls victim to a violent act within the school, it is a civil right to the parents and to the child victim pursuant to these federal and state laws that the school and law enforcement adhere  to procedural mandates under the laws include but are not limited to zero-tolerance disciplinary action against students who violate these laws.

130.     On January 11, 2013, James Thornton, Criminalist for Defendant-RCL was contacted by Defendant-LCSO regarding the body of KJ being found deceased at Lowndes County High School in Valdosta Georgia.

131.      Photographs and videos were taken by Defendant-RCL, Defendant-LCSO, and Defendant-GBI.

132.     On January 13, 2013, Lt. Stryde Jones a deputy for Defendant-LCSO, without any proof or official findings by Defendant-RCL and Defendant-GBI began publicly declaring that Kendrick's death appeared to be a "terrible accident."

133.     On January 25, 2013 Defendant-RCL produced a falsified laboratory report related to the death investigation of Kendrick Lamar Johnson.

134.     The report dated January 25, 2013 is the first official writing falsely claiming there appeared to be no signs of blunt force trauma or injuries to KJ's face or body[3] (Exhibit 12-4), in spite Mr. Thornton and other defendant's taking

---

[3] Exhibit 12-4 - "There appeared to be no signs of blunt force trauma on Johnson's face or body.  There appeared to be no visible signs of wounds to Johnson's body."

photographs of KJ's body showing injuries consistent with a stun gun assault on the side of his body with a blood stream from it (Exhibit 6-2).

135.    The gymnasium and surrounding areas where KJ's body was found were equipped with several surveillance camera's.

136.    The surveillance recordings were in sole control of Defendant-LCBOE.

137.    According to an incident report from Defendant-LCSO, a detective watched a portion of the video then asked an information technology officer employed Defendant-LCBOE to produce a "copy of the surveillance video for the entire wing of the school with the old gym for the last 48 hours."

138.    Five days later, the Defendant-LCSO report says, the IT officer delivered a hard drive to the detective, who verified it contained what he requested.

139.    The CNN news company filed suit to secure access to the video surveillance  at Lowndes County High School and hired Mr. Grant Fredericks, a video surveillance analyst to analyze more than 290 hours of material from 35 cameras inside and outside of the gym.

140.    At the time Mr. Fredericks was a U.S. Justice Department consultant and contract instructor for the FBI National Academy in Quantico, Virginia.

141.    Fredericks determined "The surveillance video has been altered in a number of ways, primarily in image quality and likely in dropped information."

See November 21, 2013 CNN published article, "Kendrick Johnson footage released; expert finds it 'highly suspicious'"

142.     Fredericks determined "The surveillance video has been altered in a number of ways, primarily in image quality and likely in dropped information."

143.     Fredericks also determined that one hour and five minutes of video was missing from gym two gym cameras when KJ entered the gym at 1:09p and another pair of gym cameras were missing two hours and ten minutes each beginning to record again at 1:15p and 1:16p.

144.     Fredericks concluded, "The files are not the original files. They're not something investigators should rely on for the truth of the video."

145.     The video surveillance does show students going into the gym, playing and socializing.

146.      The surveillance does not show any faculty or security officer supervising the students.

147.     Upon reviewing the video surveillance which included at that time the one hour and five minutes of missing video discovered by Mr. Fredericks, taking notice to the lack of supervision of the students in the gym by faculty or security guard, the assault to Kendrick, and those responsible, Defendant-LCBOE and Defendant-LCSO collaborated to destroy the surveillance video capturing the crimes.

148.     Instead of following the School Safety Plan when responding to acts of violence resulting in a students death, after recognizing the gross negligence of Lowndes County High School, Defendant-LCBOE became an active participant in the conspiracy with Defendant-LCSO.

149.      Defendant-LCBOE knew or should have known that tampering with, modifying, altering, or destroying video surveillance of a crime was also a crime and a violation of the civil rights of the victim student and the students parents, Mr. and Mrs. Johnson.

<u>THIRD CAUSE OF ACTION</u>

VIOLATION OF 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

150.     On September 28, 2023, Joe Davidge the Freedom of Information Act Public Liaison for the Defense Health Agency responded (Exhibit 13) to an inquiry made on behalf of the Plaintiffs under the Freedom of Information Act regarding Defendant-LCSO January 25, 2022 investigation synopsis that reported the Armed Forces Medical Examiner had performed an autopsy on Kendrick Johnson[4] and produced the same findings as Dr. Kraft that KJ died from accidental positional asphyxia. See Exhibit 14

---

[4] Page 5 of Defendant-LCSO investigation synopsis - "The third autopsy was performed by the Office of the Armed Forces Medical Examiner. The initial report of August 25, 2014, listed the cause of death as positional asphyxia and the manner of death accidental."

151.     The same reporting was conveyed to news media outlets by Defendant-LCSO and was published and reprinted by news companies all over the country.

152.     Having no knowledge of nor ever authorizing the Armed Forces Medical Examiner to perform an autopsy on their minor son Kendrick who had no connection to the Department of Defense or any of its installations, prompted the FOIA inquiry.

153.     Mr. Davidge's response was materially inconsistent with reporting by Defendant-LCSO determining the Armed Forces Medical Examiner System (AFMES) did not perform an autopsy on Kendrick[5].

154.     Mr. Davidge indicated Defendant-John Doe (hereinafter, "*JDFBI*") a current or former employee with the Federal Bureau of Investigations (FBI) had requested a consult for Kendrick Johnson and the "AFMES did review the first and second autopsy reports and photos, scene photos, and investigative reports which produced a consultation report dated 25 August 2014." See Exhibit 13

155.     Through a second FOIA request, the Plaintiffs received a copy of the case consultation report dated 25 August 2014 from the AFMES. See Exhibit 15

---

[5] See Exhibit 13 - "As such, AFMES did not complete an autopsy and or exhume the remains."

156.     The report writes, "There are no injuries noted in the first autopsy. If that is the case then it is uncertain how the decedent ended up in the gym mat."

    See Exhibit 15-3

157.     The report further notes there were injuries reported in the second autopsy however Defendant-JDFBI had provided pictures of the injuries[6].

158.     A reasonable person would determine that Defendant-JDFBI deliberately did not provide pictures of the injuries to the AFMES to prevent the reviewer from arriving to an accurate conclusion consistent with the material facts and physical evidence which consequently and unequivocally negate the official reports by Defendant-RCL and Defendant-GBI.

159.     The report further notes, "Secondly, if these injuries occurred they would have theoretically happened outside the gym mat where the decedent was found.  There is uncertainty to how the decedent ended up in the gym mat if he was assaulted prior to entering the vertical mat."

160.     No where in the AFMES report alleges or concludes that Kendrick Johnson died from an accident.  The report notes the manner of death is uncertain, materially different than the claims made by Defendant-LCSO in the January 25, 2022 synopsis report.

---

[6] See Exhibit 15-3 - "However, there are injuries noted in the second autopsy but there were no photographs to review of these injuries."

161.    The Armed Forces Medical Examiner did not perform an autopsy on Kendrick nor was the case consultation the AFMES did do, was not sealed by the U.S. District Court Judge for the Middle District of Georgia.

162.    Letters dated September 28, 2023 (Exhibit 16), October 5 (Exhibit 17), 2023, and October 16, 2023 (Exhibit 18) on behalf of Defendant-LCSO in response to Mr. Johnson's requests for copies of the AFMES autopsy report based on official claims made by Sheriff Paulk, exclaim the records requested were exempt and sealed by a United States District Judge for the Middle District of Georgia.

163.    The totality of these circumstances would lead a reasonable person to conclude Defendant-JDFBI worked in concert with and on behalf of Defendant-LCSO to deliberately withhold material evidence, photographs of Kendrick Johnson's injuries, in a consult request to the AFMES to skew the results, then Defendant-LCSO presented a manufactured counterfeit AFMES autopsy report where a federal judge illegally sealed the evidence by court Order from the Plaintiffs who would have been a party to any court proceedings involving Kendrick.

## FOURTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

164.     The Freedom of Information Act, 5 U.S.C. § 552, is the United States federal freedom of information law that requires the full or partial disclosure of previously unreleased information and documents controlled by the U.S. government, state, or other public authority upon request.

165.     18 U.S.C. § 242 makes it a crime for someone acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. It is not necessary that the offense be motivated by racial bias or by any other animus.

166.     The Georgia courts have long recognized "the strong public policy of this state in favor of open government." *Richmond Cty. Hosp. Auth. v. Se. Newspapers Corp.,* 252 Ga. 19, 20, 311 S.E.2d 806, 808 (1984).

167.     The Georgia Open Records Act, O.C.G.A. § 50-18-70, *et seq* is one of the laws codifying that public policy.

168.     No person requesting inspection need have, assert or prove any special personal interest in the requested records. Id.; *Smith v. Northside Hosp.*, 347 Ga. App. 700, 705, 820 S.E.2d 758, 764 (2018); *Northside Realty Ass'n Inc. v. Cmty. Relations Comm'n*, 240 Ga. 432, 434, 241 S.E.2d 189, 191 (1978).

169.     On September 24, 2023 Mr. Johnson requested the autopsy results for Kendrick Johnson pursuant to provisions under the FOIA and Georgia Open Records Act, that Sheriff Ashley Paulk officially claimed were performed by the AFMES, the results of which were identical to the findings by Defendant-GBI.

170.     A letter dated September 28, 2023 (Exhibit 16) on behalf of Defendant-LCSO  denied Mr. Johnson's request, claiming without proof the records were exempt and had been sealed by Court of a U.S. District Judge.

171.     The right to access public records under the Georgia Open Records Act is a "public right of the People as a whole." *Deal v. Coleman*, 294 Ga. 170, 184, 751 S.E.2d 337, 349 (2013).

172.     Defendant-LCSO deprived Mr. Johnson of his rights pursuant to the FOIA and Georgia's Open Records Act.

<u>FIFTH CAUSE OF ACTION</u>

VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

173.     On October 1, 2023 Mr. Johnson made another request for documentation pursuant to provisions under the FOIA and Georgia Open Records Act to Defendant-LCSO.

174.     A letter dated October 5, 2023 (Exhibit 17) on behalf of Defendant-LCSO  denied Mr. Johnson's request documentation, claiming without proof the records were exempt and had been sealed by Court of a U.S. District Judge.

175.     The right to access public records under the Georgia Open Records Act is a "public right of the People as a whole." *Deal v. Coleman*, 294 Ga. 170, 184, 751 S.E.2d 337, 349 (2013).

176.     Defendant-LCSO deprived Mr. Johnson of his rights pursuant to the FOIA and Georgia's Open Records Act.

## SIXTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

177.     On October 10, 2023 Mr. Johnson requested information from Defendant-LCSO under the FOIA and Georgia Open Records Act to Defendant-LCSO pertaining to the court Order and U.S. District Court Judge identified in correspondences from James Elliott, lead counsel for Defendant-LCSO, dated September 28, 2023 and October 5, 2023 for documentation pursuant to provisions.

178.     A letter dated October 16, 2023 (Exhibit 18) on behalf of Defendant-LCSO  denied Mr. Johnson's request documentation, claiming without proof the information requested was exempt and had been sealed by Court of a U.S. District Judge.

179.     The right to access public records under the Georgia Open Records Act is a "public right of the People as a whole." *Deal v. Coleman*, 294 Ga. 170, 184, 751 S.E.2d 337, 349 (2013).

180.     Defendant-LCSO deprived Mr. Johnson of his rights pursuant to the FOIA and Georgia's Open Records Act.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

181.     On October 22, 2023, pursuant to the FOIA and Georgia's Open Records Act, Mr. Johnson requested from Defendant-LCSO the initial patient care report for Kendrick Johnson written by the EMT's with the South Georgia Medical Center Mobile Healthcare Service on January 11, 2013.

182.     Defendant-LCSO provided Mr. Johnson with a altered illegible copy of the requested documentation. (Exhibit 19-2)

183.     The copy of the EMT's report was consistent with software applications most law enforcement agencies use to blur faces, pictures, and redacting documentation.

184.     By altering the EMT's report then providing it to Mr. Johnson, Defendant-LCSO deprived Mr. Johnson of his rights under the FOIA and Georgia's Open Records Act to review the information.

185.     In light of these many scientific and material facts and physical evidences, the Defendants in maintaining the same claim that KJ died of some freak accident, in spite of the inconsistencies about the details in their stories,

demonstrates an agreement between the Defendants to violate a multitude of the Plaintiff's civil rights and federal and state criminal statutes.

## EIGTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1986 NEGLECT TO PROTECT RIGHTS

186.    The Mission statement on Defendant-OAG's website reads, "The mission of the Department of Law is to serve the citizens of the State of Georgia by providing legal representation of the highest quality to the agencies, officers and employees of state government and by honorably and <u>vigorously carrying out the constitutional and statutory responsibilities of the Attorney General.</u>"

187.    Such duties include by are not limited too, prosecuting public corruption cases and initiating civil or criminal actions on behalf of the State of Georgia.

188.    In more than eleven years Defendant-OAG has neglected to prosecute the public corruption supported by the material facts and physical evidence now before this Honorable Court.

189.    In more than eleven years Defendant-OAG has  neglected to initiate any civil or criminal actions on behalf of the State of Georgia based on the material facts and physical evidence now before this Honorable Court.

190.    Defendant-OAG has done absolutely nothing in carrying out the constitutional and statutory responsibilities of the Attorney General concerning

"enforcement" of the Civil Rights Act of 1871, 42 U.S.C §1983, 42 U.S.C §1985, and 42 U.S.C §1986.

191.    In contrast, Defendant-OAG has vigorously defended Defendant-GBI for egregious, unthinkable, and illegal activities as supported by the material facts and physical evidence now before this Honorable Court.

192.    On or about September 19, 2023, Defendant-GBI publicly declared to the news media in response to this lawsuit with the following statement:  "The GBI Medical Examiner's Office conducted a thorough autopsy on this case.  The case is closed, and we stand behind our original findings."

193.    Page 2 of the synopsis by Defendant-LCSO reads, "Any person who looks at this case objectively would know that it would be impossible to conceal any evidence due to the involvement of so many agencies. The FBI states unequivocally in its investigation that there was no cover-up or conspiracy."  See Exhibit 21-2

194.    The evidence before this Court could not be any clearer, multiple agencies colluded to cover-up the murder of the Johnson's minor son KJ.

195.    18 U.S. Code § 371  makes it punishable for up to 5 years in prison if two or more persons conspire either to commit any offense against the United States  or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy.

196.     18 U.S. Code § 3 makes it punishable for up to 15 years in prison for anyone who knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

197.     Defendant-OAG neglected its' statutory duty to protect and prevent the furtherance of what has always been a conspiracy.

198.     The unmistakable markings of a stun gun injury to KJ, recorded in a photo taken on January 11, 2013 as well as a multitude of other photographed injuries to KJ's entire body show his death was no accident!

199.     A reasonable person would conclude that Defendant-OAG vigorously defends State Actors who violate the Fourteenth Amendment rights of a certain segment of citizens but does absolutely nothing in carrying out the constitutional and statutory responsibilities of the Attorney General concerning "enforcement" of the Civil Rights Act of 1871, 42 U.S.C §1983, 42 U.S.C §1985, and 42 U.S.C §1986 is due to that being the States practiced policy for decades.

200.     Furthermore, the Johnson's have obtained affidavit testimony from Ms. Renee McGhee who has advocated for justice for more than twenty-four years in the deaths of her son Steven Johnson in 2000 and her grandson Rashad Jones in 2023, concerning the systemic nature of the State of Georgia neglecting to protect African Americans rights.

201.     When Ms. Renee McGhee, learned of the Johnson's lawsuit from press releases and media reports she was so disturbed by the similarities between how Defendant-GBI claimed Kendrick Johnson died from an accident in 2013 and how the agency claimed her son Steven Johnson died from accidental drowning in 2000.  See Exhibit 22 - Declaration of Renee McGhee "McGhee Decl.," ¶ 2

202.     "In both cases its blatantly obvious the victims, Kendrick Johnson and my son Steven were severely beaten by no accident.  The before and after pictures of both Kendrick and Steven speak volumes.  Additionally, the injuries to both Steven and Kendrick's back cannot be ignored or justified by any accidental terms." (McGhee Decl. ¶¶ 3-7)  See Exhibit 23

203.     Ms. McGhee also testified to the death of her grandson Rashad Jones in January of 2023 and the descendant son of Ms. McGhee's deceased son Steven Johnson.

204.     According to law enforcement reports, Rashad Jones was involved in a vehicle accident after refusing to stop for police.  However, photographs of the vehicle Jones was driving the night of his death show damages to airbags consistent with bullet holes (McGhee Decl. ¶ 30) and a photograph of Jones corpse shows an injury in the center of his forehead (Exhibit 24)that seems more consistent with being  caused by a firearm than a car accident. (McGhee Decl. ¶¶ 32-33)

205.    Three cases that span more than twenty-four years connected by skin tone and the State practiced policy of Defendant-OAG to deny African Americans of Due Process of law and equal protection under the law.

## NINTH CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1986 NEGLECT TO PROTECT RIGHTS

206.    The practiced policy by the State of Georgia, of neglecting to protect the rights of a certain segment of citizens is exhibited by Defendant-LCBOE in its' response to the death of the Johnson's minor son KJ.

207.    The gymnasium and surrounding areas where KJ's body was found were equipped with several surveillance camera's.

208.    The surveillance recordings were in sole control of Defendant-LCBOE.

209.    According to an incident report from Defendant-LCSO, a detective watched a portion of the video then asked an information technology officer employed Defendant-LCBOE to produce a "copy of the surveillance video for the entire wing of the school with the old gym for the last 48 hours."

210.    Five days later, the Defendant-LCSO report says, the IT officer delivered a hard drive to the detective, who verified it contained what he requested.

211.    The CNN news company filed suit to secure access to the video surveillance  at Lowndes County High School and hired Mr. Grant Fredericks, a

video surveillance analyst to analyze more than 290 hours of material from 35 cameras inside and outside of the gym.

212.    At the time Mr. Fredericks was a U.S. Justice Department consultant and contract instructor for the FBI National Academy in Quantico, Virginia.

213.    Fredericks determined "The surveillance video has been altered in a number of ways, primarily in image quality and likely in dropped information." See November 21, 2013 CNN published article, "Kendrick Johnson footage released; expert finds it 'highly suspicious'"

214.    Fredericks determined "The surveillance video has been altered in a number of ways, primarily in image quality and likely in dropped information."

215.    Fredericks also determined that one hour and five minutes of video was missing from gym two gym cameras when KJ entered the gym at 1:09p and another pair of gym cameras were missing two hours and ten minutes  each beginning to record again at 1:15p and 1:16p.

216.    Fredericks concluded, "The files are not the original files. They're not something investigators should rely on for the truth of the video."

217.    The surveillance does not show any faculty or security officer supervising the students.

218.    Upon reviewing the video surveillance which included at that time the one hour and five minutes of missing video discovered by Mr. Fredericks, taking

notice to the lack of supervision of the students in the gym by faculty or security guard, the assault to Kendrick, and those responsible, Defendant-LCBOE and Defendant-LCSO collaborated to destroy the surveillance video capturing the crimes.

219.     Defendant-LCBOE knew or should have known that tampering with, modifying, altering, or destroying video surveillance of a crime was also a crime and a violation of the civil rights of the victim student and the students parents, Mr. and Mrs. Johnson.

220.     Instead of following the School Safety Plan when responding to acts of violence resulting in a students death, after recognizing the gross negligence of Lowndes County High School, Defendant-LCBOE neglected its statutory duty to protect and rather became an active participant in the conspiracy with Defendant-LCSO.

<u>TENTH CAUSE OF ACTION</u>

VIOLATION OF 42 U.S.C. § 1986 NEGLECT TO PROTECT RIGHTS

221.     The practiced policy by the State of Georgia, of neglecting to protect the rights of a certain segment of citizens is also exhibited by Defendant-GBI in the autopsy report for Kendrick Johnson performed by Dr. Kraft, a medical examiner for Defendant-GBI.

222.    Defendant-GBI neglected its' "duty to protect" against the impending execution of a conspiracy as defined by § 1985 of the Act and having the ability to prevent the furtherance of the conspiracy by Defendant-LCSO and Defendant-RCL simply by documenting KJ's injuries truthfully and in full, failed to be truthful.

223.    A May 2, 2013 autopsy report released by Defendant-GBI and provided to the Plaintiff officially determined positional asphyxiation as the cause of death for KJ alleging a freak accident and noting "no significant injuries."

224.    Exhibit 11 is the butchered and mutilated body of KJ and what appears to be what Dr. Kraft purports to be a cervical vertebrae autopsy.

225.    The two markings on KJ's side near his waist (Exhibit 6-2) were deliberately left out of Defendant-GBI's autopsy report.

226.    The markings are consistent with the two prongs of a stun gun and victims of known stun gun injuries. See Exhibit 7

227.    On or about June 15, 2013 Dr. William Anderson with Forensic Dimensions wrote in his report after examining KJ's body, that the cause of death was blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body consistent with inflicted injury further noting the cause as unexplained non-accidental blunt force trauma.

228.     Defendant-GBI's narrative that KJ's death was a freak accident is disingenuous. Before and after photos of KJ unequivocally expose Dr. Kraft's autopsy report for Kendrick as false.  See (Exhibit 1, Exhibit 2)

229.     Defendant-GBI neglected its statutory duty to protect and rather became an active participant in the conspiracy with the other Defendants.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

230.     Pursuant to O.C.G.A 31-10-23 Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.

231.     On or about October 6, 2023, the Plaintiffs submitted a request to Defendant-DOH to correct the cause of death on their son's death certificate. (Exhibit 25 - Declaration of Kenneth Johnson "Johnson Decl.," ¶ 2

232.     The Plaintiffs completed the appropriate forms, supplied vital records with the report from the autopsy performed by Forensic Pathologist Dr. William Anderson, as well as multiple pictures of their injuries. (Johnson Decl. ¶3)

233.     The Plaintiffs learned that in spite of the findings from the autopsies performed by Forensic Pathologist Dr. Anderson and the evidence showing numerous injuries all over our sons body and directly contradicting the State

Medical Examiners autopsy report, only the GBI medical examiner could correct the death certificate. (Johnson Decl. ¶8)

234.     The Plaintiffs learned that Defendant-DOH had been unable to locate Dr. Kraft to confront her with the evidence of their sons injuries that Dr. Kraft deliberately left out of her autopsy report. (Johnson Decl. ¶9)

235.     On February 6, 2024, Mr.Johnson contacted vital records to inquire about the status of the Johnson's request and whether Dr. Kraft had been located to review the evidence and correct the death certificate. (Johnson Decl. ¶10)

236.     The Plaintiffs learned that Dr. Kraft had not been located and the death certificate had not been corrected. (Johnson Decl. ¶11)

237.     For nearly eleven years, Defendant-DOH has maintained an erroneous death certificate for the Plaintiffs minor son KJ.

238.     The State of Georgia has deprived the Plaintiffs the right and the protections under the law to protect the integrity of vital records concerning their son KJ.

<u>TWELTH CAUSE OF ACTION</u>

VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS AND 42 U.S.C. § 1986 NEGLECT TO PROTECT RIGHTS

239.     Under the Georgia Open Records Act § 50.18.70 et seq. the public has the right to obtain and inspect records in the public domain from the caretaker of the records.

240.    The Supreme Court of Georgia has authorized Defendant-SBOG to discipline attorneys if they violate any of the Rules set forth in the Georgia Rules of Conduct.

241.    Thus Defendant-SBOG has a duty to protect the public from unscrupulous attorneys especially concerning public records and requests made under the Open Records Act.

242.    The practiced policy by the State of Georgia, of depriving, conspiring against, and neglecting to protect the rights of a certain segment of citizens is also exhibited by Defendant-SBOG.

243.    On January 18, 2024 Mr. Johnson filed a complaint with the State Bar of Georgia against Defendant-EBLAW attorney James Elliott (Exhibit 26) for violating Georgia Code §16-10-20.1(a) which makes it unlawful to alter, conceal, cover-up, or create a document and file, enter, or record in in a public record or court of this state or of  the United States knowing or having reason to believe the document has been altered or contains materially false, fictitious, or fraudulent information.  The complaint against Mr. Elliott was also for violating  American Bar Association Rule 4.1 which is the equivalent of Georgia Rules of Professional Conduct Rule 4.1 Truthfulness in Statements to Others.

244.    On January 29, 2024, Defendant-SBOG dismissed Mr. Johnson's complaint against Mr. Elliott based on the pretextual non sequitur assertion that he

had not proven Mr. Elliott conspired with various government agencies to cover-up the cause of KJ's death.  See Exhibit 27

245.    Defendant-SBOG deprived Mr. Johnson of protections under the law by failing to hold Mr. Elliott accountable for violating Mr. Johnson's rights under the Freedom Of Information Act and Georgia's Open Records Act.

246.    By failing to hold Mr. Elliott accountable under Georgia Rules of Professional Conduct Rule and the laws of the State, Defendant-SBOG has empowered and sanctioned Mr. Elliott to violate Mr. Johnson's rights and break the law with impunity.

247.    Furthermore, by failing to hold Mr. Elliott accountable for providing Mr. Johnson with altered illegible documents in response to his Open Records Act requests, particularly considering the documents are evidence related to these proceedings, threatens the integrity of these proceedings and further obstructs the due administration of justice under the law!

THIRTEENTH CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS, 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

248.    42 U.S.C §1983 - Deprivation of Rights and 42 U.S.C §1985 - Conspiracy to Interfere with Rights, prohibits the deprivation of and interference with an individual due process rights under the Fourteenth Amendment.

249.    42 U.S.C §1985(3) indicates no state action prerequisite exists for such lawsuits.

250.    For more than eleven years Defendant-LCSO and Defendant-EBLAW have used the news media network of Defendant-GTV to spread the false information that the Plaintiffs son died from a freak accident at the behest of Defendant-EBLAW.

251.    The unsavory nature of the bedfellows became fully manifest on February 6, 2024 when Defendant-GTV broadcast defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims.

252.    Defendant-GTV was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to broadcasting the defaming comments.

253.    The causal connection between Defendant-SBOG dismissing Mr. Johnson's complaint against Mr. Elliott for reasons other than the merits of the actual complaint, and the broadcasting of Mr. Elliott's defaming comments over the TV networks of Defendant-GTV are unambiguous.

254.     The broadcasts by Defendant-GTV assisted Mr. Elliott to undermine, deprive, and interfere with the Plaintiffs Due Process rights, further damaged their public reputation, and were defaming considering Defendant-GTV has had plenty of evidence negating the false declarations by Mr. Elliott prior to the broadcast.

FOURTEENTH CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS, 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

255.     42 U.S.C §1983 - Deprivation of Rights and 42 U.S.C §1985 - Conspiracy to Interfere with Rights, prohibits the deprivation of and interference with an individual due process rights under the Fourteenth Amendment.

256.     42 U.S.C §1985(3) indicates no state action prerequisite exists for such lawsuits.

257.     For more than eleven years Defendant-LCSO and Defendant-EBLAW have used the news media network of Defendant-CNHI to spread the false information that the Plaintiffs son died from a freak accident at the behest of Defendant-EBLAW.

258.     The unsavory nature of the bedfellows became fully manifest on February 8, 2024 when Defendant-CNHI published defaming comments by Mr Elliott that the dismissal of Mr. Johnson's complaint against him by Defendant-SBOG was additional proof the Johnson's had engaged in years long patterns of making "unsubstantiated" claims.

259.     Defendant-CNHI was in possession of evidence supporting Mr. Johnson's complaint against Mr. Elliott and negated Mr. Elliott's comments that the allegations against him were unsupported, prior to publishing the defaming comments.

260.     The causal connection between Defendant-SBOG dismissing Mr. Johnson's complaint against Mr. Elliott for reasons other than the merits of the actual complaint, and the publishing of Mr. Elliott's defaming comments in newspapers owned by Defendant-CNHI are unambiguous.

261.     The publications by Defendant-CNHI assisted Mr. Elliott to undermine, deprive, and interfere with the Plaintiffs Due Process rights, further damaged their public reputation, and were defaming considering Defendant-CNHI has had plenty of evidence negating the false declarations by Mr. Elliott prior to publishing the comments.

### FIFTHTEENTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS, 42 U.S.C. § 1985 CONPIRACY TO INTERFERE WITH CIVIL RIGHTS

262.     Defendant-EBLAW is the premier law firm in South Georgia founded by former Superior Court Judge Gus Elliott and Oris Blackburn.

263.     The deep roots of Defendant-EBLAW in South Georgia's judicial, legal, and law enforcement systems is well-known throughout the entire state of Georgia.

264.     It is because of these deep roots and influence that has empowered Defendant-EBLAW to be one of the main influences and perpetrators of overt acts depriving and conspiring against the Plaintiffs protected rights under the U.S. Constitution and Fourteenth Amendment.

265.     The evidence before this Honorable Court illustrate Defendant-EBLAW's power and influence that allowed the law firm to engage in egregious, unethical, and illegal activities without fear of arrest by Defendant-LCSO, prosecution by Defendant-OAG, or disbarment by Defendant-SBOG.

266.     The causal connection between Defendant-SBOG, Defendant-GTV, and Defendant-CNHI coming to the aid of and protecting Mr. Elliott from the evidence supported complaint filed against Mr. Elliott by Kenneth Johnson are indicative of these Defendants working for, on behalf of, and to the benefit of Defendant-EBLAW is unambiguous.

267.     Defendant-EBLAW has used Mr. Elliott's media connections to perpetuate falsehoods about the Plaintiffs evidence supported claims that their son did not die from the scientifically impossible invented narrative of accidental positional asphyxia.

268.     On February 6, 2024, Defendant-EBLAW provided Defendant-GTV, Defendant-CNHI, and other media companies with defaming comments falsely

claiming the Plaintiffs had "…years' long pattern of bringing baseless and unsubstantiated claims."  See Exhibit 28

269.    Aside from defaming the Plaintiffs, the comments (Exhibit 28) by Mr. Elliott on behalf of Defendant-EBLAW that was broadcast and published  by Defendant-GTV and Defendant-CNHI, deprive and interfere with the Johnson's protected rights under the U.S. Constitution damaging their public reputation and further undermine the integrity of these proceedings.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's civil rights.

B. Declare the Defendants conspired to interfere with Plaintiff's civil rights.

C. Declare that the Defendants in positions to prevent the interference with the Plaintiff's civil rights and with a duty to to prevent the furtherance of conspiracies that interfere with and deny the Plaintiff's civil rights and Due Process under the Fourteenth Amendment, were negligent in doing so.

D. Find that Plaintiff has been the target of more than a decade of conspiracy by Defendants to discredit and present the Plaintiff in a false light causing damage to their public reputation, physical, and mental well-being.

E. Find that the Plaintiff has suffered adversely being subjected to racial bigotry and harassment as results of the Defendants egregious, willful and wanton acts.

F.   Grant judgment to Plaintiff in the amount of $5,000,000,000.00 in compensatory damages, with pre- and post-judgment interest of ten percent.

G.   Grant judgment to Plaintiff in the amount of $5,000,000,000.00 for punitive damages, with pre- and post-judgment interest of ten percent.

H.   Grant such further relief as the court deems necessary and proper in the public interest.

I.   Grant Plaintiff any costs of this action, including reasonable attorney fees, expert witness fees, and litigation costs.

<u>JURY TRIAL DEMAND</u>

Plaintiffs request a jury trial on all questions of fact raised in the Complaint.

<u>CERTIFICATION</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

Dated:   February 14, 2024          */s/ Kenneth Johnson*_____
Kenneth Johnson

*/s/ Jacquelyn Johnson*_____
Jacquelyn Johnson

2800 Tydnall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KENNETH JOHNSON;<br>JACQUELYN JOHNSON,<br><br>                Plaintiffs<br><br><br>                        v.<br><br><br>GEORGIA BUREAU OF<br>INVESTIGATIONS;<br>LOWNDES COUNTY SHERIFF<br>OFFICE; VALDOSTA-LOWNDES<br>REGIONAL CRIME<br>LABORATORY; LOWNDES<br>COUNTY BOARD OF<br>EDUCATION; JOHN DOE;<br>OFFICE OF THE ATTORNEY<br>GENERAL; GEORGIA<br>DEPARTMENT OF PUBLIC<br>HEALTH;<br>STATE BAR OF GEORGIA;<br>GRAY TELEVISION, INC.;<br>CNHI, LLC.;<br>ELLIOTT BLACKBURN LAW,<br><br>                Defendants. | CIVIL ACTION NO:<br>1:23-cv-04218-LMM<br><br>THIRD AMENDED<br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## CERTIFICATE OF SERVICE

We hereby certify that we filed the foregoing **THIRD AMENDED COMPLAINT AND JURY TRIAL DEMAND** with the Clerk of the Court in

person.   We certify that we will serve upon and mail by United States Postal Service the foregoing document to the following participants:

Respectfully submitted,

Dated:    February 14, 2024

*/s/ Kenneth Johnson_____*
Kenneth Johnson

*/s/ Jacquelyn Johnson_____*
Jacquelyn Johnson

2800 Tydnall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

Office of the Attorney General
c/o Chris Carr, Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

Roger Chalmers
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

James L. Elliott
Elliott Blackburn Law
3016 North Patterson Street
Valdosta, GA 31603-0579

Timothy Tanner
PO Box 5437
Valdosta, Georgia 31603

Arash Sabzevari
100 Galleria Pkwy, Suite 1600
Atlanta, GA  30319

Georgia Department of Public Health
c/o Kathleen E. Toomey, Commissioner
200 Piedmont Avenue, SE
Atlanta, GA 30334

State Bar of Georgia
c/o J. Antonio DelCampo, President
104 Marietta St. NW, Suite 100
Atlanta, GA 30303

Gray Television, Inc.
c/o Hilton H. Howell Jr., CEO
4370 Peachtree Road, NE Suite 400
Atlanta, GA 30319

CNHI, LLC
c/o Donna Barrett, President
201 Monroe Street, Ste. 450
Montgomery, AL 36104

Exhibit 1



Exhibit 2



1

Exhibit 3



Exhibit 4



Exhibit 5



Exhibit 6





Exhibit 7







Crime Scene Photo - Not For Publication





Exhibit 8



1

Exhibit 9



# Exhibit 10



Exhibit 11



Exhibit 12

Mark Simons
Chief of Police

# REGIONAL CRIME LABORATORY
## 1708 NORTH ASHLEY STREET
## VALDOSTA, GEORGIA 31602
## 229-293-3120

Chris Prine
Sheriff

### LABORATORY REPORT

Barry C. Funck
Laboratory Director

January 25, 2013

**To:** Lowndes County Sheriff's Office
120 Prison Farm Road
Valdosta, Georgia 31601

**Laboratory Case Number:** 2013-00042
**Submission Number:** 1
**Agency Case Number:** 13-01-01520

**ATTN:** Investigator Jack Winningham

Subpoenas pertaining to this case should refer to the Valdosta - Lowndes Regional Crime Laboratory Case Number.

**Offense(s):** Death Investigation
**Subject(s):** Kendrick Lamar Johnson (Victim)

*James Thornton*

James D. Thornton

Criminalist

## Reference:

This report is in reference to a request for Crime Scene Forensic services made to the Valdosta - Lowndes Regional Crime Laboratory on January 11, 2013. This report may contain conclusions, opinions, and/or interpretations made by the author.

## Crime Scene Narrative:

On Friday, January 11, 2013 at approximately 1048 hours, I was contacted by Captain Wanda Edwards of the Criminal Investigations Division at the Lowndes County Sheriff's Office, in reference to a deceased student at Lowndes High School (LHS), 1606 Norman Drive, Valdosta, Georgia. I advised that I would be en route.

On Friday, January 11, 2013 at approximately 1108 hours, I arrived at Lowndes High School, 1606 Norman Drive, Valdosta, Georgia. I was briefed by Investigations Staff Sergeant Jack Winningham. Staff Sergeant Winningham advised that Lowndes County Sheriff's Investigators were dispatched by Lowndes County 911 Center to the Old Gymnasium at the Lowndes High School at 1606 Norman Drive, Valdosta, Georgia. I was advised that students at Lowndes High School were in the Old Gymnasium when they decided to climb up on to padded mats that were rolled-up and in the vertical position. I was advised that when the students climbed on top of the rolled-up mats they saw what appeared to be white in color socks. The students advised that they approached the socks to get a closer look, in which they discovered that it was a body. I was advised that the students notified a teacher, in which the teacher started pulling the vertical positioned mats down into the horizontal position to access the situation. When the teacher made their way to the rolled-up mats in the back row along the Old Gymnasium southwest wall they saw what appeared to be a deceased body.

LCSO - K. Johnson 160

VLRCL Case Number: 2013-00042                          Agency Case Number: 13-01-01520

It was advised that the body was positioned head first inside of the rolled-up mat. EMS arrived on scene and the victim LHS student; Kendrick Lamar Johnson: black male, birth date 10/10/1995, of 920 Ponderosa Drive, V̶ ̶sta, Georgia was slightly pulled out of the mat and found deceased.

The campus at this address contains multiple buildings located east of Norman Drive, Valdosta, Georgia. The constructed building is a public high school campus. The buildings on this campus are constructed with red in color brick on the exterior and a grey in color metal roof. The campus also contains multiple parking lots, white in color mobile trailers, multiple classrooms, multiple offices, multiple athletic fields, a football stadium, and multiple gymnasiums. The campus contains an Old Gymnasium Building where Johnson was found deceased. The Old Gymnasium is located north of the campus cafeteria. The Old Gymnasium contained bleachers along the north and south walls. There are multiple basketball goals around the hardwood floors. There were approximately twenty-one (21) rolled-up mats in the southwest corner of the gym.

The scene was established with crime scene tape and secured by the Lowndes County Sheriff's Office personnel. While on scene I noted the following Lowndes County Sheriff's Office personnel: Captain Wanda Edwards, Lieutenant Stryde Jones, Sergeant Aaron Pritchett, Staff Sergeant Jack Winningham, Major Logan Henderson, Deputy Randy Lightsey, Deputy Mike Adams, Deputy John Marion, and Investigator Jack Priddy. Personnel on scene from the Valdosta-Lowndes Regional Crime Laboratory (VLRCL): Criminalist Lieutenant Shannon Salters, and Criminalist Ray McGraw. Personnel on scene from the Georgia Bureau of Investigations (GBI): Crime Scene Specialist Wes Horne, Agent Kristen Perry, Agent Lindsay Marchant, Agent Mike Callahan, Agent Amy Braswell, and Agent Steve Turner.

On Friday, January 11, 2013 at approximately 1125 hours, an initial walk-through of the exterior and interior of the scene was conducted by Staff Sergeant Winningham and myself. Nitrile gloves were worn by all crime scene personnel entering the scene throughout the investigation. A cursory inspection of the east side (front of Cafeteria and Old Gymnasium building) entry/exit doors and windows was conducted, in which it appeared to be no sign of forced entry.

started processing the scene by taking overall photographs of LHS Main Entrance. With the assistance of Criminalist McGraw and Criminalist Lieutenant Salters a three-dimensional (3-D) image of the interior scene was created using the Leica C-10 Scanning System.

Upon completion of the Leica Scan Documentation, the GBI personnel entered the scene for an initial walk-through and to assist with the investigation.

photographed the crime scene, taking overall and mid-range photographs of the campus exterior Cafeteria and Old Gymnasium. The exterior and interior of the scene was video recorded with a digital camcorder.

A cursory search of the exterior west wing (rear side of Cafeteria and Old Gymnasium) was conducted by GBI Crime Scene Specialist Wes Horne and myself. All interior and exterior trash cans in the area were searched. The entry/exit doors to the rear (west side of building) of the Old Gymnasium were locked. There appeared to be no signs of forced entry to the rear (west side of building) entry/exit doors. It was noted that on the south side of the exterior cafeteria building a window was ajar. It appeared that the window was unlocked and opened with no sign of force entry. Windows and entry/exit doors were documented with photographs.

VLRCL Case Number: 2013-00042                          Agency Case Number: 13-01-01520

The interior of the Old Gymnasium was documented, taking overall and mid-range photographs. During a cursory search areas of concern were identified. The evidentiary items were identified using Yellow Identification Numbers. I observed one (1) black and white Adidas shoe on the floor in front of a rolled-up mat lying horizontally in the southwest corner of the Old Gymnasium (Crime Scene Item # 1). I observed one (1) yellow two pocket folder on the gym floor in front of a rolled-up mat near the west wall of the Old Gymnasium (Crime Scene Item # 2). I observed one (1) blue in color Physical Science Book on the floor behind two rolled-up mats near the southwest wall entry/exit door (Crime Scene Item # 3). I observed one (1) grey Hollister pull-over hooded sweater on the concrete floor around multiple horizontal and vertical rolled-up mats in the southwest corner of the Old Gymnasium (Crime Scene Item # 4). I noted a rolled-up mat containing Johnson's deceased body lying in the horizontal position on the concrete floor in the southwest corner of the Old Gymnasium (Crime Scene Item #5). There were what appeared to be bloodstains on the south wall of the Old Gymnasium. A blood presumptive test was performed on the stains by GBI Crime Scene Specialist Horne, which according to the manufactures instructions the stains were positive for blood (Crime Scene Item # 6).

It was noted that a pair of black, grey, and orange in color NIKE shoes were observed near the bleachers on the north wall of the Old Gymnasium. It appeared that the shoes had stains that looked similar to blood. A blood presumptive test was performed on the stains by GBI Crime Scene Specialist Horne, which according to the manufactures instructions the stains were negative for blood.

Mid-range and close-up photographs, with and without, a scale were taken of the items that were identified with the Yellow Identification Numbers. A rough sketch of the scene was generated. Additional documentation of the items was conducted. Crime scene Item # 1 is a men's size U.S. 9.5 shoe according to the inside tag. Crime Scene Item # 2 contained school documents belonging to Kendrick L. Johnson (deceased victim). The documents were photographed. Crime scene Item # 4 is a size M (medium) according to its tag. Two swabs of the blood stains on the south wall were collected (Crime Scene Item # 6).

With the assistance of Criminalist McGraw and GBI Crime Scene Specialist Horne approximate points of measurements were taken using the triangulation method from two fixed objects to the marked items of evidence. Point A is the Old Gymnasium west wall north entry/exit double door frame. Point B is a corner sticking out on the west wall. The items of evidence were collected and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

On Friday, January 11, 2013 at approximately 1600 hours, The Lowndes County Corner Bill Watson arrived on scene to conduct his examination of Johnson. Johnson's body was positioned lying approximately on his left side sticking out of the rolled-up mat from his head to approximately his abdominal area. The remainder of his body from approximately the abdominal area to his feet was inside the rolled-up mat. Johnson's head was on the concrete floor in a pool of blood. Johnson's body was removed from the mat so Lowndes County Corner Bill Watson could continue his examination. Johnson was wearing a white in color undershirt, an orange in color tee shirt, a white in color tee shirt, a belt, blue in color jeans, black in color shorts, boxer underwear, and white in color socks. There was one (1) pair of white, grey, and orange in color NIKE shoes inside of the mat (Crime Scene Item # 8), which were not on his feet. The NIKE shoes were documented with photographs. Johnson's body was placed into the supine position so that his body could be examined by Lowndes County Corner Bill Watson. During his examination Lowndes County Corner Bill Watson unfastened Johnson's belt and jeans. Johnson's body was documented with additional photographs.

On Friday, January 11, 2013 at approximately 1610 hours, GBI Crime Scene Specialist Horne and I placed Johnson's body on a sterile white sheet to conduct an additional cursory examination for documentation. It appeared that rigor and livor mortis had already set in, which was consistent with the position of the way the body was found. Johnson's right arm was in a position that appeared to cover his face and his left arm was along his body with his forearm bent back towards his head. Johnson's fingers were loosely curled up on both hands. One black wire with white earphones was hooked around Johnson's left hand middle and index finger. There appeared that rigor mortis had set in because of the stiffening of his body. Levity was present on his head, arms, and chest area. Johnson's face was swollen and had blood exiting from his eyes, nose, and mouth. There was visible dried blood on Johnson's arms, chest, and face. The smell of Johnson's body appeared that it was starting to decompose. Johnson's eyes were swollen, fixed, and dilated. Blood was visible in the eyes with signs of petechia. There appeared to be no signs of blunt force trauma on Johnson's face or body. There appeared to be no visible signs of wounds to Johnson's body. There were visible signs of skin slippage on Johnson's abdomen area, face, and arm. Johnson's body was documented with additional detailed photographs.

During the removal of Johnson's body from the rolled-up mat, additional items were observed that appear to have evidentiary value. One (1) black and white Adidas shoe was located in the southwest area of the Old Gymnasium on the concrete floor near Johnson's head in the pool of blood (Crime Scene Item # 7). The Adidas shoe was a size U.S. 9.5, which appeared to be similar to Crime Scene Item # 1. Johnson's pockets were searched, in which, one (1) LG cell phone was located from his left front blue jeans pocket (Crime Scene Item #9). Approximate points of measurements were taken using the triangulation method from the two previous fixed objects to the additional items of evidence. The items of evidence were photographed, collected and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

Approximate measurements of the rolled-up mat Johnson was found in were obtained: length was approximately 74 inches and the width of the entire diameter was approximately 34 inches. The foot end (side where Johnson's feet were) of the rolled-up mat was approximately $14^{1/2}$ inches in diameter at the opening of its widest point. The head end (side where Johnson's head was) of the rolled-up mat was approximately $14^{3/4}$ inches in diameter at the opening of its widest point.

During a cursory search of the Old Gymnasium Girls Restroom, paper towels that appeared to contain blood were observed in the trash can near the sinks (Crime Scene Item # 10). The paper towels were documented with photographs, collected, and secured in my crime scene vehicle. My vehicle was locked and I maintained the keys.

Steve Owens from Owens Transport was contacted by Lowndes County Corner Bill Watson to conduct the removal and transport of the body to the Valdosta-Lowndes Regional Crime Laboratory.

Investigator Winningham, Captain Edwards, Lieutenant Jones, Criminalist McGraw, Criminalist Lieutenant Salters, and I conducted a final walk through of the crime scene, in which nothing additional was noted. At approximately 1720 hours, I concluded my investigation and released the scene to Investigator Staff Sergeant Winningham and the Lowndes County Sheriff's Office.

On Friday, January 11, 2013 at approximately 1730 hours, Owens Transport and I arrived at the Valdosta-Lowndes Regional Crime Laboratory with Johnson's body and placed him in Body Cooler # 2. A Lowndes County Sheriff's Office Property and Evidence Form were generated for the body item # 5, which contained the chain of custody.

The evidence from the scene was placed into the Crime Scene Vehicle Bay Temporary Evidence Locker and I maintained the keys. Crime Scene Item #'s 7, 8, and 10 were saturated in blood so they were placed into drying cabinet # 1 and I maintained the keys.

On Sunday, January 13, 2013, I returned to the Valdosta-Lowndes Regional Crime Laboratory (VLRCL) to retrieve the evidence from the locker and drying cabinet. All items of evidence were sealed with evidence tape. The digital images of the scene were converted onto a DVD to be submitted as Crime Scene # 11 for evidence. The digital video recording of the scene was converted onto a DVD to be submitted as Crime Scene # 12. Twelve (12) Lowndes County Sheriff's Office Property and Evidence Forms were generated for the evidence, which contained the chain of custody.

On Sunday, January 13, 2013, I arrived at the Lowndes County Sheriff's Office located on 120 Prison Farm Road, Valdosta, Georgia, and submitted the evidence to the LCSO Evidence Locker and I secured the evidence.

On Sunday, January 13, 2013, I was asked by Lowndes County Sheriff Chris Prine if it was possible to allow Johnson's father Kendrick Johnson Sr. to make a positive identification of his son. Johnson's parents were escorted to the Valdosta-Lowndes Regional Crime Laboratory by Lieutenant Jones, and Investigator Staff Sergeant Winningham. Kendrick Johnson Sr., Lieutenant Jones, and Investigator Staff Sergeant Winningham entered the lab and were escorted by myself to the body cooler room where the positive identification was made.

On Monday, January 14, 2013, Johnson's body was released to Steve Owens for transport to the GBI for autopsy.

**Remarks:**

Questions regarding this report should be addressed to: James D. Thornton at jthornton@lowndescounty.com

Exhibit 13

**DHA NCR PCL Mailbox FOIA Requests**
**From:** dha.ncr.pcl.mbx.foia-requests@health.mil
**To:** jburrs1715@aol.com,DHA NCR PCL Mailbox FOIA Requests
**Cc:** billmorgan_esq@yahoo.com,Kenneth Johnson,Kendrick
Johnson,DHA NCR J-1/8 Mailbox FOIAPublicLiaison
 Thu, Sep 28 at 1:59 PM
Good Afternoon Mr. Burrs,

I hope this email finds you well and you are safe. We researched your
question(s) and were informed the Armed Forces Medical Examiner
System (AFMES) is the only Federal medical examiner system and they
regularly receive consults to review Civilian autopsy reports and
investigations. In this case, the consult was requested by the Federal
Bureau of Investigations (FBI).  As such, AFMES did not complete an
autopsy and or exhume the remains.  However, AFMES did review the
first and second autopsy reports and photos, scene photos, and
investigative reports which produced a consultation report dated 25
August 2014.

If there is additional information you are seeking, you will need to have a
signed and completed AFMES Form 3, Request for Autopsy Report and
Supplemental Information (see attached) signed on the family's behalf.
Please note, the attached form (with instructions) was sent to the Johnson
family via USPS on 18 September 2023.  The family (or you on the
family's behalf) may return the completed form to AFMES via any of the
following methods:

Email:   dha.dover.afmes.mbx.operations@health.mil

Mail:   Armed Forces Medical Examiner System
          Attn: Office of the Armed Forces Medical Examiner
          115 Purple Heart Drive
          Dover Air Force Base, DE 19902

Fax:   (302) 346-8819

Once AFMES receives the completed form, an unredacted copy of the
requested record will be provided. If you should have any additional
questions and or concerns, please let me know. Have a great rest of your
day!

V/r

Joe Davidge
Defense Health Agency
Freedom of Information Act Public Liaison
J1 A&M Enterprise Administration and Systems Integration Division
Defense Health Agency
DHA FOIA Requester Service Center
7700 Arlington Blvd, Suite 5101
Falls Church, VA 22041
Mobile: 571-225-5553
Email: joseph.e.davidge.civ@health.mil

"If there is no peace in situations in your life, then it is not from God."
Corinthians 14:33

ATTENTION!!!
****************************************************
This email is privileged and/or confidential information that is
Intended solely for the person or person (s) to whom it is
addressed. If you are receiving this email in error, please
delete it and contact the sender immediately at 703-275-6048.
****************************************************
This document may contain information covered under the Privacy Act, 5
USC
552(a), and/or the Health Insurance Portability and Accountability Act
(PL
104-191) and its various implementing regulations and must be protected
in
accordance with those provisions. Health care information is personal and
sensitive and must be treated accordingly. If this correspondence contains
health care information it is being provided to you after appropriate
authorization from the patient or under circumstances that don't require
patient authorization. You, the recipient, are obligated to maintain it in a
safe, secure and confidential manner. Re-disclosure without additional
patient consent or as permitted by law is prohibited. Unauthorized
re-disclosure or failure to maintain confidentiality subjects you to
application of appropriate sanction. If you have received this
correspondence in error, please notify the sender at once and destroy
any copies you have made.

FOR OFFICIAL USE ONLY (FOUO )- Privacy Sensitive

# Exhibit 14

## AUTOPSIES

Three were entities performed autopsies of Kendrick Johnson. The first autopsy was performed by the Georgia Bureau of Investigation on January 14, 2013, with a report dated May 02, 2013. The cause of death is listed as positional asphyxia, and the manner of death was accidental.

The second autopsy was performed by Dr. William R. Anderson after the body had been embalmed and buried. Dr. Anderson listed the cause of death as "blunt force trauma to the right neck involving the right mandible." The date of examination was June 15, 2013, and the report date was August 15, 2013. Dr. Anderson did an addendum to his original report on September 21, 2018, which added "blunt force trauma, right thorax." All of Dr. Anderson's work is listed as requested by Jacquelyn Johnson, Kendrick Johnson's mother. NOTE: The addenda required a second exhumation of the body that had been embalmed over five years. Also, the file on Dr. Anderson's autopsy contains an article from the Orlando Sentinel that quotes the Chief Medical Examiner of Orange County, Shasi Gore, saying that Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

The third autopsy was performed by the Office of the Armed Forces Medical Examiner. The initial report of August 25, 2014, listed the cause of death as positional asphyxia and the manner of death as accidental. A second amended autopsy report was issued on April 18, 2016, and it states that the cause of death and the manner of death was undetermined. This change is attributed to the fact that additional materials were submitted for evaluation by the United States Department of Justice. The most significant item that was added appears to be a report from the South Georgia Medical Center Mobile Healthcare report that states they saw a bruise on the right side of the jaw.

It is also interesting to note that in the interim between the first autopsy, August 25, 2014, and the amended autopsy April 18, 2016, that a female with the Department of Justice and the male performing both autopsies apparently developed a close relationship in which they address their correspondence to each other by their first names. There is actually an email to another

Exhibit 15



**DEFENSE HEALTH AGENCY**
115 PURPLE HEART DRIVE
DOVER AIR FORCE BASE, DELAWARE 19902

Armed Forces Medical
Examiner System

October 17, 2023

Mr. Kenneth Johnson
2800 Tyndall Dr.
Valdosta, GA 31602

Dear Mr. Johnson,

As requested, enclosed within this sealed envelope is a complete copy of the Case Consultation of your son, Mr. Kendrick L. Johnson that was completed by the Armed Forces Medical Examiner System on August 25, 2014.

The information contained within this report is graphically described to ensure complete accuracy of the physical details of the examination. This information can be potentially disturbing to review.

If you have questions regarding any portion of the report provided, please do not hesitate to contact our office to discuss with the Forensic Pathologist of record at (302) 346-8648.

Sincerely,

for

ANDREW J. ROHRER, Colonel, USAF, MC, FS
Armed Forces Medical Examiner

DEPARTMENT OF DEFENSE
ARMED FORCES MEDICAL EXAMINER SYSTEM
115 PURPLE HEART DRIVE
DOVER AFB, DE 19902

MCMR-MEI

# CASE CONSULTATION

**DATE:** 25 AUG 2014

**ACCESSION NUMBER:** C0244-14
**NAME:** JOHNSON, Kendrick L.

**AUTOPSY NUMBER:** DOFS Case # 2013-4000101 (Division of Forensic Sciences Georgia Bueau of Investigation)
Autopsy Examination# PVT-13 (Forensic Dimensions; Heathrow, FL)

**CONTRIBUTOR:**   FBI
2501 Investigation Parkway
Quantico, VA 22135

**CAUSE OF DEATH:** Positional Asphyxia

**MANNER OF DEATH:** Accident

**MATERIALS REVIEWED:** (Division of Forensic Sciences Georgia Bureau of Investigation State of Georgia Autopsy Report Number DOFS Case # 2013-4000101; Two Georgia Bureau of Investigation Assistance Rendered Reports for Case Number 09-0119-26-13; Division of Forensic Sciences Georgia Bureau of Investigation State of Georgia Toxicology Report for DOFS Case # 2013-4000101; Division of Forensic Sciences Georgia Bureau of Investigation State of Georgia DNA Reports for DOFS Case # 2013-4000101; Forensic Dimensions from Heathrow, FL Autopsy Report Number PVT-13; Autopsy photographs from the DOFS Case # 2013-4000101; Scene photographs, and video of the scene). All this material was presented and reviewed at a consensus conference by all Medical Examiners in the Office of the Armed Forces Medical Examiner and they agree with the following findings.

**PERTINENT FINDINGS:** According to reports, the decedent was found deceased, upside-down in a central-hole of a rolled up gym mat which was in the vertical position at the time the decedent was discovered by other students of the high school. Per reports, the decedent was seen via video cameras entering the gym on the afternoon of 10 JAN 2013. The family of the decedent reported him missing either late on the 10th of January 2013 or in the early morning hours of the 11th of January 2013. The decedent was found on the morning of 11 JAN 2013 by students who were walking on top of the rolled up gym mats in the corner of the gym.

FOR OFFICIAL USE ONLY and may be exempt from mandatory disclosure under FOIA. DoD 5400.7R, "DoD Freedom of Information Act Program", DoD Directive 5230.9, "Clearance of DoD Information for Public Release", and DoD Instruction 5230.29, "Sensitivity and Policy Review of DoD Information for Public Release" apply.

**CASE CONSULTATION: C0211-14**
**JOHNSON, Kendrick L.**

2

The initial autopsy examination was performed on 14 JAN 2013 and reported a well-developed and well-nourished black teenage male with congestive-decomposition changes of the head, neck, torso, and upper extremities. No significant natural disease process or injuries were identified. Postmortem toxicological examination was negative. Based on autopsy findings and investigative information the medical examiner opined the cause of death to be due to positional asphyxia and the manner of death to be accident.

A second autopsy examination was performed on 15 JUN 2013 and reported blunt force trauma to the right side of the neck with acute hemorrhage in the soft tissues of the upper neck, acute peri-osteal hemorrhage of the right mandible, and areas of acute hemorrhage involving the carotid artery bifurcation and carotid body. Also it was noted the pulmonary findings were consistent with rapid onset of death and the findings were not consistent with positional asphyxia. Based on autopsy findings and investigative information the second medical examiner opined the cause of death to be due to blunt force trauma, right neck, involving right mandible, and soft tissues, including the area of the carotid body, consistent with inflicted injury. He also noted the injuries appeared to be unexplained, apparent non-accidental, blunt force trauma; further investigation is indicated to determine the etiology of the injuries.

**DISCUSSION:** The decedent was found in a rolled up gym mat in the vertical position. There are no injuries noted in the first autopsy. If that is the case then it is uncertain how the decedent ended up in the gym mat. However, there are injuries that are noted in the second autopsy but there were no photographs to review of these injuries. Even if these injuries to the right side of the neck and mandible exist it is difficult to say they would be fatal injuries. Secondly, if these injuries occurred they would have theoretically happened outside the gym mat where the decedent was found. There is uncertainty to how the decedent ended up in the gym mat if he was assaulted prior to entering the vertical mat. Also it would be very difficult for an individual to lift Mr. Johnson that high to place him in the gym mat. The fact that the decedent is found in a vertical gym mat that is rolled up with a limited space with his head down no matter how he got there lends itself to positional asphyxia. However, the means of how the decedent ended up in this position is unclear.

**OPINION:** Based on the available information, the Office of the Armed Forces Medical Examiner would determine the cause of death to be positional asphyxia and the manner of death to be undetermined.

Sean A. Swiatkowski, DO
CDR MC USN

Exhibit 16



September 28, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your September 24, 2023 request to Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson. Your request was received on September 25, 2023.

The records you have requested are exempt from disclosure. OCGA § 50-18-72(a)(4). Further, the records you have requested are sealed pursuant to an Order of the United States District Court for the Middle District of Georgia and are therefore not subject to disclosure.

Sincerely,

s/Jim Elliott
James L. Elliott

cc:   mary@elliottblackburn.com
      sorecords@lowndescounty.com

Exhibit 17



ELLIOTT
BLACKBURN
ATTORNEYS AT LAW

October 5, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your October 1, 2023, request to the Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson. Your request was received on October 2, 2023.

As an initial matter, we do not accede to any of the arguments or assertions in your records request nor do we agree with your interpretation of any written statements regarding the records requested that have been made by Sheriff Paulk. Any such statements speak for themselves.

The records you have requested are exempt from disclosure. OCGA § 50-18-72(a)(4). Further, the records you have requested are sealed pursuant to an Order of the United States District Court for the Middle District of Georgia and are therefore not subject to disclosure. The Order sealing the records is by its terms sealed and is likewise not subject to disclosure.

Sincerely,

*s/Jim Elliott*
James L. Elliott

cc:     sorecords@lowndescounty.com

Exhibit 18



October 16, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your October 10, 2023, request to the Lowndes County Sheriff's Office under the Georgia Open Records Act for records of the United States District Court for the Middle District of Georgia. Your request was received on October 11, 2023.

As an initial matter, we do not accede to any of the statements in your records request nor do we agree with your assertions regarding alleged statements which you attribute to Sheriff Ashley Paulk.

The records you have requested are records of the United States District Court for the Middle District of Georgia and are sealed pursuant to an Order of that Court. The Order sealing the records is by its terms sealed and is likewise not subject to disclosure. The Sheriff of Lowndes County is not authorized to disclose the records you have requested or any of the information contained therein.

Sincerely,

*s/Jim Elliott*
James L. Elliott

cc:    sorecords@lowndescounty.com

Exhibit 19



ELLIOTT
BLACKBURN
ATTORNEYS AT LAW

November 9, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your November 7, 2023 request to Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson. Your request was received on November 8, 2023.

**Please be advised that Open Records Act requests by civil litigants for records that are sought as part of or for use in any ongoing civil litigation against an agency shall be made in writing and copied to counsel of record for that agency contemporaneously with their submission to that agency. See OCGA §50-18-71(e). Therefore, your ongoing civil litigation against the Sheriff's Office requires that you copy me with any Open Records Act requests submitted to the Sheriff's Office. Please govern yourself accordingly.**

The EMT report you requested was previously provided to you, through counsel, in May 2013. Regardless, I provided a courtesy copy of the report for your convenience and at no cost to you under cover of letter dated November 4, 2023. The copy we sent to you was a duplicate of the report we have on file and is legible. We have enclosed an additional copy of the report and it is likewise legible.

Sincerely,

*s/Jim Elliott*
James L. Elliott

cc:    mary@elliottblackburn.com
       sorecords@lowndescounty.com

3016 North Patterson Street | Valdosta, GA 31602
(229) 242-3333 | contact@elliottblackburn.com



13011520

Peace Officer Signature

Transfer of Patient Custody to Law Enforcement

I, a Peace Officer, have taken the above named person into my custody. I hereby take responsibility for personal effects and care of above named person.

☑ I Agree    ☐ Disagree    Not Applicable

Witness

I acknowledge that I have witnessed the patient/guardian sign this Patient Care Report.

☐ I Agree    ☐ Disagree    ☑ Not Applicable

Signature

Printed Name   Quinn, Kenny LCSO     Date   01/11/2013

Technician

Technician

I acknowledge that I have provided the above assessments/treatments for this patient.

☑ I Agree    ☐ Disagree    Not Applicable

Ambulance Crew Member Statement

My signature below indicates that, at the time of service, the patient was physically or mentally incapable of signing, and that none of the authorized representatives were available or willing to sign on the patient's behalf.

☑ I Agree    ☐ Disagree    Not Applicable

Signature

Printed Name   NICHOLAS TOMLINSON     Date   01/11/2013

Reason Pt. Unable to Sign   deceased

Valuables

Valuables Not Applicable

Inc. Date: 01/11/2013
Incident #: 300390

Patient Name: Johnson, Kendrick L.
Account #:

South Georgia Medical Center Mobile
Healthcare Service

Page: 5
Date Printed: 05/01/2013 08:15

LCSO - KJ - Unredacted 401

13011520

| 10:42 | 0/5 | 0 | 0 /Absent | | | 3 | | x | 0 | |

| | Glasgow Coma Score | | | |
|---|---|---|---|---|
| Date/Time | Glasgow Eye Opening | Glasgow Verbal | Glasgow Motor | Glasgow Coma Score |
| 10:42 | 1 | 1 | 1 | 3 |

**Past Medical History**

**MEDICATION ALLERGIES**     Generic Name     Description

Unable to Obtain Allergies     Unable to Obtain Allergies

**Environmental/Food Allergies**     Description

Not Known

**Patient Medications**     Generic Name     Dosage

Unable to Obtain Patient Medications     Unable to Obtain Patient Medications

**Medical Surgery History**

Unable to Obtain PMH

History Primarily Obtained From   Pregnancy   Advanced Directives       Practitioner Name

Not Applicable

**Procedures and Treatments**

| Time | Crew Name | Location | Size of Equipment | Attempts | Response | Success | Comments |
|---|---|---|---|---|---|---|---|

**Medication Administered**

| Time | Crew Medication | Route | Dosage | Response | PTA | Comments |
|---|---|---|---|---|---|---|

ECG Monitor

| Time | ECG Type | ECG Lead | ECG Interpretation | ECG Ectopy | Cause For Change |
|---|---|---|---|---|---|

**Assessment Exam**

Time of Assessment: 2013-01-11T10:46:00-05:00

Abdomen-left-lower:
Abdomen-left-upper:
Abdomen-right-lower:
Abdomen-right-upper:
Back-cervical:
Back-lumbar:
Back-thoracic:
Chest: Absent Lung Sounds-Right Side, Absent Lung Sounds-Left Side
Ext-left-low:
Ext-left-up:
Ext-right-low:
Ext-right-up:
Eyes-left:
Eyes-right:
GU:
Head:
Heart: Not Available
Mental: Unresponsive
Neck:
Neuro:
Skin: Cold, Uvidity, Mottled

Inc. Date: 01/11/2013
Incident #: 300390

Patient Name: Johnson, Kendrick L.
Account #:

South Georgia Medical Center Mobile
Healthcare Service

Page: 2
Date Printed: 05/01/2013 08:15



CS CamScanner

13011520



**Patient Care Report**

South Georgia Medical Center
Mobile Healthcare Service
400 Woodrow Wilson Drive
Valdosta, GA 31602

Exhibit 20



Exhibit 21

# LOWNDES COUNTY SHERIFF'S OFFICE
P. O. BOX 667 • VALDOSTA, GEORGIA 31603-0667 • TELEPHONE (229) 671-2900

**ASHLEY PAULK/** SHERIFF

This document is a synopsis of the investigation of the death of Kendrick Johnson. All the information is derived from the files provided by the United States Attorney for the Northern District of Ohio. These files, approximately 17 boxes, contained investigative material from the Department of Justice, Federal Bureau of Investigation, United States Attorney for the Middle District of Georgia, Washington, DC Police Department, Georgia Bureau of Investigation, Lowndes County Sheriff's Office, Valdosta-Lowndes County Crime Laboratory, Lowndes County Coroner, Federal Grand Jury testimony by 58 individuals, and additional autopsies by Dr. William R. Anderson and the Department of Defense.

I, Sheriff Ashley Paulk, author of this document, was not the Sheriff when this incident occurred. A resident of Lowndes County all my life, I am presently serving my sixth four-year term as Lowndes County Sheriff and am obligated to provide a document that would come from a person who could present the unbiased facts. In the following pages, I will attempt to address all the rumors and accusations of which I am aware.

Also, portions of the investigative material are subject to an order by Federal Judge Hugh Lawson that seals Grand Jury testimony. Consequently, evidence may be included in this document that will be sworn testimony which cannot be publicly attributed to the person testifying before the Federal Grand Jury.

# KENDRICK JOHNSON

Because this is a very complex case, I feel that it is best to break the case into the following categories:

1.  Conspiring – Cover up
2.  Wrestling team bus departure
3.  Cameras
4.  Shoe storage in wrestling mats
5.  Fight on bus trip to Grayson
6.  Relationship between Taylor Eakin and Kendrick Johnson
7.  Autopsies
8.  The viscera
9.  Observations upon finding the body

## Conspiracy - Coverup

Any person who looks at this case objectively would know that it would be impossible to conceal any evidence due to the involvement of so many agencies and investigators. The FBI states unequivocally in its investigation that there was no cover-up or conspiracy – letter of 12/23/2014.

## Wrestling Team Bus Departure Time

For the Lowndes High School wrestling team to reserve an out-of-city trip, the request must be in writing on a standard form at the beginning of the school semester. On October 24, 2012, the form shows a departure time of 4:00 p.m. The actual time of the departure was approximately 12:30 p.m. on January 10, 2013. This is documented by sworn testimony from individuals on the bus, the bus driver, and cell phone tower data. The bus arrived in Macon, Georgia, shortly before 4:00 p.m. The arrival time in Macon is documented by motel check in time and weigh-in data for the wrestlers. This data also establishes that Brandon Bell was on the bus and at weigh-in in Macon. This also verifies that Brandon Bell left the school campus approximately one hour before Kendrick Johnson was last seen alive in the old gym at 1:27 PM on January 10, 2013.

2

Exhibit 22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON;
JACQUELYN JOHNSON,

        Plaintiffs

        v.

GEORGIA BUREAU OF
INVESTIGATIONS;
LOWNDES COUNTY SHERIFF
OFFICE,
        Defendants.

Civil Action No: 1:23-cv-04218

<u>JURY TRIAL DEMAND</u>

Affidavit of Renee McGhee

I, Renee McGhee, under penalty of perjury, state the following:

1. I, Renee McGhee, am over the age of 18 and I am legally competent to give this Affidavit which is freely and voluntary given. The facts contained herein are based on my own personal knowledge. In addition, I understand this affidavit may be used for any purpose to be permitted by law.

2. I contacted the Kendrick Johnson Foundation concerning the death of my son Steven Johnson and the absurd claims by the Georgia Bureau of Investigation that his cause of death was Asphyxia from drowning by

accident, similarly to the absurd claims by the GBI that Kendrick's cause of death was accidental positional asphyxia.

3. In both cases its blatantly obvious the victims, Kendrick Johnson and my son Steven were severely beaten by no accident.

4. The before and after pictures of both Kendrick and Steven speak volumes.

5. Additionally, the injuries to both Steven and Kendrick's back cannot be ignored or justified by any accidental terms.

6. I learned from law enforcement that injuries to Steven's back would only have come from a billy club.

7. The body of my son Steven was recovered, handcuffed from the Ocmulgee River in 2000. His face mutilated with injuries on par with, if not worse than that of Emmitt Till. His legs stuck one across the other post rigor mortis, with evidence of restraint markings around his ankles.

8. Dr. Melissa Sims-Stanley, the GBI Regional Medical Examiner for the Central Crime Lab is the documented medical examiner for Steven's autopsy who "determined" Steven's cause of death was accidental drowning.

9. According to public information, Sims-Stanley had barely completed her residency at the Medical University of South Carolina when she became the Central Georgia Regional Medical Examiner.

2

10. I also learned from Dr. Sims-Stanley's ex-husband Dr. T. Sachy that she wasn't qualified to perform the autopsy on a high profile case like my son's.

11. My requests to the coroner to have my son's body moved to Atlanta for a full examination was declined.

12. The GBI concluded Steven  accidentally drowned.

13. The initial autopsy report wasn't signed and when I did receive a copy of the signed report, the signature date did not match the alleged date the autopsy was performed.

14. I learned from Dr. Joye Carter, MD, J and M Forensics did a case review for Steven's death and determined my son's injuries were inconsistent with accidental drowning.

15. I learned from Dr. Henry Johnson, Diplomate, American Board Internal Medicine performed a Mortality Review regarding Steven's death.

16. Dr. Johnson's report noted the post-mortem findings my sons lungs were inconsistent with drowning.

17. Dr. Johnson's report writes, "The post-mortem findings on Mr. Johnson's lungs are inconsistent with drowning on gross examination. His lungs were devoid of liquid aspiration and pleural fluids were insignificant."

18. Dr. Johnson concluded, "In no unequivocal terms it appears that Steven Johnson was not breathing when his body hit the water."

19. I learned from GBI agent Todd Crosby November of 2022 my son's skull was fractured and the medical examiner's documentation of bilateral petrous ridge hemorrhaging was too vague.

20. I also learned from ex-agent John Doe that my son's diagnosis was blunt or sharp forced trauma by the bilateral petrous ridge hemorrhaging of the temporal skull bones.

21. I personally spoke with multiple individuals regarding my son's death, some were in the vicinity of the location where law enforcement officers allege Steven escaped their custody, handcuffed with ankle restraints, and outran them in spite of officers being unrestrained.

22. To my knowledge law enforcement investigators did not interview any of the people I spoke with who were in or near the vicinity the night they allege Steven escaped their custody.

23. Dr. Johnson also noted, "Since the autopsy was completed within twenty-four-hours of the body being recovered, yet lacked a thorough pathological assessment, it remains a mystery how homicide was so quickly excluded?"

24. Just like with Kendrick Johnson, the GBI claimed no injuries and accidental asphyxia where the physical evidence contradicts the claim.

25. My grandson Rashad Jones was killed in an officer involved incident on 01/25/2023.

26. Protocol for all officer involved fatalities is for the GBI to take control of the scene and begin investigating.  This did not happen in the case of my grandson.

27. Further, under state law a cause of death should have been provided within 72 hours of the medical examiners autopsy.

28. To date there is no cause of death from the GBI medical examiner.

29. On two different dates after the alleged vehicle accident that killed my grandson, pictures were taken of the car.

30. The 1st set of pictures show what could be bullet holes on the air bags.

31. The 2nd set of pictures show the holes had been altered.

32. I also took a picture of my grandsons body.

33. An injury on his forehead did not appear consistent with any injuries from a car crash however could be consistent with a gun related injury.

34. I believe the GBI is covering up another murder just like the incident with his father, my son Steven Johnson.

35. All evidence I've seen, inspected, and evaluated supports my belief.

36. It's been over 23 years since Steven's and almost a year since my grandson's death, nothing has changed with the GBI!

I have read the foregoing Affidavit and hereby declare under penalty of perjury
that it is true and correct and it was executed the 31th day of December, 2023.

*/s/ Renee Mcghee*_____
Renee McGhee

Exhibit 23

**Kendrick Johnson**



**Steven Johnson**

















Exhibit 24



Exhibit 25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KENNETH JOHNSON, et al, | |
| Plaintiffs | CIVIL ACTION NO: 1:23-cv-04218-LMM |
| v. | JURY TRIAL DEMAND |
| GEORGIA BUREAU OF INVESTIGATIONS, et al, Defendants. | |

Affidavit of Kenneth Johnson

I, Kenneth Johnson, under penalty of perjury, state the following:

1. I, Kenneth Johnson, am over the age of 18 and I am legally competent to give this Affidavit which is freely and voluntary given. The facts contained herein are based on my own personal knowledge. In addition, I understand this affidavit may be used for any purpose to be permitted by law.

2. On or about October 6, 2023, my wife Jackie and I submitted a request to State Office of Vital Records to correct the cause of death on our son's death certificate.

3. We completed the appropriate forms, supplied vital records with the report from the autopsy performed by Forensic Pathologist Dr. William Anderson, as well as multiple pictures of our sons injuries.

4. Several weeks passed without any response from vital records so I called them to inquire about the status of our request.

5. I was informed our request had not been received by the vital records department in spite of having confirmation from the United States Postal Service the mailing had been successfully delivered.

6. A few weeks went by when I received a phone call from the State Office of Vital Records regarding our request.

7. I learned the State Office of Vital Records had in fact received our request.

8. I learned that in spite of the findings from the autopsies performed by Forensic Pathologist Dr. Anderson and the evidence showing numerous injuries all over our sons body and directly contradicting the State Medical Examiners autopsy report, only the GBI medical examiner could correct the death certificate.

9. I learned that the State Office of Vital Records had been unable to locate Dr. Kraft to confront her with the evidence of our sons injuries that Dr. Kraft deliberately left out of her autopsy report.

10. On February 6, 2024, I contacted vital records to inquire about the status of our request and whether Dr. Kraft had been located to review the evidence and correct the death certificate.

11. I learned that Dr. Kraft had not been located and the death certificate had

    not been corrected.

I have read the foregoing Affidavit and hereby declare under penalty of perjury

that it is true and correct and it was executed the 13th day of February 2023.


                                    */s/ Kenneth Johnson_____*
                                      Kenneth Johnson

Exhibit 26



# STATE BAR OF GEORGIA
## GRIEVANCE
## CONFIDENTIAL

**PLEASE TYPE OR PRINT LEGIBLY IN BLACK INK ONLY**
**DO NOT ALTER THIS FORM**

YOUR NAME: Kenneth Lamar Johnson

MAILING ADDRESS:  2800 Tydnall Drive                Valdosta            GA
                   Street or P.O. Box               City              State      Zip

YOUR EMAIL ADDRESS:    mikekijohnson48@gmail.com

YOUR PHONE NUMBERS: (H/CELL) 229.560.5555              (W)

NAME OF THE ATTORNEY:  James Elliott
                       Fill out a separate form for each attorney. **Do not list law firms.**

ADDRESS OF THE ATTORNEY:  3016 North Patterson Street, Valdosta, GA 31602-0579

DATE OF FIRST CONTACT WITH ATTORNEY: 09/21/2023_____DATE OF LAST CONTACT WITH ATTORNEY:  11/27/2023

DOES THIS ATTORNEY CURRENTLY REPRESENT YOU?  YES ☐  NO ☑       WAS THIS YOUR ATTORNEY? YES ☐ NO ☑

IS YOUR CASE:   CRIMINAL ☐  CIVIL ☑       CASE #  1:23-cv-04218-LMM

COUNTY:_____       OR FEDERAL DISTRCIT: NORTHERN ☑ MIDDLE ☐ SOUTHERN ☐

**CLEARLY DESCRIBE YOUR COMPLAINT AND ATTACH SUPPORTING DOCUMENTS:**

American Bar Association Rule 4.1 indicates "A misrepresentation if the lawyer  incorporates or affirms a

statement of another person that the lawyer knows is false.  Georgia Code §16-10-20.1(a) makes it unlawful to

alter, conceal, cover-up, or create a document and file, enter, or record in in a public record or court of this state

or of  the United States knowing or having reason to believe the document has been altered or contains materially

false, fictitious, or fraudulent information.  The evidence  contained in this complaint demonstrate James Elliott

is guilty of both!

If more space is needed, please attach other pages. **Please do not write on the back.**

| Return to: | State Bar of Georgia | "I affirm that I have read and understand the information and instructions. The information I have provided here is true to the best of my knowledge." |
|---|---|---|
| | Office of the General Counsel | SIGNATURE: /s/ Kenneth Lamar Johnson |
| | 104 Marietta St. NW, Suite 100 | |
| | Atlanta, GA 30303 | DATE:  January 18, 2024 |

*OPTIONAL: PLEASE PROVIDE THE NAME AND PHONE NUMBER OF SOMEONE WE CAN CONTACT IF WE HAVE DIFFICULTY CONTACTING YOU.*

NAME OF CONTACT PERSON: Jackie Johnson

PHONE NUMBERS OF CONTACT PERSON: (H)_____  (CELL) 229.531.6841

Revised 07.02.2020

# STATE BAR OF GEORGIA

GRIEVANCE CONTINUED

CONFIDENTIAL

During the months of September 2023 through November 2023 I have made several requests to the Lowndes

County Sheriff's Department for an autopsy report performed on my minor son Kendrick Lamar

Johnson in 2014 by the Armed Forces Medical Examiner as documented in the January 25, 2022 LCSO's

investigation synopsis (Exhibit 1) regarding Kendrick's death.  The same claim has been reported in news

media's across the United States courtesy of Lowndes County Sheriff Ashley Paulk.  See Exhibit 2

According to Mr. Elliott, a U.S. District Court Judge for the Middle District of Georgia, sealed the autopsy

report so restricted that the parents of Kendrick were prohibited from obtaining the federal judges name and

Court Order sealing the autopsy. See Exhibit 3

Then after requesting the EMT report referenced  in the investigation synopsis (Exhibit 1), James Elliott

provided the November 9, 2023 response which included an altered EMT report, page 4 clearly blurred so the

information is not legible, contrary to claims made by Mr. Elliott in his letter!

As egregious as the behavior by Mr. Elliott as documented in the attached exhibits, I believe this is just the tip of

the iceberg of Mr. Elliott's involvement in a much broader agreement between multiple government agencies to

deceive the public, the federal government, my wife and myself regarding Kendrick's true cause of death, which

the material facts and physical evidence in totality unmistakably support my son was murdered!

As such, Mr. Elliott deserves nothing short of the most severe disciplinary measures under the law!

Exhibit 1

KENDRICK JOHNSON

## AUTOPSIES

Three were entities performed autopsies of Kendrick Johnson. The first autopsy was performed by the Georgia Bureau of Investigation on January 14, 2013, with a report dated May 02, 2013. The cause of death is listed as positional asphyxia, and the manner of death was accidental.

The second autopsy was performed by Dr. William R. Anderson after the body had been embalmed and buried. Dr. Anderson listed the cause of death as "blunt force trauma to the right neck involving the right mandible." The date of examination was June 15, 2013, and the report date was August 15, 2013. Dr. Anderson did an addendum to his original report on September 21, 2018, which added "blunt force trauma, right thorax." All of Dr. Anderson's work is listed as requested by Jacquelyn Johnson, Kendrick Johnson's mother. NOTE: The addenda required a second exhumation of the body that had been embalmed over five years. Also, the file on Dr. Anderson's autopsy contains an article from the Orlando Sentinel that quotes the Chief Medical Examiner of Orange County, Shasi Gore, saying that Dr. Anderson lied and that he had a "total fabrication of his imagination" in another case he autopsied.

The third autopsy was performed by the Office of the Armed Forces Medical Examiner. The initial report of August 25, 2014, listed the cause of death as positional asphyxia and the manner of death as accidental. A second amended autopsy report was issued on April 18, 2016, and it states that the cause of death and the manner of death was undetermined. This change is attributed to the fact that additional materials were submitted for evaluation by the United States Department of Justice. The most significant item that was added appears to be a report from the South Georgia Medical Center Mobile Healthcare report that states they saw a bruise on the right side of the jaw.

It is also interesting to note that in the interim between the first autopsy, August 25, 2014, and the amended autopsy April 18, 2016, that a female with the Department of Justice and the male performing both autopsies apparently developed a close relationship in which they address their correspondence to each other by their first names. There is actually an email to another

5

Exhibit 2

# LOWNDES COUNTY SHERIFF'S OFFICE
# OPEN RECORDS REQUEST FORM

120 Prison Farm Rd., Valdosta, Georgia 31601-0667 (229) 671-2900
**Ashley Paulk / Sheriff**

Pursuant to the Open Records law, I would like to: ☐ inspect and copy; or ■ obtain copies of (please check one) the following Lowndes County records: (In order to reduce administrative and copying charges, please provide as detailed a description as possible of the records that you are requesting. If searching by name, please include date of birth, SSN and any other identifying information. Please include case number and address if you have it.) Request forms can be emailed to sorecords@lowndescounty.com, faxed to (229)333-5141 or mailed to 120 Prison Farm Road, Valdosta, GA 31601, once completed.
Requesting copies of the fourth Kendrick Johnson autopsy purportedly performed by an Armed Forces Medical Examiner from

the Department of Defense according to Sheriff Paulk. According to Paulk, the results from the DoD were the same as the GBI.

https://www.walb.com/2023/09/07/kendrick-johnsons-parents-expected-file-documents-alleging-false-information-against-lowndes-co-sheriff/

Please check one:

■ I would like to review the documents/receive the copies within three business days of this request if the records are available; however, I understand that if the records cannot be produced within three business days, a timetable for their release will be provided to me; or
☐ I do not need the documents/access within three business days, but would like to review the documents/receive the copies by                    (insert desired timetable).  **ONLY USE IF BEYOND THREE BUSINESS DAYS.**

I understand that pursuant to O.C.G.A. §50-18-71, I may be charged administrative and copying fees for the cost to search, retrieve, copy and supervise access to the requested documents. This fee represents the hourly rate of the lowest paid employee with the necessary skills and training to respond to the request, with no charge for the first fifteen minutes that it takes to respond to the request. The charge for copies is 10¢ per page for letter or legal sized documents and the actual cost for non-standard documents or electronic media; however,

higher fees for certified copies or other specialized records may be charged provided by law. I understand that I will be asked to prepay all costs associated with retrieving the records before the request will be processed if the estimated cost for producing the records exceeds $500.00 or if I have failed to pay for requested records in the past. I agree to pay all copying and/or administrative costs incurred with fulfilling my open record request. If there are any questions about my request, I may be contacted at (229) 560-5555 or by email at mikekjjohnson48@yahoo.com.

Sincerely,

_____                                    _____
Requestor (Signature)                                                                                Date

Kenneth Johnson                                         (printed name)

2800 Tydnall Drive                                      (address)

Valdosta, GA 31602
_____

Lowndes County Sheriff Ashley Paulk closed the case at the beginning of 2022, nearly 10 years after Kendrick's death. Paulk ruled the death an accident saying Kendrick died of positional asphyxiation when he fell into a vertical gym mat while reaching for something.

In 2022, WALB sat down with Paulk, and he explained why he feels 100% confident that there was no foul play in the case.

"The first autopsy was done by the GBI, and it says positional asphyxiation accident. Approximately two years later, he was exhumed, and it was paid for autopsy by Dr. Anderson," Paulk said. "And there's a fourth autopsy done by the Department of Defense that came back identical to what the GBI said initially. If somebody comes back and says you're wrong, I'm wrong! Prove it to me."

Exhibit 3



October 5, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your October 1, 2023, request to the Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson. Your request was received on October 2, 2023.

As an initial matter, we do not accede to any of the arguments or assertions in your records request nor do we agree with your interpretation of any written statements regarding the records requested that have been made by Sheriff Paulk. Any such statements speak for themselves.

The records you have requested are exempt from disclosure. OCGA § 50-18-72(a)(4). Further, the records you have requested are sealed pursuant to an Order of the United States District Court for the Middle District of Georgia and are therefore not subject to disclosure. The Order sealing the records is by its terms sealed and is likewise not subject to disclosure.

Sincerely,

*s/Jim Elliott*
James L. Elliott

cc:     sorecords@lowndescounty.com

Exhibit 4



ELLIOTT
BLACKBURN
ATTORNEYS AT LAW

November 9, 2023

Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Open Records Act request

Dear Mr. Johnson:

This is to respond to your November 7, 2023 request to Lowndes County Sheriff's Office under the Georgia Open Records Act for records regarding Kendrick Johnson. Your request was received on November 8, 2023.

**Please be advised that Open Records Act requests by civil litigants for records that are sought as part of or for use in any ongoing civil litigation against an agency shall be made in writing and copied to counsel of record for that agency contemporaneously with their submission to that agency. See OCGA §50-18-71(e). Therefore, your ongoing civil litigation against the Sheriff's Office requires that you copy me with any Open Records Act requests submitted to the Sheriff's Office. Please govern yourself accordingly.**

The EMT report you requested was previously provided to you, through counsel, in May 2013. Regardless, I provided a courtesy copy of the report for your convenience and at no cost to you under cover of letter dated November 4, 2023. The copy we sent to you was a duplicate of the report we have on file and is legible. We have enclosed an additional copy of the report and it is likewise legible.

Sincerely,

*s/Jim Elliott*
James L. Elliott

cc:     mary@elliottblackburn.com
        sorecords@lowndescounty.com

13011520

**Peace Officer Signature**

**Transfer of Patient Custody to Law Enforcement**

I, a Peace Officer, have taken the above named person into my custody. I hereby take responsibility for personal effects and care of above named person.

√ I Agree          I Disagree          Not Applicable

**Witness**

I acknowledge that I have witnessed the patient/guardian sign this Patient Care Report.

I Agree          I Disagree          √ Not Applicable

**Signature**

**Printed Name** Quinn, Kenny LCSO          **Date** 01/11/2013

**Technician**

I acknowledge that I have provided the above assessments/treatments for this patient.

√ I Agree          I Disagree          Not Applicable

**Ambulance Crew Member Statement**

My signature below indicates that, at the time of service, the patient was physically or mentally incapable of signing, and that none of the authorized representatives were available or willing to sign on the patient's behalf.

√ I agree          I Disagree          Not Applicable

**Signature**

**Printed Name** NICHOLAS TOMLINSON          **Date** 01/11/2013

**Reason Pt. Unable to Sign** deceased

**Valuables**

Valuables: not Applicable

Inc. Date: 01/11/2013          Patient Name: Johnson, Kendrick L.          South Georgia Medical Center Mobile
Incident #: 300390          Account #:          Healthcare Service          Page: 5
Date Printed: 05/01/2013 08:15

LCSO - KJ - Unredacted 401

13011520

| 10:42 | 0/0 | 0 | 0 Absent | | 3 | | x | | 0 | | |

### Glasgow Coma Score

| Date/Time | Glasgow Eye Opening | Glasgow Verbal | Glasgow Motor | Glasgow Coma Score |
|---|---|---|---|---|
| 10:42 | 1 | 1 | 1 | 3 |

### Past Medical History

**MEDICATION ALLERGIES**

| Generic Name | Description |
|---|---|
| Unable to Obtain Allergies | |

**Environmental/Food Allergies**

| | Description |
|---|---|
| Not Known | |

**Patient Medications**

| Generic Name | Dosage |
|---|---|
| Unable to Obtain Patient Medications | |

**Medical Surgery History**

Unable to Obtain PMH

**History Primarily Obtained From** Pregnancy 'Advanced Directives

Not Applicable

| | Practitioner Name |
|---|---|

### Procedures and Treatments

| Time Crew Name | Location | Size of Equipment | Attempts · Response · Success Comments |
|---|---|---|---|

### Medication Administered

| Time Crew Medication | Route | Dosage | Response | PTA | Comments |
|---|---|---|---|---|---|

### ECG Monitor

| Time | ECG Type | ECG Lead | ECG Interpretation | ECG Ectopy | Cause For Change |
|---|---|---|---|---|---|

### Assessment Exam

Time of Assessment: 2013-01-11T10:46:00-05:00

Abdomen-left-lower:
Abdomen-left-upper:
Abdomen-right-lower:
Abdomen-right-upper:
Back-cervical:
Back-lumbar:
Back-thoracic:
Chest: Absent Lung Sounds-Right Side, Absent Lung Sounds-Left Side
Ext-left-low:
Ext-left-up:
Ext-right-low:
Ext-right-up:
Eyes-left:
Eyes-right:
GU:
Head:
Heart: Not Available
Mental: Unresponsive
Neck:
Neuro:
Skin: Cold, Livid ty, Mottled

Inc. Date: 01/11/2013
Incident #: 300390

Patient Name: Johnson, Kendrick L.
Account #:

South Georgia Medical Center Mobile
Healthcare Service

Page: 2
Date Printed: 05/01/2013 08:15



13011520

**Patient Care Report**

South Georgia Medical Center
Mobile Healthcare Service
400 Woodrow Wilson Drive,
Valdosta, GA 31602

Incident Date: 01/11/2013

Account #:

Patient Care #: 894
Life Threat: Trauma



## Patient Information

**Name:** Johnson, Kendrick L.

Address: 518 E. Brookwood Dr
Valdosta, Lowndes, GA 31601

| | | |
|---|---|---|
| Age: 17 Years | | D.O.B: 10/18/1995 (confirmed) |
| Gender: Male | | SSN: 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 |
| Weight: KG / LB | | Race: Black or African American |
| Phone: | | Ethnicity: |

## Response Times and Milpage

**Call Type:** Cardiac Arrest
**Resp. Mode: Lights and Siren**
Urgency: Immediate
Response: 911 Response
Location: Public Building (schools, gov, offices)
Address: 1808 Norman Dr
Lowndes High School
Valdosta, Lowndes, GA 31601
Zone: 5

**Disposition:** Dead at Scene
Resp. Mode: Not Applicable
Destination: REFUSED THIS TRANSPORT, Valdosta, GA 31602
Dest. Determ.: Not Applicable
Diverted From:
Response Delay: None
Scene Delay: None

Est Resp. Arri:
PSAP: 10:12
Disp. Notified: 10:32
Unit Disp.: 10:32
Enroute: 10:33
At Scene: 10:40
At Patient: 10:41
Depart:
Arrive Dest:
In Service: 11:01
In Quarters:
Cancelled:

Incident #: 300390

Start Miles: 577.1
Scene Miles: 581.6

Dest. Miles: 681.6

End Miles: 681.6

To Scene: 4.5

To Dest: 0.0

To End: 0.0

Call Sign: SQUAD 3
Veh. #: 1992 92-H3
Veh. Type: Ambulance
Primary Role: ALS Ground Transport

First Responder Agencies #: Valdosta Fire Department

## Unit Personnel

| Crew Member | Crew Member Level | Crew Member Role |
|---|---|---|
| TORA, PAREDN, NICHOLAS | EMT-Paramedic | Primary Patient Caregiver |
| UROS, MARY JO | EMT(Intermediate) | Secondary Patient Caregiver |

## Call Information

**Destination Name:** REFUSED THIS TRANSPORT
**Destination Type:** Not Transported
**Destination Determination:** Not Applicable
**Vehicle Type:** Ambulance

Response Request: 911 Response (Scene)
Response Disposition: Dead at Scene
Lights Sirens To Scene: Lights and Sirens
Lights Sirens From Scene: Not Applicable

Factors Affecting Response
None

## Patient Condition

Possibly Impression: Cardiac Arrest
Chief Complaint: Code Blue X
Onset Date/Time: 01/11/2011 at 10:30
Alcohol/Drug Use:
Injury Intent: Not Known
Cause of Injury:
Dispatch Reason: Cardiac Arrest

Primary Symptom
Cardiac Arrest
Other Associated Symptoms

## Patient Vitals

| Time | B/P | Pulse | Rhythm | Resp. | Effort | SpO2 | EtCO2 Qual. | EtCO2 | GCS | Pain | Stroke Sc | PTA | B.G. | RTS | Limb | Patient Position |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Inc. Date: 01/11/2013
Incident #: 300390

Patient Name: Johnson, Kendrick L.
Account #:

South Georgia Medical Center Mobile
Healthcare Service

Page: 1
Date Printed: 05/01/2013 09:35

LCSO - KJ - Unredacted 397

Exhibit 27



**State Bar of Georgia**

Office of the General Counsel

PAULA J. FREDERICK
*General Counsel*

MERCEDES G. HALL
LEIGH BURGESS
WILLIAM V. HEARNBURG, JR.
JAMES S. LEWIS
JENNY K. MITTELMAN
ANDREEA N. MORRISON
ADRIENNE D. NASH
WILLIAM D. NESMITH, III
WOLANDA R. SHELTON
JOHN J. SHIPTENKO

January 29, 2024

*CONFIDENTIAL*
Mr. Kenneth L. Johnson
2800 Tydnall Drive
Valdosta, GA 31602

Re: Grievance filed against Mr. James L. Elliott, Bar #244244

Dear Mr. Johnson:

Thank you for submitting your grievance to the Office of the General Counsel of the State Bar of Georgia. We have carefully reviewed the grievance you filed with our office against attorney James L. Elliott. You allege that Mr. Elliott openly colluded with various government agencies to conceal the true cause of your son's death.

The Supreme Court of Georgia has authorized the State Bar of Georgia to discipline attorneys if they violate any of the Rules set forth in the Georgia Rules of Professional Conduct. If the attorney has not violated one of these Rules, we are unable to take action against him or her. Though the State Bar of Georgia functions as the disciplinary branch of the Supreme Court of Georgia for attorneys licensed in Georgia, we are not a court of law, nor do we function as one; however, similar to someone bringing a legal action in court, the complainant has the responsibility of providing the documents necessary to support any grievance against an attorney. The evidentiary value of the documents included fail to support a grievance against Mr. Elliott. Since the information furnished is not sufficient to prove any violation of the State Bar of Georgia's ethics rules by the attorney, the grievance is dismissed.

Nevertheless, dismissal of the grievance by our office does not affect any other right you may have under Georgia law.

Thank you.

Sincerely Yours,

*Leigh Burgess*

Leigh Burgess
Grievance Counsel
LB/lnc

cc: James L. Elliott

Exhibit 28



The Johnsons say their next step may be to take legal action against the Georgia State Bar.