UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNETH JOHNSON and
JACQUELYN JOHNSON,

        Plaintiffs,

    v.

GEORGIA BUREAU OF
INVESTIGATION, et al.,

        Defendants.

CIVIL ACTION NO.

1:23-CV-04218-SEG

## O R D E R

This case is before the Court on the motions to dismiss filed by Defendants. (Doc. 147, 150, 155, 156, 158, 165, 175.) Plaintiffs have also filed various motions. (Doc. 159, 161, 171, 180, 183, 186, 192, 197, 200, 206, 209.) Upon careful consideration, the Court enters the following order.

## I.    Background

### A. Factual Allegations[1]

This case arises from the tragic death of Plaintiffs' son, Kendrick Lamar Johnson ("KJ"). KJ was a sophomore at Lowndes County High School in

---

[1] The following facts are derived from Plaintiffs' second amended complaint. (Doc. 140.) For purposes of resolving the pending motions to dismiss, the Court accepts the well-pled allegations as true and construes them in the light most favorable to Plaintiffs. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

Valdosta, Georgia, at the time of his passing.  (Second Am. Compl., Doc. 140 ¶ 11.)  On January 11, 2013, his body was found inside a rolled-up wrestling mat in the school's gymnasium.  (*Id.*)  Photos indicate that KJ's body was found in a pool of blood with facial lacerations to the ear, lip, and knuckles.  (*Id.* ¶ 12.)  An EMT report noted bruising to KJ's jaw and abrasions to his right wrist and left hand.  (*Id.* ¶ 13.)

The Lowndes County Coroner investigated.  During his examination of the body at the scene, he determined that KJ's shoulder width was 19 inches.  (*Id.* ¶ 14.)  The coroner later reported that "the investigative climate was very poor to worse when I arrived on scene."  (*Id.* ¶ 20.)  He reported that law enforcement did not cooperate with him, KJ's body had been moved, and the sealed body bag had been opened.  (*Id.* ¶¶ 20–21.)

On January 13, 2013, multiple news articles reported official information from Lt. Stryde Jones, a deputy for the Lowndes County Sheriff's Office ("the Sheriff's Office").  (*Id.* ¶ 16.)  Lt. Jones declared that the initial investigation had determined that the gym mat in which KJ's body was found had an opening about two feet wide.  (*Id.*)  Lt. Jones also stated that KJ's death "appears to be just a terrible accident."  (*Id.*)  The news articles also reported, "Investigators say it appears [KJ] was on top of mats that were standing up right, when he possibly fell or reached inside the hole of the mat to get a shoe

that got stuck." (*Id.* ¶ 17.)  A January 25, 2013 laboratory report from Lowndes County claimed that there were no signs of blunt-force trauma or wounds on KJ's body.  (*Id.* ¶ 23.)

The Georgia Bureau of Investigation ("the GBI") conducted an autopsy of KJ's body.  The GBI's medical examiner, Dr. Maryann Gaffney-Kraft,[2] performed the autopsy.  (*Id.* ¶¶ 200–15.)  Plaintiffs allege that Dr. Gaffney-Kraft performed unnecessary incisions intended only to conceal KJ's injuries. (*Id.* ¶ 213.)  Plaintiffs also allege that Dr. Gaffney-Kraft failed to properly reconstruct and suture KJ's body for return to his family.  (*Id.* ¶¶ 209–10.)  KJ's body was returned to Plaintiffs on January 14, 2013, so they could make burial arrangements.  (*Id.* ¶ 18.)  KJ's brain and internal organs were missing.  (*Id.*) The May 2, 2013 autopsy report by the GBI determined that KJ died from accidental positional asphyxiation, noting "no significant injuries." (*Id.* ¶ 24.)

Plaintiffs obtained an independent autopsy.  (*Id.* ¶ 26.)  They petitioned a court and spent thousands of dollars to exhume KJ's body.  (*Id.*)  The independent autopsy was performed by Dr. William Anderson.  (*Id.* ¶ 27.)  On

---

[2] Plaintiffs allege that the medical examiner's name is "Dr. Kraft," but they attached excerpts from a deposition transcript showing that the medical examiner's name is Maryann Gaffney-Kraft.  (Doc. 140 at 63.)

or about June 15, 2013, Dr. Anderson reported that KJ's cause of death was unexplained non-accidental blunt force trauma. (*Id.*)

CNN obtained surveillance video from Lowndes County High School recorded around the time of KJ's death. (*Id.* ¶ 28.) CNN hired a video surveillance analyst to analyze the video. (*Id.* ¶¶ 28–29.) CNN published an article with the analysis on November 21, 2013. (*Id.* ¶ 30.) CNN's analyst found the video "highly suspicious." (*Id.*) The analyst determined that the video had been altered and that key footage was missing. (*Id.* ¶¶ 31–33.) Lowndes County School District ("the School District") provided Plaintiffs with video of the gymnasium where KJ's body was found. (*Id.* ¶ 34.) This video was also edited and missing footage, like the video obtained by CNN. (*Id.* ¶ 35.)

Lowndes County Sheriff Ashley Paulk reopened the investigation in 2021 in response to public demand. (*Id.* ¶ 40.) He announced the conclusion of the investigation and released a 16-page synopsis on January 25, 2022. (*Id.* ¶¶ 41–42.) According to the synopsis of the Sheriff's Office investigation, KJ "climbed on top of wrestling mats standing six feet tall that were up against the back gym wall, reached into the opening in the mat for a 'pair' of shoes when he accidentally fell inside the mat, got stuck, and suffocated." (*Id.* ¶ 43.) The report included a diagram suggesting that the opening in the mat was only 14 inches wide, making it narrower than KJ's shoulder width. (*Id.* ¶ 44.)

The Sheriff's Office report contained a news article from the *Orlando Sentinel* about Plaintiffs' independent examiner, Dr. Anderson. (*Id.* ¶ 46.) The *Sentinel* quoted Dr. Anderson's former supervisor, Dr. Shasi Gore, saying that Dr. Anderson had lied and had a "total fabrication of his imagination" in an autopsy in a different case. (*Id.*) However, the Sheriff's Office did not report that Dr. Gore herself had been disciplined and ordered to stop performing autopsies by the Florida Medical Examiners Commission. (*Id.* ¶ 47.)

The synopsis of the Sheriff's Office report claimed that the Department of Defense ("DOD") Medical Examiner performed an autopsy on KJ in 2014. (*Id.* ¶ 48.) The synopsis claimed that the DOD Medical Examiner's autopsy results were identical to the GBI autopsy results. (*Id.* ¶ 49.)

At some point, Plaintiffs filed a complaint with the State Bar of Georgia against counsel for Lowndes County, Mr. James Elliott. (*Id.* ¶ 219.) On February 6, 2024, Gray Television, Inc. ("Gray TV") broadcast alleged comments by Mr. Elliott that the dismissal of Plaintiffs' bar complaint against him was proof that Plaintiffs had engaged in a years-long pattern of making unsubstantiated claims. (*Id.*) CNHI, LLC published Mr. Elliott's comments two days later in its newspaper, *The Valdosta Daily Times*. (*Id.* ¶ 234.)

5

**B. Procedural History**

The instant action is one of several cases that Plaintiffs have filed against various defendants in relation to KJ's tragic death.  (*See, e.g.,* Doc. 57-3, 57-5, 57-7 (listing cases)).

In this case, Plaintiffs, proceeding pro se, initially brought suit against the GBI and the Sheriff's Office.  (Doc. 1.)  Plaintiffs filed their first amended complaint on January 8, 2024, adding the Valdosta-Lowndes Regional Crime Lab ("the Crime Lab"), the Lowndes County Board of Education ("the School Board"), and an anonymous "John Doe" FBI agent as defendants.  (Doc. 43.) The GBI, the Sheriff's Office, the Board of Education, and the Crime Lab filed motions to dismiss.  (Doc. 47, 55, 57, 61.)  Plaintiffs sought leave to amend to add Gray TV and CNHI as defendants, among others.  (Doc. 73.)

The Court granted the motions to dismiss and dismissed Plaintiffs' first amended complaint.  (Doc. 102.)  The Court found that the GBI was shielded by the Eleventh Amendment and sovereign immunity; that the Sheriff's Office, the Crime Lab, and the School Board were not legal entities capable of being sued; and that the John Doe FBI agent was not adequately identified.  (*Id.* at 14–20.)   The Court denied Plaintiffs leave to amend, finding Plaintiffs' proposed claims against new and existing defendants would be futile.   (*Id.* at 7–13.)  Plaintiffs appealed the Court's rulings.  (Doc. 104.)

The Eleventh Circuit Court of Appeals vacated the District Court's dismissal of the first amended complaint. *Johnson v. Ga. Bureau of Investigation*, No. 24-11961, 2025 WL 574261 (Feb. 21, 2025). The Eleventh Circuit agreed with the District Court that the Sheriff's Office, the Crime Lab, and the School Board were not entities capable of being sued. *Id.* at *3. However, the Eleventh Circuit could not "say that amendment would be futile[,]" noting that "[t]he record suggests that the Johnsons could identify defendants capable of being sued in relation to their claims . . . ." *Id.* at *4. The Court of Appeals noted that "the sheriff in his official capacity could be substituted for the Sheriff's Office as the proper defendant," and that school districts are subject to suit under Georgia law. *Id.* The Court of Appeals also observed that Plaintiffs' allegations seemed to focus on Sheriff Paulk and Dr. Gaffney-Kraft. *Id.* at *4 n.3. The case was remanded for further proceedings consistent with the Eleventh Circuit's opinion.

On remand, this Court granted Plaintiffs leave to amend. (Doc. 139.) However, the Court found that Plaintiffs' proposed claims against the GBI were futile on immunity grounds. (*Id.* at 10–11.) The Court also found that Plaintiffs' proposed claims against Lowndes County were insufficiently pled. (*Id.* at 11–15.) The Court instructed Plaintiffs to file a second amended complaint without their futile claims against the GBI. (*Id.* at 15.)

Plaintiffs filed their second amended complaint on July 30, 2025. (Doc. 140.) Plaintiffs name five defendants in their second amended complaint: (1) the Georgia Bureau of Investigation; (2) Lowndes County, Georgia; (3) Lowndes County School District; (4) Gray Television, Inc.; and (5) CNHI, LLC. (*Id.* ¶¶ 6–10.) The second amended complaint contains 12 enumerated counts. (*Id.* ¶¶ 57–245.) Plaintiffs bring claims for civil rights violations under 28 U.S.C. § 1983, § 1985, and § 1986, and for intentional infliction of emotional distress. (*Id.*)[3] Plaintiffs seek money damages and a declaration that Defendants violated and conspired to violate Plaintiffs' civil rights. (*Id.* at 57.) Plaintiffs also filed a motion for preliminary injunction. (Doc. 144.)

Motions to dismiss the second amended complaint were filed by the GBI, Lowndes County, the Crime Lab, Gray TV, CNHI, and the School District. (Doc. 147, 150, 155, 156, 158, 165.) Defendants also moved to stay discovery. (Doc. 151, 160, 166, 167.) Plaintiffs filed a motion to compel discovery. (Doc.

---

[3] Plaintiffs' second amended complaint also asserts that the Sheriff of Lowndes County and/or the Lowndes County Sheriff's Office violated the Freedom of Information Act and the Georgia Open Records Act. (Doc. 140 ¶¶ 154-170.) However, Plaintiffs filed a second amended complaint with a definite list of defendants that excludes the Sheriff and Sheriff's Office. (*Id.* at 1; *see also id.* ¶¶ 5–10.) Nothing on the docket indicates any attempt to serve the Sheriff or the Sheriff's Office with the second amended complaint. Even liberally construed, Plaintiffs have not named the Sheriff or the Sheriff's Office as defendants in the second amended complaint.

168.)

On September 5, 2025, the Court entered an order granting Defendants' requests to stay discovery but denying Plaintiffs' motion for preliminary injunction and motion to compel. (Doc. 169.) Since then, Plaintiffs have filed various motions, including a motion to recuse the undersigned. The Court addresses the pending motions to dismiss and the other pending motions below.

## II.    Plaintiffs' Motion to Recuse

As a threshold matter, the Court considers Plaintiffs' motion to recuse the undersigned. (Doc. 180.) Plaintiffs question the undersigned's impartiality on the basis of the Court's order of September 5, 2025, which stayed discovery. Plaintiffs argue that this ruling shows bias against them in favor of the GBI. Plaintiffs maintain that the Eleventh Circuit's ruling in this case requires the GBI to file an answer and for the Court to open discovery.  (*Id.* at 1–3.) Plaintiffs also filed a "motion for Court to come into compliance with 28 U.S.C. § 455; motion to rule on motion to recuse." (Doc. 197.)  In this additional motion, Plaintiffs bring substantially the same arguments from their motion to recuse and ask for a ruling.

A judge shall recuse herself if she is personally biased or prejudiced against a party or in favor of an adverse party, or whenever the judge's

impartiality might reasonably be questioned. *See* 28 U.S.C. §§ 144, 455(a); *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008). In assessing whether this might be the case, a court must consider "whether an objective, fully informed lay person would entertain a significant doubt about the judge's impartiality." *McNeal v. Navy Fed. Credit Union*, No. 22-13296, 2023 WL 6239420, at *3 (11th Cir. Sept. 26, 2023) (citing *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988)). "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources." *In re Walker*, 532 F.3d at 1310 (quoting *Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1329 (11th Cir. 2002)). Put another way, it must derive from something other than that which the judge learned by participating in the case. *See Daker v. Reynolds*, No. 21-10614, 2023 WL 1872726, *4 (11th Cir. Feb. 10, 2023). "[A]n exception exists where a judge's remarks in a judicial context demonstrate pervasive bias and prejudice against a party." *Guo v. Rosen*, No. 21-13823, 2023 WL 2125959, at *3 (11th Cir. Feb. 21, 2023) (citing *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Having carefully considered the matter, the Court finds that Plaintiffs' motion to recuse is due to be denied. Plaintiffs have not pointed to any

extrajudicial sources of bias.  Plaintiffs, rather, reference an order issued by the undersigned.  But Plaintiffs do not explain how any portion of this order demonstrates "pervasive bias" or prejudice.  *Guo*, 2023 WL 2125959, at *3. Plaintiffs merely disagree with the Court about the scope of the Eleventh Circuit's mandate in this case.

Plaintiffs' arguments are not sufficient to cause an objective, disinterested observer to entertain a significant doubt as to the undersigned's impartiality.  *McNeal*, 2023 WL 6239420, at *3.  To the extent that Plaintiffs disagree with the Court's decisions, they may, of course, appeal at the appropriate juncture.  *See In re Evergreen Sec., Ltd.,* 570 F.3d 1257, 1274 (11th Cir. 2009) ("Challenges to adverse rulings are generally grounds for appeal, not recusal.").  The Court **DENIES** Plaintiffs' motion to recuse.  (Doc. 180.) The Court also **DENIES** Plaintiffs' similar motion for the Court to come into compliance with 28 U.S.C. § 455.  (Doc. 197.)

## III.  **Defendants' Motions to Dismiss**

Defendants filed six separate motions to dismiss the second amended complaint.  (Doc. 147, 150, 155, 156, 158, 165.)  Plaintiffs only responded to two

of these motions to dismiss.[4]  (Doc. 163.)  Nevertheless, the Court will assess the merits of each motion to dismiss and address the arguments made in them. *See, e.g., Simpson v. Countrywide Home Loans*, No. 1:11-CV-0224-CAM-ECS, 2010 WL 3190693, at *3 (N.D. Ga. Apr. 26, 2010) (stating that "unopposed" under Local Rule 7.1(B) does not mean that the non-responsive party "abandoned" its claims in the motion-to-dismiss context).  Defendants move for dismissal on several different grounds, including a lack of subject matter jurisdiction, insufficient process, insufficient service of process, and failure to state a claim upon which relief may be granted.

## A. Legal Standards

### 1. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a case when the court lacks subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  Facial attacks only require the court to determine if the plaintiffs have alleged a sufficient basis

---

[4] Instead of filing response briefs, Plaintiffs filed motions to strike the motions to dismiss filed by the GBI and Lowndes County.  (Doc. 159, 161.)  The Court addresses Plaintiffs' motions *infra* in this order.

for jurisdiction.  *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  Thus, plaintiffs opposing a facial attack are  "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true."  *Lawerence*, 919 F.2d at 1529.  A factual attack, by contrast, "challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered."  *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence*, 919 F.2d at 1529).  "A district court evaluating a factual attack on subject matter jurisdiction . . . 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529).  "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir.1984)).

### 2. Insufficient Process

Federal Rule of Civil Procedure 12(b)(4) provides for dismissal of a case for insufficient process.  "An objection under Rule 12(b)(4) concerns the form of process rather than the manner or method of its service."  5B *Wright & Miller's Federal Practice & Procedure* § 1353 (4th ed. 2025).  Thus, "a Rule 12(b)(4)

motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Piccard v. Deedy*, No. 1:21-CV-558-MLB, 2021 WL 4846132, at *5 (N.D. Ga. Oct. 15, 2021) (citation omitted). "Dismissals for defects in the form of summons are generally disfavored and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice." *Id.*

### 3. **Insufficient Service of Process**

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a case for insufficient service of process. "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." 5B *Wright & Miller's Federal Practice & Procedure* § 1353 (4th ed. 2025) (footnotes omitted). "The party challenging the sufficiency of the service bears the burden of showing it was improper." *Ritts v. Dealers All. Credit Corp.*, 989 F. Supp. 1475, 1478 (N.D. Ga. 1997). "An objection to service of process must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized." *Binns v. City of Marietta Hous. Auth.,* No. CIVA 107CV-0070-RWS, 2007 WL 2746695, at *2 (N.D. Ga. Sept. 18, 2007) (quotations omitted). "If the challenge is sufficiently set forth, the plaintiff

14

then 'bears the burden of presenting enough evidence to withstand a motion for directed verdict.'" *Valiente v. Bank of Am.*, No. 1:16-CV-1553-WSD-JFK, 2016 WL 8710417, at *1 (N.D. Ga. Sept. 9, 2016) (quoting *Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008)). If the plaintiff presents evidence to the contrary, the court must construe all reasonable inferences in plaintiff's favor and the burden shifts back to the defendant to bring strong and convincing evidence of insufficient service of process. *Id.*

### 4. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when the complaint "fail[s] to state a claim upon which relief can be granted." When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and when the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557). The complaint thus must contain more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action"—it must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When a plaintiff is pro se, his or her complaint is "held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation omitted); *see also Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). At the same time, the Court "need not accept as true legal conclusions or unwarranted factual inferences" in complaints filed by pro se litigants. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006) (quotation and citation omitted). Further, pro se plaintiffs must comply with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).

## B. The GBI's Motion to Dismiss

The GBI moves for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) based on the Eleventh Amendment and the doctrine of sovereign immunity.  (Doc. 147.)  Plaintiffs have not filed a response to the GBI's motion to dismiss the second amended complaint.  Instead, Plaintiffs filed a motion to strike the GBI's motion, arguing that the Eleventh Circuit did not affirm this Court's prior dismissal of the GBI.  (Doc. 159 at 2.)

"The Eleventh Amendment prevents suits in federal court against an unconsenting state by its citizens or citizens of other states." *Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)).  "An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction[.]" *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). "The Eleventh Amendment is no bar, however, where (1) the state *consents* to suit in federal court, or (2) where Congress has *abrogated* the state's sovereign immunity." *Alyshah v. Georgia*, 239 F. App'x 473, 474 (11th Cir. 2007) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).  Georgia has expressly reserved its sovereign immunity with respect to actions brought in federal court.  *Clarke v. McMurry*, 763 F. App'x 899, 900 (11th Cir. 2019) (citing O.C.G.A. § 50-21-23(b)).

17

In enacting 28 U.S.C. § 1983 and § 1985, Congress did not abrogate the states' Eleventh Amendment immunity. *See Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir. 1990) ("Congress has not abrogated eleventh amendment immunity in section 1983 cases."); *Fincher v. State of Fla. Dept. of Labor & Emp. Sec.*, 798 F.2d 1371, 1372 (11th Cir. 1986) ("We find no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions."). A § 1986 claim cannot survive under the Eleventh Amendment without an underlying § 1985 claim. *Henry v. Fla. Bar*, 701 F. App'x 878, 880 (11th Cir. 2017) ("A successful claim under 42 U.S.C. § 1986 is predicated on a successful action under § 1985." (citing *Morast v. Lance*, 807 F.2d 926, 930 (11th Cir. 1987))).

Eleventh Amendment immunity extends to "arms of the state." *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983). It does not extend to "lawsuits against municipalities and other discreet political subdivisions that are sufficiently independent from the state." *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990) (citing *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 280 (1977); *Brown v. East Cent. Health Dist.,* 752 F.2d 615, 617 (11th Cir.1985)). To determine whether an entity is acting as an arm of the state, courts consider: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity

derives its funds; and (4) who is responsible for judgments against the entity. *U.S. ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014) (citing *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003)).

Here, Plaintiffs raise claims against the GBI in Counts One, Nine, and Ten of the second amended complaint. (Doc. 140.) Plaintiffs cite § 1985 in Count One, alleging that the GBI's medical examiner, Dr. Gaffney-Kraft, agreed to make false certificates and reports and gave false testimony at a deposition. (*Id.* ¶¶ 62, 85, 91, 92, 111–13.) Plaintiffs cite § 1986 in Count Nine, claiming that the GBI failed to protect Plaintiffs from a conspiracy to violate their civil rights. (*Id.* ¶¶ 191–199.) In Count Ten, Plaintiffs bring a claim for intentional infliction of emotional distress based on their allegations that Dr. Gaffney-Kraft's autopsy of KJ's body was improper. (*Id.* ¶¶ 200–15.)

The Court finds that the GBI is shielded from Plaintiffs' claims by the Eleventh Amendment. Georgia law defines the GBI as a "separate department and agency of state government." O.C.G.A. § 35-3-2. Plaintiffs have not alleged that the GBI falls outside of this definition. Plaintiffs have not disputed the GBI's assertion that the monetary relief Plaintiffs seek would operate against the state. Moreover, the Eleventh Circuit has previously upheld this District Court in finding that the GBI is an arm of the state. *Presnell v. Ga. Bureau of Investigation*, No. 4:10-CV-0060-HLM, 2010 WL

11520595, at *5 (N.D. Ga. Dec. 28, 2010) ("Defendant [GBI] is an agency of the State of Georgia, and clearly is an arm of the State for purposes of Eleventh Amendment immunity." (citing O.C.G.A. § 35-3-2)), *aff'd sub nom. Presnell v. Paulding County*, 454 F. App'x 763 (11th Cir. 2011). Plaintiffs fail to make any plausible claim that the GBI is sufficiently independent from the state to overcome its claim of Eleventh Amendment immunity.

Plaintiffs are mistaken about the scope of the Eleventh Circuit's mandate in this case. In its opinion, the Court of Appeals addressed some of the named entities' capacity to be sued and the futility of amendment. The Court of Appeals made no holding about the application of the Eleventh Amendment or the GBI's capacity to be sued. According to this Court's reading of the Eleventh Circuit's opinion, this case was remanded to give Plaintiffs an opportunity to amend their complaint. The Court did so, and it advised Plaintiffs that any amended claims against the GBI are subject to dismissal. (Doc. 139 at 10–11.) Plaintiffs nevertheless filed amended claims against the GBI. The Court finds that those claims fail because the GBI is immune from suit under the Eleventh Amendment.[5]

---

[5] The Court provided Plaintiffs an opportunity to name Dr. Gaffney-Kraft as a defendant instead of the GBI. The Eleventh Circuit pointed out that Plaintiffs' allegations focused on Dr. Gaffney-Kraft. *Johnson*, 2025 WL 574261, at *4 n.3. This Court further highlighted Dr. Gaffney-Kraft as a possible defendant when

While the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to the Eleventh Amendment for certain actions against state officials sued in their official capacities for prospective relief, the *Ex parte Young* doctrine does not apply to Plaintiffs' claims. Under the *Ex parte Young* doctrine, "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). The doctrine, however, does not extend to a state agency like the GBI. *See, e.g., Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006) ("State agencies, however, are never subject to unconsented suit, even under the doctrine of *Ex parte Young*. *Ex parte Young* applies only when state officials are sued for prospective relief in their official capacity. It does not permit suit against state agencies or the state itself, even when the relief is prospective."). Because Plaintiffs are requesting non-prospective declaratory relief and damages against a state agency, the Eleventh Amendment shields the GBI

---

granting Plaintiffs leave to amend. (Doc. 139 at 14.) But Plaintiffs filed a second amended complaint with a definite list of defendants that excludes Dr. Gaffney-Kraft. (Doc. 140 ¶¶ 6–10.) Nothing on the docket indicates that Plaintiffs have made any effort to serve Dr. Gaffney-Kraft. Accordingly, the Court cannot construe any of Plaintiffs' claims against the GBI as being made against Dr. Gaffney-Kraft.

from Plaintiffs' claims.  Accordingly, the Court **GRANTS** the GBI's motion to dismiss for lack of subject matter jurisdiction.  (Doc. 147.)  Plaintiffs' claims against Defendant Georgia Bureau of Investigation are **DISMISSED WITHOUT PREJUDICE.**

### C. Lowndes County's Motion to Dismiss

Lowndes County moves for dismissal on several grounds.  (Doc. 150.) Lowndes County first argues that Plaintiffs have improperly raised claims that the Court previously found futile despite the Court's warnings not to do so. (Doc. 150-1 at 4–5.)  Next, Lowndes County argues that it is not liable for the conduct of the Sheriff's Office or the Crime Lab.  (*Id.* at 5–7.)  Lowndes County further argues that it was not properly served and that the summons is invalid. (*Id.* at 7–10.)  Lowndes County's remaining arguments are based on the statute of limitations, immunity, and failure to state a claim.  (*Id.* at 10–16.)

As an initial matter, the Court did not forbid Plaintiffs from re-filing claims against Lowndes County.  Instead, in the order granting Plaintiffs leave to amend, the Court noted that Plaintiffs had proposed claims against Lowndes County without meeting the standard for alleging municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  (Doc. 139 at 12–14.) The Court explained the pleading requirements for such a claim and permitted Plaintiffs to replead their claims against Lowndes County or consider other

possible defendants.  The Court now considers Plaintiffs' claims against new defendant Lowndes County in the second amended complaint in light of Lowndes County's motion to dismiss.

Where service of process is insufficient, the Court lacks personal jurisdiction over the defendant in question. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). "A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (citing *Read v. Ulmer,* 308 F.2d 915, 917 (5th Cir. 1962)). Accordingly, the Court first addresses Lowndes County's arguments concerning service.

To properly effect service on a local governmental organization, a plaintiff must comply with the requirements of Rule 4(j)(2).  The plaintiff must serve the governmental organization by:

> (A)    delivering a copy of the summons and of the complaint to its chief executive officer; or

> (B)    serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).  Georgia law concerning service of process requires a plaintiff to deliver a copy of the summons and complaint, "[i]f against a county, . . . to the chairman of the board of commissioners . . . or to an agent authorized

by appointment to receive service of process.  If against any other public body or organization subject to an action, to the chief executive officer or clerk thereof[.]"  O.C.G.A. § 9-11-4(e)(5).

Rule 4(l) provides that "[u]nless service is waived, proof of service must be made to the court." And, with certain exceptions that do not apply here, "proof must be by the server's affidavit." Fed. R. Civ. P. 4(l).  If a defendant is not served within 90 days of the filing of the complaint, the district court must dismiss the action without prejudice or order that service be made within a specified time.  Fed. R. Civ. P. 4(m).

Turning to the facts of this case, Plaintiffs filed an affidavit of service showing that, on June 2, 2025, their process server delivered "the Summons, Nature of the Action, and Exhibits to: Peggy Moore as Authorized to Accept for Lowndes County, Georgia." (Doc. 132 at 1.)[6]  However, Lowndes County filed an affidavit by Ms. Moore, who attests that she is not authorized to accept service for Lowndes County or for the Chairman of the Lowndes County Board

---

[6] The record does not reflect the version of the complaint that Plaintiffs attempted to serve on Ms. Moore.  However, Plaintiffs cannot have served the operative complaint, since it was not in existence at the time of attempted service.  Plaintiffs did not receive permission to file the second amended complaint until July 14, 2025. (Doc. 139.)  Plaintiffs filed the second amended complaint on July 30, 2025, (Doc. 140), after the Court disallowed Plaintiffs' proposed amendment, (Doc. 122-2), and directed repleading. (Doc. 139 at 7-15 (discussing Doc. 122-2)).

of Commissioners.  (Doc. 150-2 ¶ 5.)  Ms. Moore further attests that Plaintiffs'
process server left an envelope with her for the Chairman, Bill Slaughter, but
did not say that she was a process server or what was in the envelope.  (*Id.* ¶¶
6–7.)  Lowndes County also filed an affidavit by Mr. Slaughter.  (Doc. 150-3.)
He attests that  he has not been personally served with a summons or
complaint in this case.  (*Id.* ¶ 5.)  Mr. Slaughter further attests that no one
authorized to receive service has received a summons or complaint in this case.
(*Id.*)  Based on the foregoing, the Court finds that Lowndes County has carried
its initial burden of establishing that service was insufficient.  *See T-12 Ent.,
LLC v. Young Kings Enters., Inc.,* 36 F. Supp. 3d 1380, 1391 (N.D. Ga. 2014)
("The burden of establishing that service was insufficient falls on the
defendant, who must specifically describe the defect under Rule 4.").

Though Plaintiffs did not file a response to Lowndes County's motion to
dismiss, they acknowledge the service issue in their motion to strike Lowndes
County's motion to dismiss.  (Doc. 161 at 2–3.)  Plaintiffs notably do not deny
the assertions in Mr. Slaughter's and Ms. Moore's affidavits.   Instead,
Plaintiffs argue that they still have time to serve Mr. Slaughter.  Plaintiffs also
argue that service is effective if Ms. Moore delivered the summons and
complaint to Mr. Slaughter after she (Ms. Moore) received them from the
process server.

Plaintiffs' arguments are not sufficient to withstand Lowndes County's challenge. Even if Ms. Moore could have effected service by delivering the summons and complaint to Mr. Slaughter, there is no evidence that she did so. Plaintiffs' process server attests to serving Ms. Moore, not Mr. Slaughter. Ms. Moore does not attest to delivering the summons and complaint to Mr. Slaughter, and Mr. Slaughter attests that he was not served with process.[7] There is nothing on the docket to indicate that Plaintiffs made any further attempt to serve Mr. Slaughter. There is no indication on the docket that Plaintiffs ever served (or attempted to serve) the *second amended complaint* on Mr. Slaughter or any other county official or agent. As such, the Court finds that Plaintiffs' service on Lowndes County is insufficient.

As stated above, Rule 4(m) provides that a defendant must be served within 90 days of the complaint being filed. If the plaintiff does not properly serve the defendant within this window, "the court—on motion or on its own

---

[7] Nothing in the record indicates that Ms. Moore told Plaintiffs' process server that she was authorized to accept service on behalf of Lowndes County or Mr. Slaughter. Even if she had, service would still be deficient. *See, e.g.*, *King v. Lumpkin*, No. 1:11-CV-0549-WSD, 2012 WL 12888676, at *5 (N.D. Ga. Feb. 13, 2012) ("For service of process to be proper, the agent so served must be an actual, and not simply an apparent, agent of the defendant." (internal quotation omitted)); *Robinson v. Peck*, No. 1:14-CV-01628-WSD, 2014 WL 5857235, at *3 (N.D. Ga. Nov. 12, 2014) ("Whether Johnson agreed to accept service or not is not consequential [because the] determinative factor is whether the person who accepted service was the defendant's actual agent.").

after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The rule also allows that if the plaintiff shows good cause for a failure to serve, the Court must extend the time for service for an appropriate period. *Id.* "Good cause exists only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (internal quotation omitted). "A defendant's actual notice is not sufficient to cure defectively executed service." *Fitzpatrick v. Bank of N.Y. Mellon*, 580 F. App'x 690, 694 (11th Cir. 2014).

In considering whether there is good cause for a failure to serve, the Court recounts the following history. Plaintiffs filed a motion for leave to amend on May 5, 2025, proposing to add Lowndes County as a defendant. (Doc. 122; 122-1 at 4–5.) Plaintiffs included a proposed second amended complaint.[8] (Doc. 122-2.) The Clerk of Court issued a summons for Lowndes County on May 7, 2025. (Doc. 123.) The summons included "Attn: Chairman, Bill Slaughter," in the name and address information. (*Id.* at 1.) Plaintiffs filed

---

[8] Plaintiffs styled their proposed amendment as a *fifth* amended complaint, but for reasons explained in the Court's order granting Plaintiffs leave to amend, Plaintiffs were in fact seeking leave to enter a *second* amended complaint. (Doc. 139 at 6–7.)

their process server's affidavit on June 3, 2025, showing that the process server delivered a copy of the summons and other material to Ms. Moore on June 2, 2025.  (Doc. 132.)  At the time of the attempted service, the Court had not granted Plaintiffs leave to file their proposed second amended complaint.  On June 20, 2025, before the Court granted Plaintiffs leave to amend to add Lowndes County as a defendant, Lowndes County filed a premature motion to dismiss the second amended complaint.  (Doc. 133, 135.)  Though this motion to dismiss was premature, it included argument and affidavits from Ms. Moore and Mr. Slaughter pointing out Plaintiffs' insufficient service.  (Doc. 133-2, -3; Doc. 135 at 7–10.)  On July 14, 2025, the Court disallowed Plaintiffs from proceeding on their proposed second amended complaint and instructed Plaintiffs to replead.  (Doc. 139 at 15.)  Plaintiffs filed the second amended complaint two weeks later.  (Doc. 140.)  Lowndes County renewed their arguments for dismissal in the instant motion to dismiss filed on August 19, 2025.  (Doc. 150.)

Plaintiffs do not present any ground, either factual or legal, to excuse their failure to effect timely service on Lowndes County under Rule 4(j)(2). Even after being put on notice that service was insufficient via two rounds of motions to dismiss, Plaintiffs did not request an extension of time to complete service, nor have they informed the Court of any difficulty that might have

prevented them from making further service attempts. As a result, the Court cannot find good cause to excuse the failure to properly serve Lowndes County. *See, e.g., Bryant v. Citigroup, Inc.*, No. 5:13–CV–448 (MTT), 2014 WL 1347429, at *2 (M.D. Ga. Apr. 3, 2014) (finding that the plaintiff had not shown good cause warranting an extension of the time to serve the defendant where the plaintiff "was on notice of his insufficient service by virtue of the Defendant's motion," but offered no explanation for his failure to properly serve the defendant).

Although Plaintiffs have not shown good cause, it remains in the Court's discretion to extend time for service. *See Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005) ("Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause."). In exercising its discretion, "the district court is required to consider whether the circumstances of the case before it warrant discretionary relief" in the form of an extension. *Melton v. Wiley*, 262 F. App'x 921, 924 (11th Cir. 2008) (citation omitted). "[R]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." *Lepone-Dempsey*, 476 F.3d at 1282 (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment).

Here, even if some or all of Plaintiffs' claims against Lowndes County will be barred by the statute of limitations, "the running of the statute of limitations does not *require* that a district court extend the time for service of process . . . ." *Horenkamp*, 402 F.3d at 1133 (emphasis added).[9]  All litigants, including those proceeding without counsel, are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989.)  Plaintiffs have had more than six months now to perfect service since filing the second amended complaint. They have not moved to extend the time for service.  Rather than attempt to perfect service of the operative complaint under Rule 4(j)(2) in response to Lowndes County's motion to dismiss, Plaintiffs filed a baseless motion to strike it.  Based on these circumstances, the Court does not consider it prudent to permit additional time to serve.  The Court has fully considered the matter and finds no extenuating circumstances warranting an extension.  *See Daker v. Ward*, No. 23-10609, 2023 WL 7182358, at *3 (11th Cir. Nov. 1, 2023) (affirming the district court's decision not to extend the service deadline;

---

[9] To the extent Plaintiffs' claims stem from events that occurred in 2013, such claims were almost certainly time-barred at the time Plaintiffs initiated this action. *See infra.*

finding that the court adequately considered both whether there was good cause and whether other circumstances warranted an extension).

The Court cannot proceed to the merits of Plaintiffs' claims to address Lowndes County's additional bases for dismissal.[10] *See, e.g., Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182–83 (11th Cir. 2007) (vacating the district court's dismissal of the claims with prejudice for failure to state a claim and remanding the case for judgment dismissing the claims without prejudice for insufficient service); *Courboin v. Scott*, 596 F. App'x 729, 735 (11th Cir. 2014) ("We understand and appreciate the district court's motivation to address the merits of the claims in the alternative[, but] where no personal jurisdiction exists and a dismissal on the merits would be with prejudice, it is particularly appropriate to dismiss on jurisdictional grounds and not address the merits." (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997); *Madara, v. Hall*, 916 F.2d 1510, 1514 & 1514 n. 1. (11th Cir. 1990))). Accordingly, Lowndes County's motion to dismiss is **GRANTED** for insufficient service of process. (Doc. 150.)

---

[10] Given Plaintiffs' insufficient service of process under Rule 12(b)(5), the Court also declines to address Lowndes County's motion to dismiss based on insufficient process under Rule 12(b)(4).

Plaintiffs' claims against Defendant Lowndes County Georgia are **DISMISSED WITHOUT PREJUDICE.**

### D. Valdosta-Lowndes Regional Crime Lab's Motion to Dismiss

The Crime Lab filed a motion to dismiss "to the extent this Court finds that the [Crime Lab] or [the City of] Valdosta were defendants in the instant action[.]"  (Doc. 155-1 at 3.)  The Crime Lab argues that any claims against it and the City of Valdosta should be dismissed for failure to state a claim, failure to provide proof of service, and because Plaintiffs' claims are time-barred.  (*Id.* at 6–7.)

On appeal, the Eleventh Circuit held that this Court did not err in finding that the Crime Lab lacked the capacity to be sued.  *Johnson*, 2025 WL 574261, at *3.  The Eleventh Circuit's opinion observed "that the Crime Lab is part of the Valdosta Police Department, which is considered merely an arm of the municipality and not a separate legal entity subject to suit."  *Id.*  This Court, in its order granting Plaintiffs leave to amend, noted that Plaintiffs could add the municipality of Valdosta, rather the Crime Lab, as a defendant in this case.  (Doc. 139 at 14.)

It appears that Plaintiffs have made an informed, intentional decision not to pursue claims against the Crime Lab or the City of Valdosta in this case. Plaintiffs plainly excluded the Crime Lab and the City of Valdosta from the list

of Defendants in the second amended complaint.  (Doc. 140 ¶¶ 5–10.)  In their motion to strike Lowndes County's motion to dismiss, Plaintiffs state that the Crime Lab is a "non-party to this civil action."  (Doc. 161 at 3.)  Plaintiffs are right not to pursue claims against the Crime Lab, given the holding of the Eleventh Circuit and this Court's directive not to pursue futile claims.  As for the City of Valdosta, Plaintiffs have not articulated any claims against it despite the Eleventh Circuit and this Court highlighting the City of Valdosta as a possible defendant.  Plaintiffs attribute their allegations about the Crime Lab to Lowndes County, not to the City of Valdosta.  Accordingly, the Court does not construe any of Plaintiffs' claims against the Crime Lab or the City of Valdosta.

Because Plaintiffs bring no claims against the Crime Lab or the City of Valdosta in the second amended complaint, the Court **DENIES AS MOOT** the Crime Lab's motion to dismiss.  (Doc. 155.)

### E. Gray Television Inc.'s Motion to Dismiss

Gray TV moves for dismissal on three separate grounds.  (Doc. 156.) First, Gray TV argues that Plaintiffs' claims violate the Court order of July 14, 2025, granting Plaintiffs leave to amend.  (Doc. 156-1 at 7.)  Second, Gray TV argues that the Court order of May 31, 2024, denying Plaintiffs leave to amend, bars Plaintiffs' claims against Gray TV.  (*Id.* at 7–8.)  Third, Gray TV argues

that Plaintiffs fail to state a claim against Gray TV in the second amended complaint. (*Id.* at 11.)

Gray TV's arguments call for a summary of Plaintiffs' previous attempt to bring claims against it. On February 15, 2024, Plaintiffs filed a motion for leave to amend. (Doc. 73.) Plaintiffs proposed adding a number of new defendants, including Gray TV. (*Id.* ¶ 14.) Plaintiffs' proposed claims against Gray TV were based on a February 6, 2024 broadcast reporting Lowndes County's attorney's alleged comment that Plaintiffs had engaged in a years-long pattern of making unsubstantiated claims. (*Id.* ¶¶ 248–54; 262–69.) Plaintiffs claimed that this report amounted to defamation and proposed bringing claims against Gray TV under 42 U.S.C. § 1983 and § 1985. (*Id.*)

The Court denied Plaintiffs leave to amend on May 31, 2024. (Doc. 102.) The Court ruled that Plaintiffs' proposed claims against Gray TV were futile. (*Id.* at 11–13.) The Court reasoned that Plaintiffs failed to allege a constitutional violation and failed to allege an agreement necessary for a conspiracy. (*Id.*) However, the Eleventh Circuit vacated the District Court's May 31, 2024 order, holding that it "cannot say that amendment would be futile," and that the "record suggests that the Johnsons could identify defendants capable of being sued . . . ." *Johnson*, 2025 WL 574261, at *4. The Eleventh Circuit did not address the proposed claims against Gray TV. On

remand from the Eleventh Circuit, this Court granted Plaintiffs leave to file a second amended complaint.  (Doc. 139.)  But the Court warned Plaintiffs not to include claims that the Court previously found futile.  (*Id.* at 20.)

The allegations against Gray TV in the second amended complaint are nearly identical to the claims that the Court found futile in its previous order. Plaintiffs, citing 42 U.S.C. § 1983 and § 1985, claim that Gray TV reported "defaming comments" by counsel for Lowndes County on February 6, 2024. (Doc. 140 ¶¶ 216–30.)  Plaintiffs claim that Gray TV conspired with Lowndes County's attorney to "undermine, deprive, and interfere with the Plaintiffs' due process rights . . . ."  (*Id.* ¶ 228.)  Plaintiffs also cite state and federal criminal conspiracy statutes.  (*Id.* ¶¶ 223–24.)

As the Court explained in its order of May 31, 2024, defamation alone cannot support a federal civil rights claim.  *See, e.g., Garcia v. Miami Beach Police Dep't*, 336 F. App'x 858, 860 (11th Cir. 2009) ("[A]llegations of defamation, on their own, are insufficient to state a federal claim." (citing *Paul v. Davis*, 424 U.S. 693, 706 (1976)).  Plaintiffs must satisfy the "stigma-plus" test, which requires them to plead "an additional constitutional injury, tied to a previously recognized constitutional property or liberty interest, flowing from the defamation."  *Rehberg v. Paulk*, 611 F.3d 828, 852 (11th Cir. 2010).  "To establish a liberty interest sufficient to implicate the fourteenth amendment

safeguards, the individual must be . . . stigmatized in connection with a denial of a right or status previously recognized under state law." *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296–97 (11th Cir. 2003) (quoting *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302–03 (11th Cir. 2001)). "Essentially, a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Cannon*, 250 F.3d at 1302.

Gray TV is correct that the Court's May 31, 2024 ruling applies here. Plaintiffs' claims are subject to dismissal because Plaintiffs have not plausibly pled a constitutional injury. The second amended complaint does not identify a violation of a tangible property interest or protected liberty interest that flowed from the alleged defamation. The Court cannot construe any such violation from the pleadings. The criminal statutes that Plaintiffs cite do not appear to be the source of any protected interest. Even if they were, Plaintiffs do not explain how the alleged defamation is connected to such an interest being violated. Plaintiffs' assertion that Gray TV conspired to "undermine, deprive, and interfere" with their due process rights is a mere unsupported conclusion. As the Court previously explained, such conclusory allegations are insufficient to establish a constitutional violation resulting from alleged

defamation.  Because Plaintiffs fail to state a claim under § 1983 or § 1985[11]

against Gray TV upon which relief can be granted, the Court **GRANTS** Gray

TV's motion to dismiss.  (Doc. 156.)  Plaintiffs' claims against Defendant Gray

Television, Inc. are **DISMISSED.**[12]

---

[11] The Court does not construe the second amended complaint as asserting a separate defamation claim against Gray TV.  In the operative complaint, each of Plaintiffs' "causes of action" is separately enumerated and prefaced by a heading containing the asserted cause of action in capital letters.  In Count 11, asserted against Gray TV, Plaintiffs allege a "VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS, [and] 42 U.S.C. § 1985 CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS."  (Doc. 140 ¶¶ 216-17.)

Even if the pleading could be construed to assert a state-law defamation claim, the Court, in its discretion, would decline to exercise supplemental jurisdiction over the state-law claim.  *See, e.g., Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1295 (11th Cir. 2020) ("When, as here, a district court dismisses a plaintiff's federal claims, we have encouraged dismissal of the remaining state-law claims too.").  This order disposes of all federal claims against all defendants, and there is no diversity of citizenship between Plaintiffs and Gray TV, such that jurisdiction could be based on 28 U.S.C. § 1332.  (Doc. 140 ¶¶ 5, 9.)  Under such circumstances, it would be appropriate to decline jurisdiction over any state-law claim.  *See id.*; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

[12] Plaintiffs further fail to allege a conspiracy claim under § 1985.  Plaintiffs' allegations are limited to claims that Lowndes County's attorney "used" Gray TV to spread false information, (Doc. 140 ¶ 218), that Gray TV should have known the attorney's remarks were false, (*id.* ¶¶ 220–21), and that Gray TV's broadcasts "assisted" Lowndes County's attorney (*id.* ¶ 243).  Such general and conclusory allegations cannot sustain a conspiracy claim under § 1985.  *See Coker v. Warren*, No. 23-11160, 2025 WL 1575578, at *6–7 (11th Cir. June 4, 2025) (upholding dismissal of the plaintiff's § 1985 conspiracy claims against a newspaper for failure to state a claim where the plaintiff's allegations

### F. CNHI, LLC's Motion to Dismiss

CNHI moves for dismissal on three grounds. (Doc. 158.) First, CNHI argues that the Court previously found that Plaintiffs' proposed claims against CNHI are futile. (*Id.* at 2–3.) Second, CNHI moves for dismissal based on the statute of limitations. (*Id.* at 3.) Third, CNHI moves for dismissal for insufficient service of process. (*Id.* at 3–4.) The Court addresses CNHI's arguments concerning service first. *See Pardazi*, 896 F.2d at 1317; *Posner*, 178 F.3d at 1214 n.6 (citing *Read,* 308 F.2d at 917). In it motion to dismiss, CNHI states, "the Plaintiffs served CNHI only by *mailing* the Complaint and Summons to the President of CNHI, LLC at 201 Monroe Street, Suite 450, Montgomery, Alabama 36104." (Doc. 158 at 3–4.) (emphasis added).

As relevant here, to effect service of process on a corporation under Rule 4(h)(1)(B), the summons and a copy of the complaint must be served

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Alternatively, Rule 4(h)(1)(A) allows for service on a corporation under Rule 4(e)(1), which provides for service by

---

generally recited § 1985 and did not allege that the newspaper was "instructed by or agreed with anyone else to publish these articles").

following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

"Rule 4 does not authorize service of process through the mail." *Thorpe v. Dumas*, 788 F. App'x 644, 647 (11th Cir. 2019). However, Alabama—the state where CNHI says Plaintiffs mailed the summons and complaint—permits service of process through the mail under certain circumstances.

Alabama Rule of Civil Procedure 4(i)(2)(B)(ii) authorizes a party to effectuate service by certified mail. After obtaining a copy of the pleading,

> [t]he attorney or party shall then place that copy of the process and complaint or other document to be served in an envelope and address the envelope to the person to be served with instructions to forward. In the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate subdivision. The attorney or party shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. The return receipt shall be addressed to the clerk of the court issuing the process and shall identify the case number of the case in which the pleading has been filed. Upon mailing, the attorney or party shall immediately file with the court an "Affidavit of Certified Mailing of Process and Complaint." That affidavit shall verify that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with this rule.

Under Alabama Rule of Civil Procedure 4(c)(6), service of an LLC must be made upon an officer, a partner, a managing or general agent, or any agent

authorized by appointment or by law to receive service of process. When serving a corporation or business entity by mail, "the certified mail must be delivered to that addressee or that addressee's authorized agent." *Ex parte LERETA, LLC*, 226 So. 3d 140, 145 (Ala. 2016).

In this case, Plaintiffs have filed no affidavit of certified mailing under Alabama Rule of Civil Procedure 4(i)(2)(B)(ii) or other proof of service under Federal Rule of Civil Procedure 4(l).[13] There is no indication on the docket that a certified mail receipt was returned to the Clerk of Court. In fact, there is nothing to indicate that Plaintiffs used *certified* mail to serve CNHI as required under Alabama law. Plaintiffs have filed no return of service for this Defendant at all. Therefore, CNHI has carried its initial burden of establishing that service was insufficient.

Plaintiffs have not disputed that their attempt to serve CNHI by mail was insufficient. Plaintiffs, in their response to CNHI's motion to dismiss, do not address CNHI's argument for dismissal based on insufficient service. (Doc. 163.) Plaintiffs have failed to show that they properly served CNHI by certified

---

[13] The second amended complaint contains a certificate of service that states "We certify that we *will* serve upon and mail by United States Postal Service the foregoing document" to defendants. (Doc. 140 at 60 (emphasis added)). No confirmation of any such service can be found on the docket.

mail, and they did not file with the Court an affidavit of certified mailing. Accordingly, the Court finds that Plaintiffs' service on CNHI is insufficient.

In considering whether there is good cause for a failure to serve, the Court notes that CNHI moved to dismiss for insufficient service of process on August 21, 2025. (Doc. 158.) Plaintiffs have made no effort to explain their insufficient service or obtain an extension to properly serve CNHI.[14] Instead, they filed a response brief without acknowledging this issue. In the six months since CNHI pointed out that service was insufficient, Plaintiffs have filed at least ten different motions, including motions for sanctions, motions to strike, motions to compel, and others. On this record, Plaintiffs fail to show good cause for insufficient service of process on CNHI.

The Court finds no circumstances that warrant a discretionary extension for Plaintiffs to serve CNHI. Plaintiffs have had more than six months to perfect service on CNHI but have instead filed numerous baseless motions.[15]

---

[14] The Court notes that, during an earlier phase of this litigation, the Court advised Plaintiffs of the requirement that they properly serve a defendant and file proof of effective service. (Doc. 21.) The record also shows that Plaintiffs were aware they could move for more time to effect service on a particular defendant. Plaintiffs previously made such a motion with respect to service on the Sheriff's Office, and the Court granted their motion. (Doc. 32, Doc. 33.)

[15] Throughout this litigation, Plaintiffs have often responded to defendants' motions with accusations of bad faith, rather than substantive argument. The Court recognizes that Plaintiffs proceed pro se. The Court further

An extension risks more unnecessary filings without an effective attempt at service. Moreover, although the merits of Plaintiffs' claim against CNHI are not yet properly before the Court, it should be noted that Plaintiffs filed a nearly identical claim against Gray TV that fails. Considering these circumstances, including the possibility that Plaintiffs' claims against CNHI may be barred by the statute of limitations, the Court will not extend Plaintiffs' time to serve CNHI with process.

Plaintiffs' claims against CNHI are due for dismissal for insufficient service of process. *See Madison v. Dixie*, No. CV 21-00269-TFM-C, 2023 WL 6933807 (S.D. Ala. June 12, 2023) (dismissing without prejudice for insufficient service of process where the plaintiff attempted service by mail but failed to file an "affidavit of certified mailing" with the court), *report and recommendation adopted,* 2023 WL 6930720 (S.D. Ala. Oct. 19, 2023). The Court cannot proceed to the merits of Plaintiffs' claims to address CNHI's additional bases for dismissal. *See, e.g., Jackson*, 259 F. App'x at 182–83. Accordingly, CNHI's motion to dismiss is **GRANTED** for insufficient service

---

acknowledges that Plaintiffs have suffered profound and unimaginable loss. All litigants, however, must comply with the basic rules of litigation, including rules governing service. The Court is concerned that Plaintiffs have shown an unwillingness to comply with service rules as to CNHI (and Lowndes County).

of process.  (Doc. 158.)  Plaintiffs' claims against Defendant CNHI, LLC are

**DISMISSED WITHOUT PREJUDICE.**

### G. Lowndes County School District's Motion to Dismiss

Lowndes County School District moves for dismissal on several grounds. (Doc. 165.)  The School District argues that this Court lacks jurisdiction because Plaintiffs have not paid costs awarded by the Superior Court of Lowndes County.  (Doc. 165-1 at 8–10.) The School District further argues that Plaintiffs' claims are barred by the statute of limitations and the doctrine of res judicata.  (*Id.* at 10–13.)  The School District also moves for dismissal for failure to state a claim and on the grounds of sovereign immunity.  (*Id.* at 13–23.)  Plaintiffs filed no response to the School District's motion to dismiss.  The Court takes up the jurisdictional challenge first.

#### 1. Unpaid Costs

The School District argues that this case should be dismissed for lack of jurisdiction under a Georgia statute.  Under O.C.G.A. § 9-11-41(d), "If a plaintiff who has dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the plaintiff shall first pay the court costs of the action previously dismissed." The Supreme Court of Georgia has held that, under § 9-11-41(d), "payment of costs in a dismissed action is not an affirmative defense but a jurisdictional matter which

may never be waived." *Tucker v. Mitchell*, 314 S.E.2d 896, 897 (Ga. 1984); *see also Aiken Dermatology & Skin Cancer Clinic, P.A. v. DavLong Sys., Inc.*, 725 S.E.2d 835, 838 (Ga. Ct. App. 2012).

In support of its motion to dismiss, the School District provides filings from cases in the Superior Court of Lowndes County. (Doc. 57-3 through -7). The Court considers these documents in evaluating the School District's challenge to the fact of this Court's subject matter jurisdiction. Also, this Court may consider records from state courts upon a motion to dismiss. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

The state court records show that Plaintiffs filed two previous lawsuits in the Superior Court of Lowndes County with claims against the Lowndes County School District and various school officials. On May 13, 2014, Plaintiffs filed a complaint in Civil Action No. 2014CV997 alleging that KJ had been attacked and mistreated by students and school staff before his death. (Doc. 57-3 at 5–10.) Plaintiffs alleged that KJ died in a violent assault by other students. (*Id.* at 10.) Plaintiffs filed an amended complaint in 2014CV997 based on similar allegations, naming the Lowndes County School District as a defendant. (Doc. 57-4.) Plaintiffs filed a complaint in 2014CV1592 on July 28, 2014, against various individual school board members. (Doc. 57-5.) Plaintiffs

amended the complaint in 2014CV1592 to name the School District as a defendant. (Doc. 57-6.)

On August 8, 2017, the Superior Court of Lowndes County entered an "order granting Defendants' motions for attorneys' fees and expenses of litigation." (Doc. 57-7.) The order applied to five different cases that Plaintiffs had filed, including Civil Action Nos. 2014CV997 and 2014CV1592. The order stated that Civil Action Nos. 2014CV997 and 2014CV1592 were dismissed on November 2, 2015. (*Id.* at 6.) In these two cases, the Superior Court of Lowndes County awarded the "Lowndes County School Board Defendants" certain fees and expenses. (*Id.* at 14–15.)

Returning to this case, Plaintiffs bring two discernable claims against the School District. In Count Two, Plaintiffs bring a claim against the School District under 42 U.S.C. § 1985, alleging that the School District conspired with the Sheriff's Office by altering school surveillance video footage. (Doc. 140 ¶¶ 136–39.) In Count Eight, Plaintiffs bring a claim against the School District under § 1986 with similar allegations. (*Id.* ¶¶ 188–90.)

There is no basis for the application of O.C.G.A. § 9-11-41(d) here. Plaintiffs' claims against the School District arise under federal law, so this Court has federal question jurisdiction over them. 28 U.S.C. § 1331. Federal law, not state law, generally governs the resolution of federal civil rights

claims.  *See Blue v. Lopez*, 901 F.3d 1352, 1358 (11th Cir. 2018).  It is true that state law controls the statute of limitations in § 1983 actions.[16]  *Lawson v. Glover*, 957 F.2d 801, 803 (11th Cir. 1987).  But the Federal Rules of Civil Procedure govern federal claims in this Court.  Fed. R. Civ. P. 1.  Even when deciding state-law claims under diversity jurisdiction, federal courts do not generally apply rules found in the Georgia Civil Practice Act such as O.C.G.A § 9-11-41(d).  *See Bank of the Ozarks v. Arco Cmty. Outreach Coal., Inc.*, No. CV 212-017, 2013 WL 164421, at *3 (S.D. Ga. Jan. 15, 2013) (citing *Hanna v. Plummer,* 380 U.S. 460, 470–74 (1965)); *St. Claire Townhome Ass'n, Inc. v. D.R. Horton, Inc.*, No. 1:07-CV-2712-TCB, 2008 WL 11336808, at *3 (N.D. Ga. Apr. 23, 2008) ("[T]he Georgia Civil Practice Act . . . generally prescribes the procedures applicable to state court lawsuits in Georgia.").  Because § 9-11-41(d) does not deprive this Court of jurisdiction over Plaintiffs' claims, the School Board's challenge to this Court's jurisdiction fails.

---

[16] In fact, O.C.G.A. § 9-11-41(d) can be applied to federal § 1983 actions in the context of the statute of limitations.  This is because Georgia's "renewal statute," O.C.G.A. § 9-2-61, permits plaintiffs to recommence a case outside of the applicable statute of limitations within six months of dismissal of the first case "subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41[.]"  *See Hancock v. Cape*, 875 F.3d 1079, 1084 (11th Cir. 2017) (explaining that § 9-2-61 "incorporates the cost-payment requirement from" § 9-11-41(d)).  But this case is not a renewal action under § 9-2-61.  Its application of § 9-11-41(d) it not pertinent here.

Federal Rule of Civil Procedure 41(d) governs the issue presented by the School Board. Under the federal rule,

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>
> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). This rule is not jurisdictional. Unlike the comparable Georgia rule of § 9-11-41(d), the federal rule provides that it "may" be applied at the court's discretion. *See Pontenberg v. Bos. Sci. Corp.*, 252 F.3d 1253, 1256 n.2 (11th Cir. 2001). Courts require parties moving for relief under Rule 41(d) to show (1) the plaintiff dismissed a previous action; (2) the plaintiff then commenced a second action that is based upon or includes the same claim against the same defendant; and (3) the defendant incurred costs in the prior action. *See, e.g.*, *Groom v. Bank of Am.*, No. 8:08-CV-2567-T-27EAJ, 2010 WL 627564, at *5 (M.D. Fla. Feb. 23, 2010); *Miller v. Kennedy*, No. 1:20-CV-04717-SCJ, 2022 WL 400831, at *2 (N.D. Ga. Jan. 4, 2022). "Rule 41(d) applies 'only in those cases where the plaintiff has brought an identical, or nearly identical, claim and requested identical, or nearly identical, relief' in a new action after voluntarily dismissing a case between the same parties." *MSP Recovery*

*Claims, Series LLC v. Atl. Specialty Ins. Co.*, No. 6:20-CV-553-RBD-EJK, 2021 WL 4935767, at *6 (M.D. Fla. Mar. 10, 2021) (quoting *Garza v. Citigroup Inc.*, 311 F.R.D. 111, 114–15 (D. Del. 2015)).

The School District fails to show that Federal Rule of Civil Procedure 41(d) applies in this case. The Lowndes County order noting that Plaintiffs' previous claims "were dismissed" does not show that *Plaintiffs* dismissed all their previous actions. Moreover, it does not appear that Plaintiffs are bringing the same claims against the School District in this action. Plaintiffs' claims in the previous actions were based on allegations that the School District caused or failed to prevent KJ's death. But in this action, Plaintiffs' claims are based on allegations that the School District tampered with video evidence after KJ's death. Because the School District fails to show that Plaintiffs dismissed the same claims in a previous action, there is no basis for relief under Federal Rule of Civil Procedure 41(d).

The School District's jurisdictional challenge fails because O.C.G.A. § 9-11-41(d) does not control this Court's jurisdiction over Plaintiffs' federal claims. The Court turns to the School District's next asserted basis for dismissal.

### 2. Statute of Limitations

The School District argues that Plaintiffs' claims are barred by the statute of limitations. "Federal courts apply their forum state's statute of

limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003). The same rule applies to conspiracy claims under § 1985. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024). In Georgia, the limitations period for personal injury claims is two years. O.C.G.A. § 9-3-33. The two-year statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996) (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)). Each overt act in furtherance of a conspiracy triggers its own statute of limitations. *Wainberg*, 93 F.4th at 1225–27. Dismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred. *Wainberg*, 93 F.4th at 1224.

Here, Plaintiffs allege that the School District participated in a conspiracy with the Sheriff's Office by altering school surveillance video footage before providing it to CNN. (Doc. 140 ¶¶ 28–37; 124–36; 177–89.) Plaintiffs do not allege a date upon which the video footage was altered or when it was provided to CNN. But, according to the second amended complaint, CNN published an article about its analysis of the video footage on November 21, 2013. (*Id.* ¶¶ 30, 130, 183.)

Plaintiffs' claims against the School District are untimely under the two-year statute of limitations. Reading Plaintiffs' second amended complaint liberally in their favor, it contains no allegation of an overt act by the School District since 2013. The facts supporting Plaintiffs' claims became apparent no later than November 21, 2013, when CNN published its article. Plaintiffs filed this action nearly ten years later. Plaintiffs have not disputed the School District's argument that their claims arise from alleged acts that occurred in 2013. Nor have Plaintiffs raised any basis for tolling the statute of limitations. Because Plaintiffs' claims against the School District are barred by the statute of limitations, the Court **GRANTS** the School District's motion to dismiss. (Doc. 165.) Plaintiffs' claims against Defendant Lowndes County School District are **DISMISSED**.

## IV. Plaintiffs' Motions to Strike

Plaintiffs filed three motions to strike since filing their second amended complaint. Plaintiffs move to strike the motion to dismiss filed by the GBI (Doc. 159), the motion to dismiss filed by Lowndes County (Doc. 161), and various filings by CNHI. (Doc. 183). Plaintiffs' primary argument appears to be that the Eleventh Circuit's mandate bars Defendants' motions to dismiss, so the motions to dismiss were filed in bad faith.

As the Court has previously explained (Doc. 139 at 19), a motion to strike is a request for a drastic remedy.  *See* Fed. R. Civ. P 12(f); *see also Fisher v. Whitlock*, 784 F. App'x 711, 714–15 (11th Cir. 2019) (holding the district court enjoyed inherent power to strike a party's motion); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (holding that a finding of bad faith is "the key to unlocking a court's inherent power").

The Court finds no basis to strike Defendants' filings.  The Eleventh Circuit's mandate did not bar Defendants from moving for dismissal under the Federal Rules of Civil Procedure.  Nor did the Eleventh Circuit hold that Defendants lacked any legal basis for dismissal.  Plaintiffs have not identified any redundant, immaterial, impertinent, or scandalous matter that should be struck under Rule 12(f).  Accordingly, the Court **DENIES** Plaintiffs' motions to strike.  (Doc. 159, 161, 183.)

## V.    Motions to Compel

Plaintiffs filed several motions related to scheduling and discovery, including motions to compel Defendants to file an answer (Doc. 159, 161), a motion to compel discovery (Doc. 171), a motion to supplement the record (Doc. 192), and a motion to lift the stay of discovery (Doc. 200).  Plaintiffs generally argue that Defendants should file an answer to the second amended complaint and that discovery should commence because the Eleventh Circuit previously

reversed this Court's ruling on Defendants' motions to dismiss the first amended complaint.

Plaintiffs' motions related to scheduling and discovery are mooted by the Court's rulings on the motions to dismiss above. Because no claims remain pending, there is no need for Defendants to file answers and no reason for discovery or supplementing the record. Accordingly, the Court **DENIES AS MOOT** Plaintiffs' motions to compel Defendants to file an answer (Doc. 159, 161), motion to compel discovery (Doc. 171), motion to supplement the record (Doc. 192), and motion to lift the stay of discovery (Doc. 200).

## VI. Plaintiffs' Motions for Rule 11 Sanctions

Plaintiffs filed four motions to sanction Defendants under Federal Rule of Civil Procedure 11. Plaintiffs move to sanction Defendants for filing motions to dismiss.[17] (Doc. 171.) Plaintiffs move to sanction CNHI for other filings it has made. (Doc. 183.) Plaintiffs move to sanction Lowndes County for filing a

---

[17] Instead of filing a response brief, Defendant CNHI, LLC, filed a "motion to dismiss" Plaintiffs' motion for sanctions. (Doc. 175.) CNHI's motion to dismiss expresses its opposition to Plaintiffs' motion for sanctions. However, motions are generally either granted or denied—this Court does not typically "dismiss" a motion. CNHI identifies no basis for filing a motion to dismiss in response to a motion for sanctions. Because the Court finds no basis for CNHI's motion to dismiss Plaintiffs' motion for sanctions, CNHI's motion is **DENIED**. But CNHI's motion is denied on procedural grounds only. CNHI is correct that Plaintiffs' motion for sanctions is deficient.

response in opposition to Plaintiffs' recusal motions.  (Doc. 206.)  Finally, Plaintiffs move to sanction Lowndes County, CNHI, the School District, and Gray TV for filing responses in opposition to Plaintiffs' other motions.  (Doc. 209.)

Federal Rule of Civil Procedure 11(b) "forbids lying in pleadings, motions, and other papers filed with the court." *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006).  "Rule 11(c) provides for sanctions concerning misrepresentations made in papers filed with the court under Rule 11(b)." *Id.* at 490.  Rule 11 has a "safe harbor provision" that requires the party seeking sanctions to "serve a copy of the motion on the opposing party 21 days before filing a motion for sanctions under Rule 11. *Dudar v. State Farm Fire & Cas. Ins.*, No. 23-12788, 2024 WL 3580079, at *1 (11th Cir. July 30, 2024) (citing Fed. R. Civ. P. 11.)  Also, motions for sanctions under Rule 11 must be made separately from any other motions.  Fed. R. Civ. P. 11 (c)(2).

Plaintiffs' motions for sanctions fail on procedural and substantive grounds.  Plaintiffs' motions are procedurally deficient because Plaintiffs have not shown that they first provided the opposing parties notice and an opportunity to respond under Rule 11's safe harbor provision.  Moreover, Plaintiffs' motions for sanctions rely on the same meritless arguments that they raise in support of their motions to strike and their motions to compel.

Defendants are entitled to raise defenses by motion before they file an answer. *See* Fed. R. Civ. P. 12(a)(4).  As set forth above, Defendants have raised meritorious defenses in their motions to dismiss.  Plaintiffs have not identified any bad faith conduct or frivolous arguments in Defendants' filings.  For these reasons, the Court **DENIES** Plaintiffs' motions to sanction Defendants under Federal Rule of Civil Procedure 11.  (Doc. 171, 183, 206, 209.)

## VII.  Default Judgment

Plaintiffs filed a motion for default judgment.  (Doc. 186.)  Plaintiffs' motion for default judgment appears within a reply brief addressing CNHI's response to other motions that Plaintiffs filed.  Plaintiffs apparently seek default judgment against all Defendants because they have not filed an answer.

There is no basis for default judgment against Defendants.  Default is appropriate where the defendant has failed to plead or defend.  Fed. R. Civ. P. 55(a).  Defaults are viewed with disfavor, and there is a "strong policy of determining cases on their merits."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  The sanction of default judgment that Plaintiffs seek is "severe" and "appropriate only as a last resort."  *Malauetea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).  Default judgment is not appropriate in this case where Defendants have filed entries of appearance,

filed motions to dismiss, and responded in opposition to Plaintiffs' numerous motions.

Plaintiffs have also failed to comply with the procedures of Rule 55 of the Federal Rules of Civil Procedure.  Pursuant to Rule 55, a plaintiff must follow a two-step process when seeking default judgment.  The first step is to petition the Clerk to enter default.  Only after this step has been taken can the plaintiff move for default judgment.  *See Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First, the clerk must enter a party's default . . . .  Second, after a default is entered, the party must then apply to the court for a default judgment.").  The Clerk's entry of default is thus a prerequisite for seeking default judgment.  *Id.*  Here, Plaintiffs have not petitioned the Clerk for the entry of default, so the motion for default judgment is premature.

The Eleventh Circuit has instructed that, in cases involving a default judgment, "there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."  *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1369 (11th Cir. 1982).  The legal prerequisites have not been met in this case.  Accordingly, the Court **DENIES** Plaintiffs' motion for default judgment.  (Doc. 186.)

## VIII. Conclusion

As set forth in this order, the Court adjudicates the pending motions in this case as follows:

| Motion | Document Number | Disposition |
|--------|-----------------|-------------|
| Motion to Dismiss filed by Georgia Bureau of Investigation | 147 | Granted |
| Motion to Dismiss filed by Lowndes County Georgia | 150 | Granted |
| Motion to Dismiss filed by Valdosta-Lowndes Regional Crime Laboratory | 155 | Denied as moot |
| Motion to Dismiss filed by Gray Television, Inc. | 156 | Granted |
| Motion to Dismiss filed by CNHI, LLC | 158 | Granted |
| Motion to Strike filed by Plaintiffs | 159 | Denied |
| Motion to Compel filed by Plaintiffs | 159 | Denied as moot |
| Motion to Strike filed by Plaintiffs | 161 | Denied |
| Motion to Compel filed by Plaintiffs | 161 | Denied as moot |
| Motion to Dismiss filed by Lowndes County School District | 165 | Granted |
| Motion for Rule 11 Sanctions filed by Plaintiffs | 171 | Denied |
| Motion to Compel filed by Plaintiffs | 171 | Denied as moot |

| Motion to Dismiss filed by CNHI, LLC | 175 | Denied |
| Motion to Recuse filed by Plaintiffs | 180 | Denied |
| Motion to Strike filed by Plaintiffs | 183 | Denied |
| Motion for Rule 11 Sanctions filed by Plaintiffs | 183 | Denied |
| Motion for Default Judgment filed by Plaintiffs | 186 | Denied |
| Motion to Supplement the Record filed by Plaintiffs | 192 | Denied as moot |
| Motion for Court to Come into Compliance filed by Plaintiffs | 197 | Denied |
| Motion to Lift Stay filed by Plaintiffs | 200 | Denied as moot |
| Motion for Rule 11 Sanctions filed by Plaintiffs | 206 | Denied |
| Motion for Rule 11 Sanctions filed by Plaintiffs | 209 | Denied |

The Court again expresses its concern about the inconsistencies between the various official reports on KJ's death and Plaintiffs' allegations. (Doc. 102 at 19.) However, after careful consideration, the undersigned concludes that Plaintiffs' claims cannot proceed.

For the reasons set forth in this order, Plaintiffs' claims against Lowndes County School District and Gray Television, Inc. are **DISMISSED**. Plaintiffs'

claims against the Georgia Bureau of Investigation, Lowndes County Georgia, and CNHI, LLC are **DISMISSED WITHOUT PREJUDICE.**   Because all Plaintiffs' claims have been dismissed and no motions remain pending, the Clerk of Court is **DIRECTED** to close this case.

  **SO ORDERED** this 2nd day of March, 2026.

          _____
          SARAH E. GERAGHTY
          United States District Judge